280 P.3d 88

Richard MARVIN III, and Amy Marvin, Individually and as Next Friends of Ivy Mae Marvin, Sadie Marvin, Savannah Marvin and Anabelle Marvin, minors; Wylie Hurd; Nicholas Fred Marvin, individually and as Next Friend of Alana Marvin, minor; Aaron Marvin; Barbara Nelson; Jeffrey McBride; Mareta Zimmerman, Individually and as Next Friend of Teva Dexter and Liko McBride, minors, Petitioners/Plaintiffs–Appellees,

v.

James PFLUEGER, Pflueger Properties; and Pila'a 400, LLC, Respondents/Defendants–Appellants.

James Pflueger, Pflueger Properties; and Pila'a 400, LLC, Respondents/Counterclaimants–Appellants,

v.

Richard Marvin III; Amy Marvin; Nicholas Fred Marvin and Jeffrey McBride, Petitioners/Counterclaim–Defendants–Appellees.

No. SCWC–28501.

Supreme Court of Hawai'i.

April 27, 2012.

Peter Van Name Esser (Teresa Tico with him on the application) for petitioners/plaintiffs-appellees.

David J. Minkin of McCorriston Miller Mukai MacKinnon LLP (William C. McCorriston and Becky T. Chestnut with him on the response) and Wesley H.H. Ching of Fukunaga Matayoshi Hershey Ching & Kop LLP, for respondents/defendants-appellants.

NAKAYAMA, Acting C.J., and DUFFY, J., Circuit Judge WILSON in Place of RECKTENWALD, C.J., Recused, Circuit Judge BORDER Assigned by Reason of Vacancy, and ACOBA, J., Concurring and Dissenting Separately.

Opinion of the Court by NAKAYAMA, Acting C.J.

Landowners brought this lawsuit against their neighbor, seeking compensation for property damage caused by the neighbor, and seeking a determination of access and water rights. The application before this court, however, raises questions concerning procedural aspects of the hearings before the trial court and of the appeal to the Intermediate Court of Appeals. The first question presented concerns pleading standards of appellate briefs, and the remaining questions address the trial court's determination of which parties must participate in a lawsuit, and the procedure an appellate court should follow when reviewing that determination. We accepted the plaintiffs' application, and after careful consideration of the issues presented, we now hold that the ICA did not err in reviewing the defendants' points of error on appeal. We also hold that the ICA erred in vacating the trial court's final judgment. Therefore, as explained below, we reverse the decision of Intermediate Court of Appeals and reinstate the trial court's order in this case.

## I. BACKGROUND

Plaintiffs [1] Richard Marvin, III; Amy Marvin; Nicholas Fred Marvin; and Barbara Nelson ("plaintiffs") are landowners and residents of Pila'a Bay, Kaua'i. They live on Haena Kuleana, a kuleana [2] adjacent to property owned by one of the named defendants, Pila'a 400, LLC [3]. In 1965, prior to plaintiffs' purchase of the property, the kuleana was partitioned; plaintiffs own two-thirds of Haena Kuleana and Heidi Huddy–Yamamoto ("Huddy–Yamamoto"), not a party to the action, owns the remaining one-third of Haena Kuleana.

### A. The Trial Court's Proceedings

Plaintiffs filed an action for damages and injunctive relief on April 12, 2002 after James Pflueger graded the bluff on his property above the Haena Kuleana, causing a mudslide in November 2001 that covered plaintiffs' kuleana, and neighboring kuleana, with mud. Huddy–Yamamoto was asked to join the lawsuit, but she specifically refused to participate. Over the course of four years, plaintiffs amended the complaint twice, and defendants filed a counterclaim and two amended counterclaims. The Circuit Court of the Fifth Circuit [4] ("trial court") dismissed most of the claims with prejudice due to the parties' stipulation, and dismissed other claims as a matter of law.

On June 6, 2006, plaintiffs filed a motion for partial summary judgment and/or preliminary injunction on their cause of action for an easement by necessity. On July 28, 2006, the trial court filed an order holding the motion in abeyance pending an evidentiary hearing scheduled for August 9, 2006.

On Friday, August 4, 2006, five days before the scheduled hearing, defendants filed a position statement raising, for the first time, Huddy–Yamamoto's absence.[5] Defendants argued that the court should dismiss the action in its entirety or stay the motion pending joinder of Huddy–Yamamoto. However, defendants did not file a 12(b)(7) motion to dismiss for failure to join a party under Rule 19.

Beginning on Wednesday, August 9, 2006, the trial court held four days of hearings on plaintiffs' motion for partial summary judgment. At the beginning of the first day of hearings, plaintiffs' counsel objected to the position statement, arguing that it was not a position statement, but rather that it was a whole new brief because it raised new argu-

1. The original complaint was also filed by plaintiffs Wylie Hurd, Jeffrey McBride, and Mareta Zimmerman. Some plaintiffs sued both in their individual capacities and on behalf of their minor children, who are also kuleana residents. Claims filed by Mr. Hurd, Mr. McBride, and Ms. Zimmerman are not at issue in the appeal before this court.

2. " 'Kuleana' means 'a small area of land such as were awarded in fee by the Hawaiian monarch, about the year 1850, to all Hawaiians who made application therefor.' " *Bremer v. Weeks,* 104 Hawai'i 43, 46 n. 5, 85 P.3d 150, 153 n. 5 (2004) (citation omitted).

3. The original complaint named two defendants: Pflueger Properties and James Pflueger, individually and as a representative of Pflueger Properties. Shortly after filing, plaintiffs added Pila'a Properties 400, LLC, as a defendant. James Pflueger is one of Pila'a 400 LLC's members. The trial court found that title to the neighboring property is held by Pila'a 400, LLC.

4. The Honorable Kathleen N.A. Watanabe presided.

5. The ICA memorandum opinion states that defendants had raised the issue in their answer to plaintiffs' second amended complaint, filed in 2003. *Marvin v. Pflueger,*. No. 28501, 123 Hawai'i 299, 2010 WL 2316274 at *17 (App. June 8, 2010) (mem.). Defendants' eighteenth defense (of forty-three asserted defenses) does state "Plaintiffs have failed to name indispensable parties to this action." However, Huddy–Yamamoto is not named in this defense, there is no indication in the record that defendants were raising the question of Huddy–Yamamoto's absence, and it is clear from the context of the other filings in the case that defendants are not referring to Huddy–Yamamoto. First, as the trial court found, defendants filed a motion to establish temporary access without including Huddy–Yamamoto in that motion. This motion was filed on March 18, 2003, just 15 days after defendants filed their second amended complaint on March 3, 2003. Second, when defendants subsequently filed a motion to dismiss plaintiffs' complaint for failure to join an indispensable party, the party they named was Bluewater Sailing Kaua'i, the Marvins' business to which plaintiffs allege damages as a result of the mudslide. Defendants did not allude to Huddy–Yamamoto as an indispensable party until August 2006, just five days before the trial began.

ments. As the trial court properly noted, "The purpose of a position statement is to summarize your respective positions, not to bring up new issues." Noting the plaintiffs' objection, the court instructed the parties to move forward with the hearings, and heard testimony of thirteen witnesses over four days. Plaintiffs testified about the difficulty they have experienced in accessing their property, and they called kama'āina witnesses [6] to testify about historical access to the property. Defendants called two expert witnesses: Attorney Robert Graham, Jr. testified about Hawaiian land and water law, and Civil Engineer Leland Y.S. Lee testified about defendants' proposed access route. Defendants also called kama'aina witnesses and other witnesses familiar with the area. Huddy–Yamamoto participated in the hearings as a witness for defendants. She testified that she wanted to participate in the case as a party. However, she also testified that she had been asked to join the lawsuit from the beginning, and that she had declined. Though she testified that she understood the hearings to involve access and water rights for the kuleana she shares with the Marvins, and though she testified that she had an attorney, Huddy–Yamamoto never filed a motion to intervene in the proceedings.

After the conclusion of the proceedings, the trial court found that Huddy–Yamamoto was not an indispensable party to the action. It therefore issued an order granting plaintiffs' partial motion for summary judgment regarding the easement, granting plaintiffs' motion for a temporary restraining order preventing defendants from interfering with the property's water system, and requiring defendants to execute a recordable grant of easement in favor of plaintiffs. Accompanying the order were 159 Findings of Fact and 15 Conclusions of Law ("FOF/COL"). This opinion reviews the relevant FOF/COL in Section III.B.3, *infra.*

## B. The ICA's June 8, 2010 Memorandum Opinion

On appeal to the ICA, defendants' first point of error stated:

A. The circuit court erred in granting the Marvin Parties' motion for summary judgment in the absence of non-parties whose interests in their adjacent real property (the other part of a partitioned kuleana) could be affected by the resulting order. In its January 4, 2007 Findings of Fact and Conclusions of Law; Order ("Order"), the court stated:

> 12. The Court finds the Huddy family is not an indispensable party as they are not prejudiced by the instant proceeding, and they refused to participate in the instant lawsuit.

Order, R. V.25 at 42. [ ... ]

In the section analyzing this point of error, defendants cited to FOF/COL 102, which states "There are no facts in the record to suggest that the Huddy family will be prejudiced by not participating in the instant lawsuit. Indeed, they were asked to participate, and refused." Defendants argued that the point of the lawsuit was to determine access and water rights for the entire Haena Kuleana and that Huddy–Yamamoto's participation is required because her property is part of the kuleana.

In addition to plaintiffs' substantive arguments in support of the judgment below, they argued that defendants' brief did not comply with HRAP Rule 28 because, while defendants challenged conclusions of law, defendants did not challenge any findings of fact in their points of error, as Rule 28(b)(4) requires.

On June 8, 2010, the ICA filed its memorandum opinion. *Marvin v. Pflueger,* No. 28501, 123 Hawai'i 299, 2010 WL 2316274 (App. June 8, 2010) (mem.). In the opinion, the ICA cited plaintiffs' Rule 28 argument without comment or analysis. *Id.* at *17. The ICA then noted that Rule 28(b)(4) also permits the appellate court to "notice a plain error not presented," and stated that it would review defendants' arguments for plain error. *Id.* The ICA then conducted a *de novo* Rule 19 analysis, concluding that

---

6. "A kama'aina [kama'aina] witness is a person 'familiar from childhood with any locality.'" *State by Kobayashi v. Zimring,* 58 Haw. 106, 145

n. 8, 566 P.2d 725, 747 n. 8 (1977) (quoting *In Re Boundaries of Pulehunui,* 4 Haw. 239, 245 (1879)).

Huddy–Yamamoto was a party to be joined if feasible, and that the trial court erred by not ordering her to be joined. *Id.* at *27. On June 30, 2010, the ICA filed its Judgment on Appeal. On September 28, 2010, plaintiffs filed a timely application for writ of certiorari.

## II. STANDARDS OF REVIEW

### A. Findings of Fact and Conclusions of Law

■ On appeal, a trial court's findings of fact are reviewed under the clearly erroneous standard. *Bremer v. Weeks,* 104 Hawai'i 43, 51, 85 P.3d 150, 158 (2004) (citing *Beneficial Hawaii, Inc. v. Kida,* 96 Hawai'i 289, 305, 30 P.3d 895, 911 (2001)).

> A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed. A finding of fact is also clearly erroneous when the record lacks substantial evidence to support the finding. We have defined substantial evidence as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

*Id.* (quoting *Beneficial Hawaii,* 96 Hawai'i at 305, 30 P.3d at 911 (2001) (internal citations, punctuation omitted)). The court reviews conclusions of law de novo. *Id.* (citing *Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd.,* 100 Hawai'i 97, 112, 58 P.3d 608, 623 (2002)).

### B. Rule 19 Joinder

■ The circuit court's decisions regarding indispensable parties under Rule 19 are reviewed for an abuse of discretion. *UFJ Bank Ltd. v. Ieda,* 109 Hawai'i 137, 142, 123 P.3d 1232, 1237 (2005) (quoting *Walsh v. Centeio,* 692 F.2d 1239, 1243 (9th Cir.1982) (holding that "the determination whether the action should proceed without the absentee, and therefore, the determination of indispensability itself under [HRCP] Rule 19(b)['s federal counterpart], remains in the sound discretion of the trial judge.") (alterations in original)). "The [circuit] court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* (quoting *Ranger Ins. Co. v. Hinshaw,* 103 Hawai'i 26, 30, 79 P.3d 119, 123 (2003) (alteration in original)).

## III. DISCUSSION

### A. The ICA Need Not Have Reviewed The Finding Of Prejudice As Plain Error Review Because Defendants Adequately Raised The Issue For Appeal

■ Plaintiffs assert that it was grave error for the ICA to review FOFs 102 and 104 because defendants did not challenge those findings in the points of error section of their amended opening brief before the ICA. Defendants respond, in part, that the ICA had authority to review the two findings of fact because they are redundant of COL 12, which the defense had properly challenged. We conclude that defendants are correct in this assertion, and that the defendants' substantial compliance with Hawai'i Rule of Appellate Procedure ("HRAP") Rule 28 obviated any need for the ICA to review the findings under plain error.

Rule 28 articulates formatting and content requirements for appellate briefs. The relevant portions of the rule state the following:

> (b) Opening Brief. Within 40 days after the filing of the record on appeal, the appellant shall file an opening brief, containing the following sections in the order here indicated:
>
> [ ... ]
>
> (4) A concise statement of the points of error set forth in separately numbered paragraphs. Each point shall state: (i) the alleged error committed by the court or agency; (ii) where in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency. *Where applicable, each point shall also include the following:*
>
> > [ ... ]
> >
> > (C) *when the point involves a finding or conclusion of the court or agency,*

*either a quotation of the finding or conclusion urged as error or reference to appended findings and conclusions;*

[ ... ]

Points not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented. Lengthy parts of the transcripts that are material to the points presented may be included in the appendix instead of being quoted in the point.

HRAP Rule 28 (emphasis added). On appeal to the ICA, defendants articulated as error the trial court's "grant of summary judgment in the absence of non-parties whose interests in their adjacent real property (the other part of a partitioned kuleana) could be affected by the resulting order." Because the alleged error, the grant of summary judgment in the absence of non-parties, "involved a finding or conclusion," it thereby invoked the requirement found in Rule 28(b)(4)(C) that the party quote or reference the contested findings or conclusions.

■ "It is well settled that failure to comply with HRAP Rule 28(b)(4) is alone sufficient to affirm the circuit court's judgment." *Morgan v. Planning Dept.*, 104 Hawai'i 173, 180, 86 P.3d 982, 989 (2004) (citing *Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawai'i 408, 420, 32 P.3d 52, 64 (2001); *Kawamata Farms, Inc. v. United Agri Prods.*, 86 Hawai'i 214, 235, 948 P.2d 1055, 1076 (1997); *O'Connor v. Diocese of Honolulu*, 77 Hawai'i 383, 385, 885 P.2d 361, 363 (1994)). The appellate courts of this state require compliance with the Rules of Appellate Procedure, and have refused to review noncompliant arguments. *E.g., Nuuanu Valley Ass'n v. City and Cnty. of Honolulu*, 119 Hawai'i 90, 94 n. 2, 194 P.3d 531, 535 n. 2 (2008) (declining to review arguments raised in an intervenor's answering brief that omitted required sections); *Omerod v. Heirs of Kaheananui*, 116 Hawai'i 239, 263, 172 P.3d 983, 1007 (2007) (disregarding points of error presented in

narrative with no elaboration of the errors and citing only the entire factual section of the trial court's decision and order); *Doe v. Doe*, 118 Hawai'i 293, 305, 188 P.3d 807, 819 (App.2008) (declining to address a claim to which the party cites nothing in the record, and provides no specific or admissible evidence for support).

■ Nonetheless, noncompliance with Rule 28 does not always result in dismissal of the claims, and "[t]his court [ ... ] has consistently adhered to the policy of affording litigants the opportunity 'to have their cases heard on the merits, where possible.' " *Morgan*, 104 Hawai'i at 180–81, 86 P.3d at 989–90 (quoting *O'Connor*, 77 Hawai'i at 386, 885 P.2d at 364). This is particularly so where the remaining sections of the brief provide the necessary information to identify the party's argument. For example, the application from *In re Estate of Damon* did not comply with Rule 28 in that the six points of error did not include record citations to the petitioner's objections below, but only assigned error to the conclusions of the trial court. 119 Hawai'i 500, 503, 199 P.3d 89, 92 (2008). This court noted, however, that the petitioner had included the required citations for two of petitioner's points of error in another section of his brief. *Id.* The court reviewed these two points of error,[7] concluding that "although the required citation is misplaced," the petitioner's application "sufficiently satisfies" the Rule 28 requirements. *Id.* at 504, 199 P.3d at 93. In addition to the petitioner's satisfaction of the Rule, the court offered two other justifications for considering the arguments on the merits: first, it furthered the court's policy of hearing cases on the merits where possible, and second, petitioner had raised the same argument before the trial court. *Id.* at 505, 199 P.3d at 94.

The ICA has articulated a similar rule. In *Liki v. First Fire & Cas. Ins. of Hawaii, Inc.*, the appellees argued that the ICA should disregard appellant's point of error because it did not comply with Rule 28(b)(3) and (4). 118 Hawai'i 123, 126 n. 3, 185 P.3d 871, 874 n. 3 (App.2008). The ICA nonethe-

---

7. The court vacated the trial court's judgment based on petitioner's first two points of error, and therefore did not consider the remaining points of error. *Damon* at 512 n. 11, 199 P.3d at 101 n. 11.

less reviewed the issue on the merits because the opening brief substantially complied with Rule 28(b)(4), and because the noncompliance with Rule 28(b)(3) was not material in the circumstances, and the appellant had cured the deficit in the reply brief. *Id.*

The defendants' amended opening brief in this case argued the following:

> The circuit court erred in granting the [plaintiffs'] motion for summary judgment in the absence of non-parties whose interests in their adjacent real property (the other part of a partitioned kuleana) could be affected by the resulting order. In its January 4, 2007 Findings of Fact and Conclusions of Law; Order ("Order"), the court stated:
>
> > 12. The Court finds the Huddy family is not an indispensable party as they are not prejudiced by the instant proceeding, and they refused to participate in the instant lawsuit.
>
> Order, R. V.25 at 42. Defendants raised and argued this issue at R. V.16 at 46–52 and at the hearings in the testimony of Robert Bruce Graham, Jr. on August 9, 2006 and August 23, 2006, and Heidy Yamamoto–Huddy [sic] on September 15, 2006.

Then, in the argument section elaborating upon this point of error, defendants twice quote FOF 102[8], arguing that the finding is "absolutely contrary to the evidence." Though defendants do not directly cite FOF 104 [9], they argue throughout that adjudication of the Marvins' rights affect Huddy–Yamamoto's rights, thus challenging the finding of no prejudice stated in FOF 104. The ICA reviewed the defendants' arguments for plain error, and concluded that "FOFs 102 and 104 are clearly erroneous, and the portion of COL 12 stating that Huddy–Yamamoto was not prejudiced by the proceeding is wrong." *Marvin,* mem. op. at \*17, \*27.

We conclude that defendants' amended opening brief "sufficiently satisfie[d]" the Rule 28 requirements, and therefore the ICA did not err in reviewing the finding that Huddy–Yamamoto had been prejudiced by the trial court's order. *Damon,* 119 Hawai'i at 504, 199 P.3d at 93. We arrive at this conclusion because FOFs 102 and 104 are redundant of COL 12, which defendants quoted in the points of error. Also, defendants challenged these findings in the analysis section of their amended opening brief. Furthermore, we note that defendants had raised the same argument at trial, albeit improperly.[10] *Id.* at 505, 199 P.3d at 94. Defendants' argument was conspicuous, and plaintiffs understood the issue on appeal sufficiently to provide the court with a thorough

---

**8.** FOF 102 states: "There are no facts in the record to suggest that the Huddy family will be prejudiced by not participating in the instant lawsuit. Indeed, they were asked to participate, and refused. The access they currently enjoy is 'now improved, and easier access than before.' "

**9.** FOF 104 states: "There are no facts in the record to suggest that the Huddy family will be prejudiced by the Plaintiffs' claim to irrigation and drinking water in the instant case."

**10.** We note that the procedure defendants followed in raising the Rule 19 issue was improper. Defendants raised the issue of Huddy–Yamamoto's nonjoinder in a "position statement." As the trial court properly noted, "The purpose of a position statement is to summarize your respective positions, not to bring up new issues." Because there was no motion properly before the trial court, there was no formal, adversarial briefing of the issue, and plaintiffs had no opportunity to present written briefing in opposition to the joinder of Huddy–Yamamoto.

Also, the timing of defendant's argument was troublesome. Defendants raised the issue on August 4, 2006. This was over four years after plaintiffs filed the initial complaint, over three years after plaintiffs added a cause of action for kuleana rights, and only five days before the evidentiary hearings on the plaintiffs' partial motion for summary judgment were scheduled to begin. Defendants had received plaintiffs' motion nearly two months prior, on June 6, 2006, and defendant's memorandum in opposition, filed June 19, 2006, made no mention of any defense under Rule 19.

Despite this procedural frailty, the trial court considered the issue, heard testimony regarding Huddy–Yamamoto's status as an indispensable party, and included relevant findings of fact and conclusions of law on the issue. In a subsection of their amended answering brief, plaintiffs mentioned the troublesome procedure, but they did not argue that the issue was not properly before the court and they cited no authority for such a challenge. Because neither party challenged the trial court's FOF/COL on the question of whether the defendants followed proper procedure in bringing the issue before the court, we deem the substantive issue raised at trial court for purposes of appellate review.

response on the merits. *See Dan v. State*, 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994) (reviewing a brief that "does not specifically quote each FOF and COL to which [the Petitioner] takes exception, as required by [HRAP] 28(b)(4)(C)" "[i]n the interest of justice and fairness" because the court is "able to glean from [Petitioner's] brief in its entirety the specific FOF and/or COL he apparently challenges in this appeal."). Based on these facts, we hold that the ICA did not commit grave error in reviewing FOFs 102 and 104 in this case.

The dissent would interpret Rule 28 as requiring that anytime a trial court's FOF/COL contain any repetition, an opening brief must always quote each instance of the repeated finding, otherwise the binding quality of any unquoted finding will negate the review of any properly-raised points of error. Dissent at 537, 280 P.3d at 135. The facts of this case illustrate why we reject that holding. Before the ICA, defendants properly challenged COL 12, which stated in part that Huddy–Yamamoto was prejudiced by the proceeding. To hold that the ICA was bound by the unquoted FOFs 102 and 104, which found no facts supporting prejudice, means that the ICA could not meaningfully review the properly-challenged COL 12. We further reject that holding in recognition that the court "has consistently adhered to the policy of affording litigants the opportunity 'to have their cases heard on the merits, where possible.'" 104 Hawai'i at 180–81, 86 P.3d at 989–90 (2004) (quoting *O'Connor*, 77 Hawai'i at 386, 885 P.2d at 364 (1994)). The dissent does not cite, and we are unable to find, any case law in which Rule 28 was applied so strictly as to prevent the court from reviewing a properly-raised point of error on the logic that it is redundant of an unchallenged, and therefore binding, finding. We do not believe that Rule 28 mandates such technical application particularly where, as here, the findings were cited elsewhere in the brief, and where, as here, both parties recognized and committed substantial portions of their briefing to the contested issue.

We therefore hold that the ICA did not err in reviewing the defendants' arguments on the merits in this case. The point of error challenging the trial court's conclusion regarding prejudice to Huddy–Yamamoto substantially complied with HRAP Rule 28, and it was not necessary for the ICA to review the point of error as plain error review.

**B. The ICA Committed Grave Error When It Reversed The Circuit Court's Findings And Held That The Circuit Court Erred In Not Ordering Huddy–Yamamoto To Be Joined**

Hawai'i Rules of Civil Procedure ("HRCP") Rule 19, "Joinder of Persons Needed for Just Adjudication," governs bringing a non-party into a legal action. Rule 19 works in conjunction with Rule 12, "Defenses and Objections–When and How Presented...." Pursuant to Rule 12(b)(7), a party may assert the defense of "failure to join a party under Rule 19" by motion. In this case, a motion was not before the trial court, *see* footnote 10 *supra*, but defendants raised the issue of Heidi Huddy–Yamamoto's absence in a position statement, and the court resolved the question. The court found facts related to the issue of Huddy–Yamamoto as an indispensable party, and concluded as a matter of law that "the Huddy family is not an indispensable party as they are not prejudiced by the instant proceeding, and they refused to participate in the instant lawsuit."

On appeal, defendants urged the ICA to review the trial court's determination regarding indispensability. The ICA panel reviewed the trial court's findings and conclusions, determined that the trial court had erred, vacated the final judgment, and remanded for new proceedings with Huddy–Yamamoto joined as a party. *Marvin*, mem. op. at *29.

In their application for writ of certiorari before this court, plaintiffs argue that the trial court did not abuse its discretion when it found that Huddy–Yamamoto was not an indispensable party, and thus, that it was error for the ICA to vacate the trial court's final judgment. As explained below, we agree with the plaintiffs, and therefore reverse the ICA on this point.

1. *Defendants Failed To Timely Raise The Question Of Huddy–Yamamoto's Status As A Party To Be Joined If Feasible Under Rule 19(a)*

 HRCP Rule 19, Joinder of Persons Needed for Just Adjudication, states: (a) Persons to be joined if feasible. A person who is subject to service of process shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (A) as a practical matter impair or impede the person's ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff.

(b) Determination by Court Whenever Joinder Not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

HRCP Rule 19. The rule is divided into two sections, and as this court explained in *UFJ Bank Ltd. v. Ieda,* the analysis typically follows two steps. 109 Hawai'i 137, 142, 123 P.3d 1232, 1237 (2005) (citing *Kescoli v. Babbitt,* 101 F.3d 1304, 1309 (9th Cir.1996) (applying HRCP Rule 19's federal counterpart, Federal Rules of Civil Procedure ("FRCP") Rule 19 [11])). First, the court must determine whether an absent party should be joined if feasible according to the factors listed in subsection (a).[12] *Id.* at 142–43, 123 P.3d at 1237–38. Second, if the party meets the requirements under subsection (a) but it is not feasible to join the party to the lawsuit, the court must proceed to Rule 19(b) to determine whether it may decide the case without the nonparty. *Id.* at 143, 123 P.3d at 1238 (citing *Lau v. Bautista,* 61 Haw. 144, 154–55, 598 P.2d 161, 168 (1979)). If the court must dismiss the lawsuit rather than moving forward without the absent party, the nonparty is labeled "indispensable." *Id.*

HRCP Rule 19 works in tandem with HRCP Rule 12, which governs the timing and procedure for asserting defenses. The relevant portions of Rule 12 state:

(b) How presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, crossclaim, or third-party claim, *shall be asserted in the responsive pleading thereto if*

---

**11.** Because HRCP Rules 12 and 19 are in all relevant aspects substantively identical to the federal rules, we may look to federal cases interpreting their rules for persuasive guidance. See *Pulawa v. GTE Hawaiian Tel,* 112 Hawai'i 3, 20 n. 15, 143 P.3d 1205, 1222 n. 15 (2006) (citations omitted).

**12.** Former versions of both the Hawai'i and Federal Rule labeled parties satisfying the requirements of subsection (a) as "necessary." In 1966, the Federal Rule was modified to identify those parties as "Persons to Be Joined if Feasible." This change "eliminate[d] formalistic labels that restricted many courts from an examination of the practical factors of individual cases." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 1601, at 6 (3d ed.2001) (footnote omitted) (hereinafter "Wright, Miller & Kane"). The Hawai'i Rule was amended in 1972 to conform with the federal rule. *Almeida v. Almeida,* 4 Haw. App. 513, 516, 669 P.2d 174, 176 (1983). Though this opinion uses the current terminology, we use the term "necessary party" when referencing prior cases that use the original term.

*one is required, except that the following defenses may at the option of the pleader be made by motion:* (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) *failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted.* [ . . . ]

[ . . . ]

(g) Consolidation of defenses in motion. A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party. *If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.*

(h) Waiver or preservation of certain defenses. (1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g) or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course. (2) A defense of failure to state a claim upon which relief can be granted, *a defense of failure to join a party indispensable under Rule 19,* and an objection of failure to state a legal defense to a claim *may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits.* [ . . . ]

HRCP Rule 12.

As commentators have noted, "an inconsistency exists between the language of Rule 12(b)(7) and that of Rule 12(h)(2)." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1392, at 525 (3d ed.2001) (hereinafter "Wright & Miller"). In light of this inconsistency, jurisdictions are split on how to enact Rule 12's provisions as they relate to Rule 19. There is little dispute regarding Rule 12's first mention of Rule 19. Under Rule 12(b)(7), a party may raise the defense of "failure to join a party under Rule 19" in its answer or by motion. This defense "shall be made before pleading if a further pleading is permitted", and, like most of the 12(b) defenses, it is waived if a party fails to timely raise it. HRCP Rules 12(b) and 12(h).

However, jurisdictions differ in their interpretation of Rule 12(h). Rule 12(h) protects against the waiver of some Rule 19 defenses. Rule 12(h)(2) states, ". . . a defense of failure to join a party *indispensable* under Rule 19 . . . may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." HRCP Rule 12 (emphasis added). Some jurisdictions have ignored the word "indispensable" in Rule 12(h), thus reading the rule broadly to include a protection of defenses under Rules 19(a) and 19(b) against waiver. *Enter. Mgmt. Consultants, Inc. v. U.S.,* 883 F.2d 890 (10th Cir.1989).

Other jurisdictions have interpreted 12(h) as saving only defenses involving *indispensable* parties under Rule 19(b) from waiver. In *Citibank v. Oxford Prop. & Finance Ltd.,* then-Circuit Judge Kennedy considered two related appeals brought in Guam by three parties: Citibank and Oxford, two creditors; and Lee, an individual who had borrowed funds from both Citibank and Oxford. 688 F.2d 1259, 1260 (9th Cir.1982). In one of several legal proceedings between the parties, Citibank succeeded in foreclosing on some of Lee's real property, and then commenced a second foreclosure action against Oxford and other junior lienholders in the property. *Id.* The trial court approved the foreclosure in favor of Citibank. *Id.* The parties appealed to a three-judge panel of the district court, which acted as the appellate court in Guam. *Id.* The district court reversed the trial court; one of the reasons for reversal was Citibank's failure to join Oxford in the original foreclosure action against Lee. *Id.* The Ninth Circuit panel, reviewing the

district court's reversal, vacated the judgment. *Id.* at 1261. The Ninth Circuit noted that Oxford's absence need not have "decisive significance" requiring that the decision be vacated, and instead analyzed the prejudice suffered by Oxford due to its absence.[13] *Id.* at 1262. Furthermore, as the Ninth Circuit explained, the issue was waived because "[i]n federal procedure, failure to join necessary parties is waived if objection is not made in defendant's first responsive pleading; it is only the absence of an indispensable party which may (possibly) be raised later.". *Id.* at 1262 n. 4 (citing FRCP Rule 12(h) and *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 110–11, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) (further citations omitted)).

This reading of Rules 12 and 19 has been followed in several district courts in factual scenarios closely resembling the facts of today's case. For example, three years ago in *Baykeeper v. Union Pacific Railroad Co.,* defendants Union Pacific Railroad Company and North Coast Railroad Authority sought to amend their answer to add an affirmative defense of failure to join all necessary and indispensable parties in an effort to join the State to the suit. No. C 06–02560 JSW, 2009 WL 1517868 at *1 (N.D.Cal. June 1, 2009). Plaintiffs argued that the motion should be denied because the State was necessary under Rule 19(a), not indispensable under Rule 19(b), and defendants' failure to assert their Rule 19(a) defense in their first responsive pleading resulted in waiver of that defense. *Id.* The District Court agreed with plaintiffs' argument, directly finding "Defendants have waived the issue of whether the State is a necessary party," and denying defendants' motion. 2009 WL 1517868 at *3.

The District Court for the District of Columbia reached the same conclusion regarding waiver in *Ransom v. Babbitt,* 69 F.Supp.2d 141 (D.D.C.1999). *Ransom* occurred in the context of Native American Tribal Law, but its application of the FRCP are relevant to our application of the HRCP. In that case, plaintiffs, three Chiefs of the Saint Regis Mohawk Tribe, sought recognition from the Bureau of Indian Affairs ("BIA"), following a referendum election. 69 F.Supp.2d at 144. The BIA declined to recognize plaintiffs, and instead indicated its belief that the Tribe had adopted a Constitution and a separate Constitutional Government. *Id.* Plaintiffs filed an appeal with the Interior Board of Indian Appeals ("IBIA"), which summarily affirmed the BIA. *Id.* at 145. After a series of Tribal referenda, BIA filings, and IBIA appeals, all of which refused to recognize plaintiffs as the legitimate Saint Regis Mohawk government, plaintiffs filed suit in district court against the BIA and the IBIA. *Id.* at 146–47. On the day both parties filed their final round of briefs in the case, the BIA and IBIA filed a motion to amend their answer to include an affirmative defense of failure to join a necessary or indispensable party, the Constitutional Government. *Id.* at 147–48. The court determined that under Rule 12(h), the BIA and IBIA had waived their defense of failure to join a necessary party under Rule 19(a). *Id.* at 148. The court then analyzed the question of whether the Constitutional Government was an indispensable party under Rule 19(b). *Id.* at 148.

In another similar situation, the Southern District of Ohio agreed. The plaintiff in *North Dixie Theatre, Inc. v. McCullion* filed suit seeking to invalidate certain state statutes governing flea market leases. 613 F.Supp. 1339, 1341 (S.D.Ohio 1985). One of the defendants filed a Supplemental Motion for Summary Judgment seeking dismissal of the suit because the plaintiff had not joined various county and state officials with enforcement power over the statutes, whom he contended to be persons to be joined if feasible under Rule 19(a). *Id.* at 1346. The District Court overruled defendant's motion, conceding that the parties were persons to be joined if feasible under Rule 19(a), but directly concluding that defendant had waived this defense by failing to raise it in his answer. *Id.* The court noted that, while Rule 12(h)(2) preserves the defense of an absent indispensable party under Rule 19(b), the defense under 19(a) is subject to waiver. *Id.* ("Al-

---

**13.** The court found that Oxford suffered no prejudice because the decision between Citibank and Lee would not bind Oxford in future actions. 688 F.2d at 1262.

though Rule 12(h)(2) preserves an *indispensable* party objection, this provision does not apply to persons who are merely necessary parties under Rule 19(a).") (emphasis in original).

■ These cases show the difficulty confronted by a trial court facing the absence of a non-party late in the course of trial. On the one hand, it is desirable for all parties with interest in the action to be before the court. On the other hand, the rules indicate that, at some point, the case must proceed with the parties who are present, and the defense of failure to join additional parties has expired. We are persuaded that the above-cited courts properly read Rules 12 and 19 together when they determined that only the defense of failure to join an *indispensable* party under Rule 19(b) is preserved from waiver by Rule 12(h)(2), and we adopt this reading in Hawai'i.[14] The facts of this case illustrate the wisdom of this approach. This reading encourages parties to raise issues as quickly as possible, giving notice to the other parties, and ensuring that all parties have an opportunity to investigate and respond to opposing parties' claims. Further, because the remedy for an absent party to be joined if feasible under Rule 19(a) is typically the joinder of that party, encouraging parties to raise this objection early in litigation will allow the nonparty to be joined with minimal disruption to the litigation. In this case, plaintiffs filed their complaint in 2003. After three years of preparation, including discovery and consultation with expert witnesses, a date was set for trial. Then, five days before the trial was to begin, defendants raised the affirmative defense that the case cannot continue without Huddy–Yamamoto. On day three of the four-day trial, Huddy–Yamamoto testified that she wanted potable water and vehicular access; this was plaintiffs' first notice of these desires, as she had refused to participate in the case until that point. Ordering Huddy–Yamamoto to be joined in the case in the middle of trial would have necessarily delayed proceedings because, as a party, Huddy–Yamamoto would have had a right to discovery, she may have needed to retain expert witnesses, and she may have wanted to raise third-party claims against the Marvins or Pflueger.

A second concern addressed by this reading of Rule 12 is to remove the ability for a party to delay raising important issues in order to stall proceedings. We believe giving effect to the word "indispensable" in Rule

---

14. The dissent maintains that these cases "only establish that when a defendant fails to raise the defense of an *indispensable* party in an answer, the defense that a party is *necessary may* be waived." Dissent at 544, 280 P.3d at 142 (emphasis in original). This interpretation is unsupportable. One of the main points made by these cases is the necessity of distinguishing between parties to be joined if feasible under 19(a) and indispensable parties under 19(b) because of their different treatment under Rule 12. The dissent's reading is strained in that it overlooks that fundamental point of logic and commingles the two categories of parties.

Further, the dissent offers *McCowen v. Jamieson*, 724 F.2d 1421 (9th Cir.1984), a case decided two years after *Citibank.* Dissent at 542–43, 280 P.3d at 140–41. But ultimately, the fact that Ninth Circuit authority is split further proves our point that "an inconsistency exists." Wright & Miller § 1392, at 525. Indeed, *McCowen* itself highlights this inconsistency; in that very opinion, Circuit Judge Duniway dissented from the majority's interpretation of the Rules, explaining that, in his view, the Rules do not "require the trial court to open the door and go out and look for federal agencies or officials and invite them in." *Id.* at 1425. Furthermore, we note that *McCowen* is primarily cited for the holding that failure to join an indispensable party is not subject to waiver under Rule 12, a holding consistent with today's opinion.

Finally, the dissent also argues that today's opinion is "in inherent conflict" with HRCP Rule 21. Dissent at 542, 280 P.3d at 140. HRCP Rule 21 states:

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately by order of the court.

HRCP Rule 21. This language is so broad that nearly any denial of joinder under Rule 19 could be cast as an "inherent conflict" with its language. We decline to read the broad language of HRCP Rule 21 as a vehicle for circumventing the specific instructions set forth in HRCP Rules 12 and 19. *See Pan Am. World Airways, Inc. v. U.S. Dist. Court*, 523 F.2d 1073, 1079 (9th Cir.1975) ("By itself, [FRCP] Rule 21 cannot furnish standards for the propriety of joinder, for it contains none. Hence it must incorporate standards to be found elsewhere.").

12(h) properly furthers the goals of shepherding cases to final adjudication and encouraging parties to timely raise issues. In this case, defendants did not raise the issue of Huddy–Yamamoto's nonjoinder in a motion before the court. (See footnote 10, supra.) Instead, in a position statement, defendants asserted the following: "Because the question of an easement, at the very least, requires the presence of the owners of the Huddy parcel, the action should be dismissed in its entirety or the disposition of the motion stayed pending the joinder of the Huddy parcel owners as necessary and indispensable parties." Defendants made two arguments; though they do not articulate their request in the Rule 19 framework, it is evident from their requested remedies of dismissal and joinder that they were urging the court to find Huddy–Yamamoto to be either indispensable under 19(b) or a party to be joined if feasible under 19(a).

█ As the ICA noted, the trial court's FOF/COL did not provide an analysis of whether Huddy–Yamamoto was a party to be joined if feasible under Rule 19(a), but instead focused on whether Huddy–Yamamoto was an indispensable party under 19(b). *Marvin*, mem. op. at \*20. After noting this absence, the ICA then began a *de novo* analysis by considering whether Huddy–Yamamoto was a party to be joined if feasible under Rule 19(a). In doing so, the ICA erred because defendants had waived the 19(a) defense. We arrive at this conclusion for two reasons. First, defendants asserted in each of their answers that "Plaintiffs have failed to name *indispensable* parties to this action", thereby preserving only the affirmative defense under 19(b). Defendants' answers did not plead the affirmative defense that there existed parties to be joined if feasible under 19(a). Because they did not raise the issue in a pre-answer motion or in a responsive pleading, defendants therefore waived the 19(a) defense pursuant to Rule 12.

Additionally, Rule 12(g) provides further support for waiver. The rule states:

(g) Consolidation of defenses in motion. A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party. *If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.*

Rule 12(g). About two weeks prior to their position statement, on July 19, 2006, defendants filed a motion to dismiss for failure to join an indispensable party. Because the Rule 19(a) argument was "then available to" defendants, and because it is not exempted under Rule 12(h), defendants were foreclosed from raising the Rule 19(a) defense in a subsequent motion.

█ As explained above, we conclude that the defendants' inaction in raising the question of Huddy–Yamamoto's status as a party to be joined if feasible under Rule 19(a) resulted in their waiver of that defense. In contrast, the question of Huddy–Yamamoto's indispensability was properly before the trial court because defendants had preserved the defense by pleading it in their answer, and because it was timely pursuant to Rule 12(h)(2). The remainder of this opinion reviews the trial court's and ICA's resolution of the issue of indispensability.

2. *The Applicable Standard Of Review For An Appellate Court Considering A Trial Court's Determination Of Indispensability Is Abuse Of Discretion*

█ In *Haiku Plantations Ass'n v. Lono,* this court noted that the "[a]bsence of indispensable parties can be raised at any time even by a reviewing court on its own motion." 56 Haw. 96, 103, 529 P.2d 1, 5 (1974) (citation omitted). In cases where the appellate court raises the issue itself for the first time on appeal, it follows that the appellate court must perform a *de novo* Rule 19 analysis, there being no analysis from the trial court to review. In contrast, in cases where the trial court has made a determination as to a party's indispensability, appellate courts must review the trial court's decision for an abuse of discretion. *UFJ Bank Ltd. v. Ieda,* 109 Hawai'i 137, 142, 123 P.3d 1232, 1237

(2005) (quoting *Walsh v. Centeio*, 692 F.2d 1239, 1243 (9th Cir.1982)). As explained below, the ICA erred in the case at hand when it reviewed the trial court's determination that Huddy–Yamamoto was not an indispensable party without properly deferring to the trial court's findings.

The abuse of discretion standard is particularly appropriate in this case because analysis under Rule 19 requires the trial court to consider the facts and circumstances of the particular case before it. In describing the Federal Rule, Wright, Miller, and Kane note that "[p]ragmatic considerations are controlling; however, the list of factors now found in the rule is not intended to be exclusive." Wright, Miller & Kane, § 1601, at 16–17 (internal footnotes omitted). Appellate courts of our jurisdiction, in applying this rule, have stressed the discretionary nature of the analysis. As the Intermediate Court of Appeals described the analysis under Rule 19(b), the four factors

> are in no way exclusive. Moreover, the rule does not state the weight each factor should be given. Rather, a court should consider all of the factors and employ a functional balancing approach. Because of the flexibility of the "equity and good conscience" test and the general nature of the factors listed in HRPP [sic] Rule 19(b), whether a particular non-party described in Rule 19(a) will be regarded as indispensable depends to a considerable degree on the circumstances of each case.

*Int'l Sav. & Loan Ass'n v. Carbonel*, 93 Hawai'i 464, 470, 5 P.3d 454, 460 (App.2000) (quoting *GGS Co. v. Masuda*, 82 Hawai'i 96, 105, 919 P.2d 1008, 1017 (App.1996)). Given the discretionary nature of the inquiry, it is critical that appellate courts vacate the trial court's conclusion regarding indispensability only upon finding an abuse of discretion.

■ In *Kealoha v. Cnty. of Hawaii*, this court explained the abuse of discretion standard as follows:

> the trial court may not be reversed by an appellate court unless the trial court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant. Under that standard different tri-

al judges may, on the same facts, arrive at opposite rulings without any of them being reversible on appeal.

74 Haw. 308, 318, 844 P.2d 670, 675 (1993) (quoting *State v. Rabe*, 5 Haw.App. 251, 260–61, 687 P.2d 554, 561 (1984)). Under an abuse of discretion standard, it is understood that reasonable judges may disagree, but the task of an appellate court is to defer to the judgment call of the trial court judge unless that judge "bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *UFJ Bank Ltd. v. Ieda*, 109 Hawai'i 137, 142, 123 P.3d 1232, 1237 (2005) (quoting *Ranger Ins. Co. v. Hinshaw*, 103 Hawai'i 26, 30, 79 P.3d 119, 123 (2003)). In their response brief, defendants seek to defend the ICA's decision to vacate the trial court's judgment by quoting large swaths of the ICA opinion and by highlighting the logic of their *de novo* review. This argument answers the wrong question because in reviewing these discretionary decisions in which reasonable judges may disagree, the analysis must focus on whether the trial court abused its discretion, not whether the ICA judges provided cogent analysis. The remaining portion of our opinion today applies the abuse of discretion standard to the trial court's determination that Huddy–Yamamoto was not indispensable.

3. *The Trial Court Did Not Abuse Its Discretion In Finding That Huddy–Yamamoto Is Not An Indispensable Party*

■ Before we can evaluate the trial court's finding that Huddy–Yamamoto was not an indispensable party, we must first articulate exactly what the trial court decided. The court's order in this case stated:

> 1. The Court, therefore, hereby grants Plaintiffs' Motion for Partial Summary Judgment Re: Easement By Necessity and/or Order Issuing Preliminary Injunction and enters an Order Enjoining and Restraining the Defendants from interfering with, blocking or otherwise making Plaintiffs' access unreasonable or unsafe.
>
> 2. The Court, therefore, hereby grants Plaintiffs' Motion for Temporary Restrain-

ing Order and enters an Order Enjoining and Restraining the Defendants from interfering with, dismantling, damaging and/or destroying Plaintiffs' water system that brings water from the western stream and spring to their kuleana.

3. The Plaintiffs shall present to Defendant Pila'a 400 LLC, and Defendant shall execute, a recordable Non Exclusive Grant of Easement in favor of Plaintiffs, as set forth above.

This order effected the following: (a) it established plaintiffs' entitlement to an easement over defendant Pila'a 400 LLC's property; (b) it enjoined defendants from interfering with plaintiffs' access; (c) it enjoined defendants from interfering with plaintiffs' water system; (d) it required defendant Pila'a 400 LLC to execute a recordable Non Exclusive easement.

The injunctions serve the purpose of restraining defendants from actions which impair the plaintiffs' access to their property or endanger their water system. There is no evidence that Huddy–Yamamoto has any involvement in these provisions of the order. Instead, the trial court's relevant findings of fact on the matter show a pattern of defendants' conduct towards plaintiffs in which Huddy–Yamamoto was not involved. For example, the trial court found:

118. [Nick Marvin] testified, "We changed roads because Mr. Pflueger is the big land owner and if we go against him, he'll make our life miserable. He's made our life miserable many times."

[ ... ]

154. Testimony from Plaintiffs and their witnesses established intentional blocking of access by the Defendants.

[ ... ]

157. Defendant James Pflueger has caused the access road at Pila'a to be blocked without notice since the lawsuit was filed in this case, including fencing off the access, blocking the access with machinery, blocking the access with trucks, tractors, porta potties, cows and bulls, and interfering with access by running sprinklers on the Marvin children's pedestrian access and placing water troughs and piles of chicken manure next to the access.

158. After this Court entered an Order preventing Defendants from blocking Plaintiffs' access without providing 24 hours advance notice, Defendant James Pflueger, on Admissions Day, blocked the Marvin's lower access road by parking his truck next to their property line, and turning off the ignition. Even when he backed up the road to the parking plateau, he again blocked the Marvin's access by stopping his vehicle and preventing Richard Marvin from driving through.

The circumstances surrounding the injunction show that Huddy–Yamamoto was not involved in the conduct necessitating the injunction, nor would she be affected by the court's injunction of this conduct.

The court's order also establishes that the plaintiffs have a right to access to their property. As Conclusion of Law 3 summarizes:

3. As owners of a kuleana at Pila'a, Kaua'i, Hawai'i, that is landlocked and traceable to the Great Mahele, Plaintiffs Richard Marvin III, Nicholas Marvin, and Barbara C. Nelson are entitled to an easement by necessity, and reasonable use of water for drinking, domestic and agricultural purposes.

This COL could only affect Huddy–Yamamoto if the existence of the plaintiffs' access would somehow negate Huddy–Yamamoto's right to access. However, as the trial court found, this is not the case. The Haena Kuleana was partitioned in 1965, and, as explained in the FOF:

56. The partition action in 1965 did not separate or alienate the statutory rights of the kuleana to access or water.

57. Neither the partition action or [sic] the deeds passed down through the generations pertaining to ownership interests in the kuleana have abrogated or abolished the statutory entitlement of the kuleana owners to access and water.

[ ... ]

60. The partition action did not affect the rights of the kuleana to access. The Marvin and Huddy kuleana are entitled to access through the Pila'a 400 LLC parcel. Indeed, all kuleana have access.

Thus, the court's recognition that the plaintiffs have a statutorily protected right of access to their property is a legal conclusion that does not affect Huddy–Yamamoto because the right of access exists for all the residents of the kuleana, the partition action notwithstanding.

▆▆▆▆ Finally, the trial court set the route of the access. Defendants argue that Huddy–Yamamoto was an indispensable party to this determination. While there is no case directly considering access rights to a partitioned kuleana, in an early case discussing kuleana access rights, *Henry v. Ahlo,* the Supreme Court for the Republic of Hawai'i determined that the plaintiff in that case, a kuleana owner, "could not have a number of roads; he is only entitled to one. . . ." 9 Haw. 490, 490 (Haw.Rep.1894). It follows that if a partitioned kuleana is only allowed one access point, then the owners of property within that kuleana may be affected by the determination of where that access point should be placed. Even so, the fact that a nonparty may be affected by a proceeding is not sufficient to make them an indispensable party. *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 110, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). (Recognizing that a court may enter a judgment "that, in practice, affects a nonparty.") Instead, the inquiry established by Rule 19(b) is more comprehensive. A court should consider the following four factors in determining whether a party is indispensable, and therefore whether the case must be dismissed:

first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

HRCP Rule 19(b). The factors articulated in the Rule are "in no way exclusive," and the court should consider the circumstances of each individual case. *Int'l Sav. & Loan Ass'n v. Carbonel,* 93 Hawai'i at 470, 5 P.3d

at 460 (citation omitted). Upon reviewing the named factors above, as well as equitable factors the trial court considered in its analysis, we hold that the trial court did not abuse its discretion when it found that Huddy–Yamamoto was not an indispensable party in this case.

a. *Factor One: Prejudice to Huddy–Yamamoto; Prejudice to the Parties*

The trial court found that Huddy–Yamamoto was not prejudiced by the order in this case. As stated in the FOFs:

102. There are no facts in the record to suggest that the Huddy family will be prejudiced by not participating in the instant lawsuit. Indeed, they were asked to participate, and refused. The access they currently enjoy is "now improved, and easier access than before."

[ . . . ]

104. There are no facts in the record to suggest that the Huddy family will be prejudiced by the Plaintiffs' claim to irrigation and drinking water in the instant case.

The trial court did not abuse its discretion in so finding for several reasons. First, because Huddy–Yamamoto is not a party to the lawsuit, she is not bound by the trial court's decision. Huddy–Yamamoto testified that the access to her property is better than it was before; however, if she decides she would like to pursue litigation in the future to gain even better access than she currently enjoys, the trial court's order in this case will not preclude her from doing so. The dissent states that "Pflueger or his successor can deny [Huddy–Yamamoto] access at any time." Dissent at 522, 280 P.3d at 120. This is not accurate. Respectfully, in claiming that Pflueger may deny Huddy–Yamamoto access, it seems the dissent is conflating legally-enforceable rights with judicially-determined rights. Huddy–Yamamoto has the same right to access her property that she had before this lawsuit. The fact that she has not pursued litigation, as the Marvins have, to acquire judicial declaration of her rights does not negate her ability to enforce them. If defendants or any potential successors to the servient estate were to interfere

with Huddy–Yamamoto's access rights, the judgment in this case would not prevent Huddy–Yamamoto from pursuing legal action to assert her rights. In fact, the dissent admits as much when it writes, in a subsequent section of analysis, that "Huddy–Yamamoto may seek to have a legal right of way established by asserting rights to an easement as part owner of the kuleana. She may seek to have the easement changed or located elsewhere, in a more convenient and accessible location." Dissent at 523, 280 P.3d at 121.

Second, in considering the potential for prejudice, it is not an abuse of discretion for the trial court to consider Huddy–Yamamoto's refusal to participate in the litigation. The court found:

> 90. Ms. Huddy testified that she was asked by Plaintiffs' attorney to participate in the instant lawsuit against Defendants, but she refused.
>
> [ ... ]
>
> 100. Access to their kuleana was never in contention between [plaintiffs] and William Huddy because the Huddy family always had a trail to their house.
>
> 101. Neither Elizabeth Huddy or Heidi [Huddy–Yamamoto] reside at the Pila'a kuleana.
>
> 102. There are no facts in the record to suggest that the Huddy family will be prejudiced by not participating in the instant lawsuit. Indeed, they were asked to participate, and refused. The access they currently enjoy is "now improved, and easier access than before."
>
> [ ... ]
>
> 104. There are no facts in the record to suggest that the Huddy family will be prejudiced by the Plaintiffs' claim to irrigation and drinking water in the instant case.
>
> 105. The Huddy family enjoys access and water to their kuleana and specifically refused to participate in this case.

The dissent notes that these findings of fact regarding Huddy–Yamamoto's refusal to join the lawsuit do not specifically state "whether Huddy–Yamamoto knew that the proceeding involved kuleana claims when she purportedly refused to participate." Dissent at 515 n.

8, 280 P.3d at 113 n. 8. However, there is nothing in the record to support a finding that plaintiffs limited their invitation to the property damage claims. First, the earliest complaint filed in this case seeks "[a] preliminary and permanent injunction preventing Defendant Pflueger from blocking Plaintiffs' access road to and from their properties at Pila'a Beach ..." The plaintiffs' access to their property has always been at issue in this case. Second, on the third day of trial, when plaintiffs' counsel asked about her refusal, Huddy–Yamamoto testified as follows:

Q. You remember having a conversation with me, do you not, before the filing of the lawsuit?

A. Yes.

Q. And I asked you if you wanted to participate in this case?

A. Yes.

Q. And at that time you did not, did you?

A. Did not.

Q. And you did say that you would work things out directly with Mr. Pflueger, didn't you?

A. Yes.

Q. And have you worked things out with Mr. Pflueger?

A. Regarding the access?

Q. Yes.

A. This is not up to Mr. Pflueger. It's up to the County or powers to be.

Huddy–Yamamoto proceeded to testify that instead of joining the lawsuit, she talked to the County and to the Pflueger's attorney expert witness to work on access to her property. This testimony supports the finding that Huddy–Yamamoto knew the lawsuit was about access because approaching the County would not be an alternative to a lawsuit seeking recovery for property damage, as it was for access. But even assuming, arguendo, that plaintiffs' counsel only asked Huddy–Yamamoto to join the property damage claims, it is undisputed that Huddy–Yamamoto had an attorney at the time of trial and understood that the purpose of the lawsuit at the time of the hearing was to establish access to the properties at Pila'a Beach. Even so, she did not file a motion to intervene in the lawsuit. It was not an abuse

of discretion for the trial court to consider the fact that Huddy–Yamamoto actively refused to join the lawsuit to protect her interests when weighing the prejudice factor of Rule 19(b).

The dissent points to the plaintiffs' invitation for Huddy–Yamamoto to join their lawsuit as an indication that Huddy–Yamamoto is an indispensable party. Dissent at 531, 534–35, 280 P.3d at 129, 132–33. However, the invitation to join another party, or even the belief that a nonparty "should be made a party" is not sufficient to establish that the invited party is indispensable to the case. Dissent at 531, 280 P.3d at 129. The plaintiffs in this case are a group of neighbors who live on kuleana throughout the defendant's ahupua'a on Kauai; plaintiffs' counsel represents many individuals on numerous claims, and the fact that Huddy–Yamamoto was invited to join the lawsuit does not establish that the court cannot adjudicate the existing plaintiffs' access rights in her absence.

A trial court engaging a Rule 19(b) analysis must also consider prejudice to the existing parties. Defendants claim that they are prejudiced by the trial court's decision because they may be subjected to multiple lawsuits. In weighing the potential prejudice to the parties, trial courts may consider equitable principles, such as defendants' delay in raising their defense. As the Committee Note to the 1966 amendment of the federal Rule 19 states, when a party raises joinder to protect himself against future lawsuits that the nonparty may file against him, "his undue delay in making the motion can properly be counted against him as a reason for denying the motion." Advisory Committee Notes to 1966 Amendments of Fed. R. Civ. Pro. 19.

Hawai'i courts have applied similar logic. In *Almeida v. Almeida,* a mother who held property as a joint tenant with her son, George, sought to divest him of his interest because he was not providing care for her as he had promised. 4 Haw.App. 513, 514–15, 669 P.2d 174, 177 (1983). On the morning of trial, and nearly a year after the action had been filed, George filed a motion to dismiss, alleging that his brother Henry was an indispensable party. *Id.* at 515, 669 P.2d at 177.

George argued that Henry was, along with their mother, the grantor who signed the deed over to George; if that grant is now invalid due to George's nonperformance, then Henry may still have a part interest in the property. *Id.* The trial court denied George's motion to dismiss, and the Intermediate Court of Appeals affirmed, writing that it was "fatal for George to have waited to file his motion until the day of trial when Mrs. Almeida was in court ready to proceed." *Id.* at 517, 669 P.2d at 178. However, defendants here waited until four years after the complaint was filed, and until only five days before the trial was to begin to raise the issue of Huddy–Yamamoto's nonjoinder, and then they did not even file a proper 12(b)(7) motion to dismiss for lack of joinder.

The dissent distinguishes *Almeida* based on the motives of the parties. Dissent at 533, 280 P.3d at 131. While George Almeida sought to protect his interest in the property, the dissent argues that defendants today seek to protect Huddy–Yamamoto's interest. Dissent at 533, 280 P.3d at 131. We disagree with the dissent's narrow reading of *Almeida,* and with its characterization of the facts of today's case. First, though the ICA's analysis in *Almeida* is brief, the ICA lists several factors considered in their analysis. We see no reason to read *Almeida* as purely a case about the moving party's motive because the ICA considered the fact that Mrs. Almeida was in the courtroom and ready to proceed, as well as the likelihood that the court's decision would be binding on him. Furthermore, the one case cited by the ICA for support, *Nat'l Board of YWCA v. YWCA of Charleston, S.C.,* 335 F.Supp. 615 (D.S.C. 1971), does not mention the moving party's motive once, but rather focuses its analysis on the timing of the motion and the prejudice to other parties. 335 F.Supp. at 627 (noting that the delay in the motion until the morning of trial warrants its denial due to laches, unnecessary delay, and the expense that granting the motion would have caused for the other parties who were ready to proceed). *See also Ishida v. Naumu,* 34 Haw. 363, 372 (Haw.Terr.1937) ("A court of equity ... has always refused its aid to stale demands where the party has slept upon his

rights or acquiesced for a great length of time.")

We also disagree with the dissent's characterization of defendants' motives in this case. The first argument defendants provide in their position statement maintains that nonjoinder could effect "an unreasonable burden on [their] servient property," and "leave Defendants and the servient parcel subject to subsequent litigation over the same issue, and to inconsistent or conflicting decisions ..." Furthermore, due to Huddy–Yamamoto's knowledge of and participation in the trial, defendants' role as protector of the nonparty's interest is diminished.

■ Expecting parties to timely raise claims serves two important functions: first, it gives the trial court greater opportunity to consider claims and to submit them to the opposing party for briefing. Second, it discourages "sandbagging," the practice of saving issues to stall proceedings at the trial level or to raise them on appeal only if they lose at trial.[15] *See State v. Miller*, 122 Hawai'i 92, 135, 223 P.3d 157, 200 (2010) (Nakayama, J., dissenting) (*citing Wainwright v. Sykes*, 433 U.S. 72, 89, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *United States v. Vonn*, 535 U.S. 55, 72, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002)). The long delay in raising the issue at trial weighs against requiring dismissal of the proceedings in this case.

It is incorrect to state, as the dissent does, that "Pflueger's delay, if any, in raising the issue was never a factor in this case." Dissent at 533, 280 P.3d at 131. The court described the timing of Pflueger's motion as the "fundamental problem," and the court's

"fundamental concern." Further, the court admonished the defendants that "[t]he purpose of the position statement is to summarize your respective positions, and I use the word 'summarize' strongly, as well as list your witnesses and your proposed exhibits. Not to bring up new issues." In answer to an objection from plaintiffs' counsel regarding defendants' delay, the court assured the parties that "whatever was properly pled will be heard this morning. The Court does note that, I believe in the defendants' position statement, there were issues that were raised for the first time and the Court takes notice of that." The foregoing analysis supports the trial court's determination that Huddy–Yamamoto was not an indispensable party, and does not indicate an abuse of discretion.

### b. *Factor Two: Lessening or Avoiding Prejudice*

As to the second factor of the Rule 19(b) analysis, whether prejudice can be lessened or avoided in the shaping of the relief, we note that the easement granted by the trial court is non-exclusive[16] and preserves the status quo. As the court found:

62. The specifics of the location, the width, the nature of the use of the access are for the Court to decide.

63. The actual access that the parties have been using is evidence · of where it might be placed and where a commissioner of ways, or judge in equity might reasonably choose to put it. Where the access has been historically is one of the ways of determining where it ought to be.

[ ... ]

---

15. While indispensability was not raised for the first time on appeal in this case, we recognize that other jurisdictions facing that scenario have articulated rules meant to address similar concerns. *See e.g. Judwin Prop., Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432, 434–35 (5th Cir.1992) ("This Court will not endorse an effort by plaintiffs to lay behind the log and raise the issue of indispensable parties following an adverse ruling.")

16. The dissent argues that the fact that the easement is nonexclusive does not factor in to analysis of prejudice suffered by Huddy–Yamamoto because a non-exclusive easement, by definition, merely permits the servient landowner use of the

easement. Dissent at 529 n. 36, 280 P.3d at 127 n. 36. However, the type of easement is relevant because if there existed any evidence that the court's order were exclusive to the Marvins (and thus to Huddy–Yamamoto's detriment), this would be an indication of prejudice to Huddy–Yamamoto. This is not the case. Instead, the record shows that several groups of people use this road, including "fishermen, hula halau, beachgoers, campers, Defendant Pflueger and his employees." Ms. Marvin testified that "It's the most well-traveled road on the property." The easement does not preclude Huddy–Yamamoto or any of these other groups of people from using the road, as an exclusive easement would; this is certainly relevant to the analysis of prejudice.

106. Testimony from witnesses established a traditional access route to the Marvin kuleana from the middle gate at Koolau Road through Defendant Pila'a 400 LLC's parcel and to the bluff above Pila'a beach. This road was also the main access road used by Kilauea Sugar Plantation over 30 years ago.

[ ... ]

108. According to the testimony of Mrs. Sproat, the traditional road extended part way down the bluff to a plateau with ironwood trees. This is where they parked their cars. From the plateau, there were three trails down to the beach-one on the Hanalei side, one over the tip of the hill and straight out to the ocean, and another trail on the Kapaa side. There was never a road to the Huddy house.

[ ... ]

114. Nicholas Marvin has lived at Pila'a permanently since 1978. He also testified about the access roads to the kuleana. When he first moved to Pila'a, he drove down the center, or traditional, road, [sic] to the pali. The traditional road is a straight, flat dirt road that is "passable at all times until you get to the steep part of the road, just right on the cliff, where it starts down the cliff."

115. Nicholas Marvin testified that the road from the pali to their kuleana was there when his family bought the property in 1965. He and his brother Richard Marvin maintained the road, but never widened it. They used cane knives and chain saws to cut back the hau, to this day. They continue to maintain the road from the pali to their kuleana.

116. He also testified, "The Huddy's [sic] parked about half way down the pali. There is a little plateau where people would park." "There was a walking trail to the Huddy's further to the east. There were two, maybe three trails." "There was a trail where the Huddy's [sic] and the fishermen would park. The trail went directly to the Huddy's and off to the east that the fishermen used so they wouldn't impact the Huddy's [sic].

[ ... ]

120. Plaintiff Amy Marvin is married to Richard Marvin. She first visited Pila'a in 1975. She took the same route they are using today. In 1975, she drove all the way down to the Marvin kuleana in a two wheel vehicle. When it rained, you needed a four wheel drive to make it up or down the pali road.

[ ... ]

123. Plaintiffs' Exhibit P1, received in evidence, is a map that depicts three roads from Koolau Road through Defendant Pila'a 400 LLC's parcel, to the pali above the Marvin and Huddy kuleana, that have been used over the years.

[ ... ]

125. The "lower road," depicted by the number # 3 in Exhibit P1, did not exist until the year 2000 when James Pflueger "eliminated the traditional road and told us to onto [sic] the road marked # 3."

127. Route # 3 traversed along the eastern boundary of Pila'a 400 LLC's parcel, and through a stream bed referred to as Gulch 2 until reaching the bottom of the gulch where it then proceeded towards the west, behind the Huddy house and stopped at the Marvin parcel.

128. Route # 3 was in use from 2000 until 2002 when it was condemned by the County following the mudslide of November 26, 2001.

129. The testimony of Heidi Huddy that her family used Route # 3 in the 1970's and 1990's is mistaken as Route # 3 did not exist until the year 2000.

130. Plaintiffs' traditional access road (Route # 2) was restored in 2002 because Route # 3 was condemned by the County of Kaua'i and the Department of Health ordered that Mr. Pflueger restore the Marvin's traditional access to their home.

[ ... ]

133. Traditionally, Route # 2 identified in Exhibit P1, beginning at the Koolau gate to the bluff above Pila'a beach, has been used by fishermen, hula halau, beachgoers, campers, Defendant Pflueger and his employees, among others.

As these findings show, the trial court considered historical access routes and found the

traditional access road to be an appropriate route for the easement. This access road leads directly to the parking area by the staircase that goes to the Huddy property, and as Huddy–Yamamoto testified, this access is "improved" and "easier" than it had ever been. The fact that the easement maintains the status quo and does not prevent any resident from accessing the property as they have been accessing it is certainly a factor the court may consider in determining whether it may, "in equity and good conscience" proceed without all the residents of the kuleana present.

Additionally, any prejudice of the decision is lessened because, as noted by the trial court, the access route is not permanent and may be changed in the future. The court found:

64. The access can be moved at the need of either party as long as that need is not unreasonably burdensome or unfair to the other party. The court is to decide what is reasonable under the circumstances.

[ ... ]

137. Defendants' witness, Bruce Graham, testified that a kuleana access road "can be moved at the need of either party as long as that need is not unreasonably burdensome or unfair to the other party."

138. Although Defendants wish to reroute Plaintiffs' currently used access road, Defendants have failed to demonstrate a need for the re-routing of the access road at the present time.

The trial court's order in this case does not strip the parties or Huddy–Yamamoto of the ability to change the access to their kuleana in the future, should access needs change.

#### c. *Factor Three: Adequacy of Judgment*

The lawsuit sought determination of access rights for the plaintiffs over the defendants' servient estate. The court was able to adequately resolve this question for the plaintiffs in Huddy–Yamamoto's absence. Thus, the adequacy of judgment factor weighs against finding Huddy–Yamamoto to be indispensable, and it weighs in favor of resolving the lawsuit in her absence.

#### d. *Factor Four: Adequate Remedy if Dismissal Permitted*

The trial court found many facts that go to the importance of the lawsuit to the plaintiffs, as well as the delays the plaintiffs had already experienced in determining their access routes. The court found:

65. Without vehicular access to their kuleana at Pila's [sic] the Marvin Plaintiffs cannot live in their home.

[ ... ]

91. Without water from the western stream and spring, the Marvin Plaintiffs will be deprived of their only source of water and cannot live in their home at Pila'a.

[ ... ]

141. The Court takes judicial notice of the Defendants' Motion To Establish Temporary Access [sic] Roadway Access in 2003, and the Order Granting In Part and Denying in Part Defendants' motion. The Order, filed on July 18, 2003, allowed Plaintiffs to "have the right to continue to use the vehicular way that Plaintiffs are presently using."

[ ... ]

143. The 2003 Order further provided that "Defendants are to inform the Court if the eastern access road can be made passable for two wheel drive vehicles and if so, when. But until such time as the Court determines that any other alternative route will be sufficient, the Plaintiffs shall continue using the pathway or vehicular way that they are presently using."

144. Defendants failed to propose an alternate route and, after nearly three years, Plaintiffs filed their Motion for Partial Summary Judgment re: Easement by Necessity and/or Order Issuing Preliminary Injunction.

These facts, the fact that plaintiffs had waited years to determine their access rights, and the fact that plaintiffs actually reside on their property and rely on being able to access their property to live their daily lives all weigh against dismissal. "[E]ven if the defendant raises the issue of failure to join a party in a fashion that is timely under the letter of the rule governing defensive re-

sponses, the court can deny the motion if, in 'equity and good conscience,' defendant's undue delay will cause harm to the plaintiff." *Moore's Federal Practice* § 19.02[4][b].

Thus, as shown by our review of the four factors of Rule 19(b) analysis, the trial court did not abuse its discretion in finding that Huddy–Yamamoto was not indispensable to the action.

Finally, we note the policy considerations supported by the holding in this case. First, participating in a lawsuit is an expensive, sometimes cost-prohibitive, undertaking. When one owner of a partitioned kuleana, after experiencing years of difficulties in accessing his home, seeks a judicial determination of his right to access, it does not follow that everyone with an interest in the kuleana must retain counsel and join the lawsuit under these circumstances. Where, as here, the prejudice to nonparties can be eliminated or limited, Rule 19 does not automatically mandate dismissal of the plaintiffs' case if the owners of other partitions are absent. We understand the benefits of having all desirable parties before the court in every case. However, we also know that, as a practical matter, this is not always possible and, at some point, cases must come to trial.

The dissent argues that the "relevant 'policy' inherent in HRCP Rule 19 is to effect the public's interest 'in avoiding repeated lawsuits on the same essential subject matter.'" Dissent at 535, 280 P.3d at 133. While this is certainly one relevant interest, if avoiding multiple litigation were the singular aim of Rule 19, the rule would simply require joinder of every party with an interest when raised at any time, and it would forbid courts from entering judgments in the absence of any affected party. In reality, Rule 19 reflects the complicated landscape of litigation, where the rules of procedure seek to balance multiple interests and policies. As Justice Brennan explained, "[u]nder the Rules [of Civil Procedure], the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties ..." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (emphasis added). The rules of civil procedure foster consideration of the facts and circumstances of individual cases. HRCP Rule 19 gives the trial court discretion to determine, "in equity and good conscience," whether a case must be dismissed for lack of an indispensable party. Where, as here, there is no abuse of that discretion, the appellate courts must not reverse the trial court's decision.

## IV. CONCLUSION

Based upon the foregoing analysis, the judgment of the Intermediate Court of Appeals is reversed, and the trial court's decision is hereby affirmed.

Concurring and Dissenting Opinion by ACOBA, J.

The majority forecloses Respondent/Defendant–Appellant James Pflueger[1] (Pflueger) from joining Heidi Huddy–Yamamoto (Huddy–Yamamoto), the owner of one-third of the kuleana parcel at issue, the Haena Kuleana (hereinafter referred to as Haena Kuleana or the kuleana), in the lawsuit for access and water rights over Pflueger's land brought by Petitioners/Plaintiffs–Appellees & Counter–Claim Defendants–Appellees Richard Marvin, III (Richard III), Nicholas Fred Marvin, and Barbara Nelson (hereinafter collectively referred to as the Marvins), the owners of the other two-thirds of the kuleana, essentially because Pflueger allegedly raised joinder in an untimely manner. With all due respect, in doing so, the majority undermines the plain language and purpose of Hawai'i Rules of Civil Procedure (HRCP) Rule 19 (2000),[2] which mandates a court to

---

1. Defendants include James Pflueger, individually and as a representative of Pflueger Properties, Pflueger Properties, Pila'a 400 LLC, and Roger Taniguchi Inc. (hereinafter collectively referred to as Pflueger).

2. HRCP Rule 19 entitled "Joinder of Persons Needed for Just Adjudication," states as follows:

**(a) Persons to be joined if feasible.** *A person who is subject to service of process shall be joined as a party in the action if* (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may

order joinder of a "necessary party" [3] such as Huddy–Yamamoto. HRCP Rule 19 facilitates the judicial obligation to ensure due process and to maintain the efficient administration of justice. The majority's decision today abrogates that obligation.

I would have held that Huddy–Yamamoto is a necessary party under HRCP Rule 19(a). Further, because it was feasible to join Huddy–Yamamoto, the circuit court of the fifth circuit (the court) should have ordered her joined as a party. It is only when joinder of a necessary party is not feasible that, pursuant to HRPC Rule 19(b), a court considers whether, in equity and good conscience, the case should be dismissed because the absentee is an indispensable party. Assuming, *arguendo*, that Huddy–Yamamoto's joinder was not feasible, she was indispensable under HRPC Rule 19(b), and therefore, the court should have dismissed the case without prejudice.

Respectfully, the majority errs in several other respects. First, the majority mischaracterizes Huddy–Yamamoto's interest by construing it narrowly. Second, the majority errs in holding that Huddy–Yamamoto is not an indispensable party. Third, the majority wrongly contends that delay is the crucial factor to be considered in applying HRCP Rule 19(b) in the instant circumstances. Fourth, neither equity, good conscience, nor policy considerations support the majority's position. Fifth, "substantial compliance" with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4)(C) (2007) [4] need not be reached because the findings that were not challenged by Pflueger on appeal were in

*(A) as a practical matter impair or impede the person's ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.* If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff.

**(b) Determination by court whenever joinder not feasible.** *If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed,* the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

**(c) Pleading reasons for nonjoinder.** A pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons as described in subdivision (a)(1)-(2) hereof who are not joined, and the reasons why they are not joined.

**(d) Exception of class actions.** This rule is subject to the provisions of Rule 23.
(Emphases added.)

**3.** As indicated in note 2, the HRCP does not describe a person who meets the criteria under HRCP Rule 19(a) as a "necessary" party. The

HRCP was amended in 1972 to conform to the 1966 revision of the Federal Rules of Civil Procedure (FRCP), *Almeida v. Almeida*, 4 Haw.App. 513, 516, 669 P.2d 174, 178 (1983), which eliminated the necessary party label to "emphasize" the "real purpose" of HRCP Rule 19(a), which was "to bring before the court all persons whose joinder would be desirable for a just adjudication of the action[.]" *Int'l Sav. & Loan Ass'n v. Carbonel*, 93 Hawai'i 464, 471, 5 P.3d 454, 461 (App. 2000) (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure: Civil* § 1604, at 36–37 (2d ed.1986)). However, since this court has continued to refer to parties to be joined under HRCP Rule 19(a)(1) as "necessary," we follow precedent and continue to refer to those parties as necessary, keeping in mind the purpose of the revision. *See UFJ Bank Ltd. v. Ieda*, 109 Hawai'i 137, 142–43, 123 P.3d 1232, 1237–38 (2005) ("Initially, the circuit court must determine whether the absent party is a *'necessary'* party and, if so, 'the court shall order that [the person] be made a party.' " (quoting HRCP Rule 19(a))) (emphasis added). In any event, most courts continue to employ the terms necessary and indispensable, despite the revision. *See* 4 James Wm. Moore et al., *Moore's Federal Practice* § 19.02[2][c] (2011) (hereinafter referred to as *Moore's Federal Practice* ) ("Although Rule 19 does not use the term 'necessary,' it is the traditional term that counsel and judges routinely use.").

**4.** HRAP Rule 28(b)(4)(C) provides that an opening brief shall contain "a concise statement of the points of error" and "when the point involves a finding or conclusion of the court or agency," there must be "either a quotation of the finding or conclusion urged as error[.]"

actuality conclusions of law redundant of conclusion number 12, which was challenged by Pflueger. Lastly, in a holding that will have wide-ranging and deleterious effects on civil practice in this jurisdiction, the majority incorrectly concludes that a party *waives* the defense of the lack of a *necessary* party if the defense is not raised in a responsive motion or pleading pursuant to HRCP Rule 12(h)(1) (2000) [5], and that a party does *not* waive the defense of the lack of an *indispensable* party under the same circumstances. This theory was never raised, argued, or briefed by the parties, and to assert it as a basis for the majority's holding, without giving the parties an opportunity to express their views, is unfair to the parties and injurious to the appellate process. Thus, I respectfully dissent.[6]

## I.

The following facts are adduced from the unchallenged findings issued by the court in its January 4, 2007 Findings of Fact, Conclusions of Law, and Order (findings, conclusions, and order). Testimony of witnesses and the submissions of the parties supplement the court's findings for a complete recitation of the facts.

## A.

The Haena Kuleana is traceable to the Great Mahele. The Great Mahele of 1848 divided the lands between the chiefs and the King. *Kalipi v. Hawaiian Trust Co.*, 66 Haw. 1, 7, 656 P.2d 745, 749 (1982); *see Rogers v. Pedro*, 3 Haw.App. 136, 139 n. 5, 642 P.2d 549, 553 n. 5 (1982) (noting that the Great Mahele awarded divisions of land running from the sea to the mountains). "Two years later, ... commoners were permitted to obtain fee simple title to the lands which they had cultivated[,]" under HRS § 7–1. *Kalipi*,

66 Haw. at 7, 656 P.2d at 749. HRS § 7–1 (2009 Repl.) states:

> Where the landlords have obtained, or may hereafter obtain, allodial titles to their lands, the people on each of their lands shall not be deprived of the right to take firewood, house-timber, aho cord, thatch, or ki leaf, from the land on which they live, for their own private use, but they shall not have a right to take such article to sell for profit. *The people shall also have a right to drinking water, and running water, and the right of way.* The springs of water, running water, and roads shall be free to all, on all lands granted in fee simple; provided that this shall not be applicable to wells and watercourses, which individuals have made for their own use.

(Emphasis added.)

At some point, the Haena Kuleana came to be owned by, among others, William L.F. Huddy (William) and Elisabeth S. Huddy (hereinafter, William and Elisabeth are collectively referred to as the Huddys). In July 1965, a Partition Order subdivided the Haena Kuleana into Lot 1–A to the Huddys, and Lot 1–B to other owners. Ownership of Lot 1–A is now vested in Huddy–Yamamoto. Ownership of Lot 1–B now rests with the Marvins. Neither the Partition Order nor the intervening conveyances contained any exceptions or reservations as to the right of access, or "assign[ed] or allocate[d] any appurtenant water rights between Lots 1A and 1B."

The Pila'a property is currently owned by Pila'a 400, LLC, of which Pflueger may presently be the "sole member[.]" (Hereinafter, the Pila'a property is referred to as the Pflueger property or Pflueger's property.) "The Haena *[K]uleana* is a landlocked parcel of land and is located within the [Pflueger property]." (Emphasis in original.) The ku-

---

5. HRCP Rule 12(h)(1) provides that "[a] defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process *is waived* (A) *if omitted from a motion* in the circumstances described in subdivision (g) or (B) *if it is neither made by motion under this rule nor included in a responsive pleading* or an amendment thereof permitted by Rule 15(a) to be made as a matter of course." (Emphases added.)

6. I concur that we can review the findings that were not challenged by Pflueger on appeal, but not because Pflueger substantially complied with HRAP Rule 28, as the majority holds. In my view, the unchallenged findings were in the nature of conclusions that were challenged, and were therefore reviewable on appeal.

leana is accessible only by traveling across Pflueger's property.

### B.

#### 1.

Taro has been growing on the kuleana "since way back[.]" (Internal quotation marks omitted.) There are two streams near the kuleana. One stream, west of the kuleana and on Pflueger's property, "ran continuously[,]" whereas a stream east of the kuleana was "a trickle." A ditch ran from the western stream to the kuleana. Because the Marvins and the Huddys sought a water source, they reached "an agreement about the water" and inserted a pipe in the ditch, which carried water from the stream to the Marvins' property and to the Huddys' property. However, in 2001, the water pipe became clogged and water no longer traveled through the pipe to Huddy–Yamamoto's property.

In 1974, Richard III discovered a spring above the ditch between the western stream and the Marvin property. This spring was on the Pflueger property, approximately thirty-eight feet from the Marvins' western boundary. Richard III built a catchment to collect water from the spring, and has used it as his sole source of drinking water.

#### 2.

Three access routes to the kuleana through the Pflueger parcel have been used over time. The "traditional access route" is entered through the middle gate at Koolau Road, crosses the Pflueger property on the western end, and terminates at the bluff above Pila'a Beach. The "center, or traditional, road" crosses the middle section of the Pflueger property. This road, more direct than the first, has been maintained by the Marvins. Fishermen, beachgoers, campers, and others have used this route to access the beach. A third route, created in 2000, crossed the east side of the Pflueger proper-

ty, but was condemned by the county following the mudslide of November 26, 2001 (mudslide).

#### 3.

Access has been a point of contention between Pflueger and the kuleana owners for some time. In 1988, William Huddy participated in a lawsuit over road access through the Pflueger property to various kuleana. The 1988 complaint alleged that Pflueger, among other defendants, " 'failed to provide any access to the Plaintiff Kuleana Owners parcels' and 'that the Defendants acted willfully, intentionally, and maliciously in destroying roadways providing access to the Plaintiff Kuleana Owners' properties.' " (Quoting the complaint.) Richard Marvin was named in the 1988 complaint, but he withdrew from the lawsuit after Pflueger "told him that if he [withdrew] from the suit, the Marvin family would always be able to get to their property." There is nothing in the record to suggest the outcome of the Huddy claim for access, except there is no evidence of any legal right of way having been established for Huddy or for the Marvins.

### II.

#### A.

In April 2002, the Marvins filed their initial complaint against Pflueger for damages incurred in the mudslide. According to the Marvins' attorney, "before the filing of the lawsuit," the Marvins asked Huddy–Yamamoto if she "wanted to participate" in the lawsuit, but, according to the court's findings, "she refused." In January 2003, the Marvins filed a Second Amended Complaint[7] that for the first time included a claim for an alleged prescriptive easement over the Pflueger property, and alleged a violation of kuleana rights. There is no indication the Marvins asked Huddy–Yamamoto to join the lawsuit at this point.[8] Pflueger, in his answer to the

---

**7.** In September 2002, a First Amended Complaint was filed that reiterated the same claims as the original complaint but included Pila'a 400 LLC as a defendant.

**8.** The court and majority appear to imply that Huddy–Yamamoto refused to join the action regarding access and water rights. *See* majority opinion at 493, 280 P.3d at 91. However, the court did not indicate in its findings when Hud-

Second Amended Complaint, asserted, *inter alia,* that "[the Marvins] have failed to name indispensable parties to this action." [9]

In 2003, Pflueger also filed a motion to prohibit the Marvins from entering his property except through an eastern temporary roadway that the Marvins had used "occasionally since July 2000[,]" which the court granted in part.[10]

The case was stayed from April 2004 to June 2005. In May 2006, the Marvins filed a Third Amended Complaint. A month later, the Marvins, as kuleana owners, moved, *inter alia,* for partial summary judgment on their easement claim (summary judgment motion),[11] which was "derived ... from case law and statutory law governing landlords' title subject to tenants' or kuleana owners' use." Attached to the summary judgment motion was a title report prepared by Title Guaranty of Hawai'i on July 25, 2002. The report stated that Pflueger's title did not include "Royal Patent No. 3853, Land Commissioner Award Number 6527 to *Haena* [.]" (Emphasis added.)

After the Marvins filed the summary judgment motion, Pflueger filed his answer to the Third Amended Complaint, again listing as a defense the failure to join indispensable parties. Pflueger opposed the summary judgment motion, contending that there were material issues of fact in dispute,[12] and that the court was "required to conduct a trial on" whether an easement by necessity existed. On July 28, 2006, the court held in abeyance the Marvins' motion for summary judgment pending an evidentiary hearing set for August 9, 2006.

On August 4, 2006, Pflueger filed a position statement. In his position statement, Pflueger argued, *inter alia,* that "[b]ecause the question of an easement, at the very least, requires the presence of the owners of the Huddy parcel, the action should be dismissed in its entirety or the disposition of the motion stayed *pending the joinder of the Huddy parcel owners as necessary and indispensable parties.*" (Emphasis added.) Pflueger maintained that, "without the presence of the owners of the other [part of the

dy–Yamamoto was asked to participate, or whether she was asked to join when the litigation involved kuleana rights. Thus, it is not clear whether Huddy–Yamamoto knew that the proceeding involved kuleana claims when she purportedly refused to participate.

9. The majority maintains that although Pflueger raised this defense, "it is clear from the context of the other filings in the case that [Pflueger was] not referring to Huddy–Yamamoto[,]" alluding to the "filings" of Pflueger's motion to establish temporary roadway access, filed on March 18, 2003, which did not mention Huddy–Yamamoto, and Pflueger's motion to dismiss for failure to join Bluewater Sailing, Inc. as an indispensable party, filed in 2006. Majority opinion at 493 n. 5, 280 P.3d at 91 n. 5. Respectfully, viewing the defense in light of subsequent filings does *not* make it "clear" who Pflueger asserted was indispensable.

The defense was never limited to any party and, of course, was pleaded and preserved. Furthermore, Huddy–Yamamoto was not necessary to those motions inasmuch as they did not involve kuleana rights or the establishment of a permanent access route based on kuleana law. The former sought *temporary* roadway access; it did not attempt to establish a legal right of way based on kuleana law; therefore, Huddy–Yamamoto would not have been a necessary party to that action. Pflueger's motion to dismiss the complaint filed on July 19, 2006, does not support the conclusion that Pflueger's answer to the

complaint, filed in 2003, was limited to Bluewater Sailing.

10. The order granting in part Pflueger's motion allowed the Marvins to "use the vehicular way that [they] are presently using [,]" which appears to have been the center route that bisected Pflueger's property.

11. The Marvins also sought a preliminary injunction prohibiting interference with the Marvins' access.

12. As noted *supra,* on July 19, 2006, Pflueger moved, *inter alia,* to dismiss the Third Amended Complaint, naming Bluewater Sailing, Inc., as an indispensable party. On September 5, 2006, almost a month after the August 9, 2006 commencement of the evidentiary hearing on the summary judgment motion, the Marvins filed an opposition to Pflueger's motion to dismiss. The Marvins claimed that the motion to dismiss, filed after the answer, was procedurally defective unless the court, in its discretion, treated the motion as one for summary judgment. On September 11, 2006, Pflueger filed a reply, stating, "A defense based upon the absence of indispensable parties is not waived by the filing of an answer, but can be raised at any time[,]" and citing *Haiku Plantations Ass'n v. Lono,* 56 Haw. 96, 103, 529 P.2d 1, 5 (1974). The record does not reflect whether Pflueger's motion to dismiss was decided prior to the entry of judgment.

kuleana], [ ] access rights cannot be determined, as it would leave [Pflueger] and the servient parcel subject to subsequent litigation over the same issue, and to conflicting decisions."

### B.

The evidentiary hearing on the Marvins' summary judgment motion was held on August 9, August 23, September 15, and September 22. A site inspection occurred in December 2006. The court did not render a decision on the summary judgment motion until January 2007.

On August 9, 2006,[13] and September 15, 2006,[14] Pflueger argued repeatedly that Huddy–Yamamoto needed to be involved in the litigation. On September 15, 2006, Pflueger moved for a directed verdict [15] on the ground that the proceeding lacked an indispensable party, Huddy–Yamamoto.

After the court denied Pflueger's motion for a directed verdict, Huddy–Yamamoto was called as a witness by Pflueger and questioned extensively about the kuleana rights of her property. Huddy–Yamamoto testified that, as a child, from approximately 1955 to 1960, she spent her summers at the Huddy property and visited her grandmother. To access the property, she traveled on a "dirt road through the pasture, and [ ] parked on a plateau, and [ ] went down a trail." Fishermen, family members, friends, and others used the walking trail. In 1964, a company built a road (the company road) to the west of the Huddy property. A third route went over the Huddy parcel.

Before the third route was built, the Huddy parcel lacked vehicular access because the company road went directly to the Marvins' property without providing access to the Huddy property. Huddy–Yamamoto stated that she did not have permission to use that road because the Marvins denied her and her family access.

Although a pipe carrying water from an eastern stream provided rinsing water, Huddy–Yamamoto explained that potable water had to be manually carried to the Huddy property. Additionally, a pipe carried water from the western stream to the Huddy property, and some irrigation water was provided by Pflueger.

Huddy–Yamamoto was repeatedly questioned by both parties about her involvement in the case and her wishes for access and water. On direct examination by Pflueger's attorney, Huddy–Yamamoto testified she

---

13. On August 9, before testimony was presented, Pflueger argued that Huddy–Yamamoto was necessary to the proceedings, an issue he claimed had to be addressed before the evidentiary hearing commenced. The Marvins responded that it would be "unfair" and "untimely" to allow Pflueger to raise the issue. After the court stated that the hearing was to proceed, Pflueger inquired if he was precluded from "arguing indispensable parties," to which the court responded that it would "rul[e] on that later[.]" At the end of the day, Pflueger argued that access could not be "litigated and adjudicated without the Huddys[.]"

14. On September 15, noting that the absence of indispensable parties can be raised at any time, Pflueger again argued that the issue was "fundamental" and that there was a "judicial imperative" for the court to address whether Huddy–Yamamoto was needed in the proceedings inasmuch as "conclusive evidence" established that "the kuleana is the combination" of the Marvins' and Huddy–Yamamoto's properties, and that "any adjudication of kuleana rights affects the entire lot." The court denied the motion.

15. Although the majority insists on calling the evidentiary hearing a trial, *see* majority opinion at 497, 280 P.3d at 95, the nature of the hearing held by the court, whether a bench trial, or an evidentiary hearing, or both, is not evident from the record. HRCP Rule 50 (2000) was "amended [in 2000] and no longer refers to motions for directed verdict[,]" but "to motions for 'judgment as a matter of law[.]'" *Nelson v. Univ. of Hawai'i*, 97 Hawai'i 376, 393, 38 P.3d 95, 112 (2001) (quoting HRCP Rule 50). That rule provides that, "during a *trial by jury* ... the court may determine the issue against [a] party and may grant a motion for judgment as a matter of law against that party[.]" HRCP Rule 50(a)(1) (emphases added). The instant hearing was not a trial by jury. In a bench trial, the correct motion would be brought pursuant to HRCP Rule 52(c), which provides that a court may make a finding against a party on an issue and then enter judgment as a matter of law with respect to a claim or defense. HRCP Rule 52(c); *see* 9 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure: Civil* § 2371, at 220 (2011) (hereinafter *Wright & Miller*)(explaining that motions for judgment as a matter of law are held to different standards in jury and bench trials).

wanted to be involved as a party in the determination of access and water rights:

Q: Do you and your mother want vehicular access to your property, lot IA?

A: *Yes, we do want vehicular access.*

. . . .

Q: *Do you want to participate in this process as a party?*

A: *Yes.*

Q: *Do you want this Court to decide these issues of access to lots 1A and 1B without your involvement as a party?*

A: *I want to be involved.*

Q: Do you have an attorney?

A: Not presently here.

. . . .

Q: *And do you want water access for—drinking potable water for lot 1A?*

A: Yes.

Q: *Do you have it now?*

A: *No.*

(Emphases added.) On cross-examination by the Marvins' attorney, Huddy–Yamamoto testified that she had not been able to "work things out" with Pflueger regarding her access rights:

Q: You remember having a conversation with me, do you not, before the filing of the lawsuit?

A: Yes.

Q: *And I asked you if you wanted to participate in this case?*

A: Yes.

Q: *And at that time you did not, did you?*

A: *Did not.*

Q: And did you say that you would work things out directly with Mr. Pflueger, didn't you?

A: Yes.

Q: And have you worked things out with Mr. Pflueger?

A: Regarding the access?

Q: Yes.

A: *This is not up to Mr. Pflueger. It's up to the County or powers to be.*

Q: All right, but when you told me that you did not want to participate in this lawsuit, you wanted to work things out with Mr. Pflueger, *did you later meet Mr. Pflueger and come to any agreement as to what type of access your kuleana would have?*

A: *No.*

Q: And did you try to work things out with Pflueger insofar as access?

A: Not with Mr. Pflueger directly. I went to the planning commission instead, a planning person.[16]

(Emphases added.)

### C.

In January 2007, the court issued its findings, conclusions, and order. In pertinent part, the court found that although the Marvins and Huddy–Yamamoto were entitled to access, Huddy–Yamamoto refused to participate in the lawsuit and would not be prejudiced if the litigation proceeded without her:

60. . . . . The Marvin and Huddy kuleana are entitled to access through the [Pflueger] parcel. *Indeed, all kuleana owners have access.*

. . . .

102. There *are no facts in the record to suggest that [Huddy–Yamamoto]*[17] *will be prejudiced by not participating in the instant lawsuit. Indeed, [she was] asked to participate, and refused. The access [she] currently enjoy[s] is "now improved, and easier access than before."*

103. Based on [Pflueger's] witness Bruce Graham's testimony that the Marvin side of the kuleana was the "House Lot" side [and] that the Huddy side of the kuleana was the "lo'i," [Huddy–Yamamoto] is entitled to irrigation water. [Huddy–Yamamoto] *testified that she has irrigation water to her kuleana from [Pflueger].*

---

**16.** Huddy–Yamamoto met with a representative of the county, who explained that it would not be possible to rebuild the third route that provided access to her property "because of the violations Mr. Pflueger had done."

**17.** The court referred to the prejudice to the Huddy family; however, insofar as Huddy–Yamamoto was the owner, only prejudice to Huddy–Yamamoto is relevant.

104. *There are no facts in the record to suggest that [Huddy–Yamamoto] will be prejudiced by the Plaintiffs' claim to irrigation and drinking water in the instant case.*

105. [Huddy–Yamamoto] enjoys access and water to [her] kuleana and specifically refused to participate in this case.

142. [*Pflueger* ], who now argue[s] that [Huddy–Yamamoto] is an indispensable party with respect to road access, *failed to bring [Huddy–Yamamoto] into the instant case when filing [the] Motion to Establish Temporary Roadway Access in 2003.*

(Emphases added.) The court concluded that the Marvins were entitled to access to, and water for, their property, and that Huddy–Yamamoto was not indispensable because she refused to participate:

3. As *owners of a Kuleana* ... that is landlocked and traceable to the Great Mahele, [the Marvins] are entitled to an easement by necessity, and reasonable use of water for drinking, domestic and agricultural purposes.

4. [The Marvins'] right to an *easement by necessity, and to drinking, domestic and agricultural water,* is derived [in part] from case law and statutory law governing landlord's title subject to tenants' or kuleana owners' use, and the facts specific to this case.

. . . .

6. The kuleana rights to which [the Marvins] are entitled ... *run with their land.*

7. [The Marvins] are statutorily entitled to an easement by necessity under HRS Section 7–1, using the road they currently use from Koolau gate, along the western bound[ary] ... to their kuleana parcel at Pila'a beach.

8. Based on Hawai'i case law, ... and the facts specific to this case, [the Marvins] are entitled to vehicular and pedestrian access along the *current* route[.]

9. [The Marvins] are entitled to continued use of the road from the parking plateau to

their kuleana provided they remain responsible for the maintenance and repair of that portion of the road.

. . . .

12. The Court finds [Huddy–Yamamoto] is not an indispensable party as [she is] not prejudiced by the instant proceeding, and [she] refused to participate in the instant lawsuit.

13. The [Marvins'] right to water from the western stream and spring is an incident of their land ownership and cannot be severed from the land.

. . . .

15. The Court finds that unless [Pflueger is] enjoined and restrained from interfering with, dismantling, damaging or otherwise destroying [the Marvins'] pvc pipe and cistern that brings their only source of water to their kuleana, the [Marvins] will be permanently and irreparably injured.

(Emphases added.) In January 2007, the court granted the Marvins' summary judgment motion, confirmed an easement by necessity, and restrained Pflueger from "interfering with ... [the Marvins'] water system that brings water from the western stream and spring to their kuleana." Pflueger was ordered to "execute[ ] a recordable Non Exclusive Grant of Easement in favor of [the Marvins.]"

The parties stipulated to dismiss the remaining claims. In March 2007, judgment was entered, *inter alia,* in favor of the Marvins and against Pflueger "as to Count VII (Kuleana Rights) of the Third Amended Complaint[.]" [18]

### III.

On appeal, the ICA reviewed Pflueger's "arguments for plain error[,]" *Marvin v. Pflueger,* No. 28501, 123 Hawai'i 299, 2010 WL 2316274, at *10 (Haw.App. June 8, 2010) (mem.), and concluded that under HRCP Rule 19(a)(2), Huddy–Yamamoto was a necessary party [19] because (1) "the Huddy parcel

---

**18.** The court dismissed the Marvins' prescriptive easement claim.

**19.** Given the court's repeated use of the term "indispensable," the ICA apparently inferred

"that the court found that Huddy–Yamamoto was not necessary a[s a] party under 19(a) and ... then proceeded to analyze the facts according to 19(b)." *Pflueger,* 2010 WL 2316274, at *12. However, as the ICA recognized, the court would

and the Marvin parcel are parts of one kuleana" and "the kuleana is entitled to one right of way[,]" *id.* at *12, thus, "[a]s part owner of the kuleana," "Huddy–Yamamoto's ability to access her parcel could be impacted[,]" *id.* at *14; (2) the court's "determination regarding the kuleana's historical entitlement to water, if any, including the location of the water source and direction in which the water flows," *id.*, in addition to the amount of water in favor of the Marvins, could greatly impact Huddy–Yamamoto's access to water; (3) there was no evidence that Pflueger was legally bound to continue providing Huddy–Yamamoto with a right of way or water; (4) non-joinder would subject Pflueger to multiple or inconsistent obligations, inasmuch as Huddy–Yamamoto could later make claims for a different location of the easement, or a different location, direction, or amount of water for the kuleana, *id.* at *25; (5) "it would [not] have been infeasible to join Huddy–Yamamoto[,]" *id.* at *15; and (6) if joinder was somehow infeasible, she was an indispensable party under HRCP Rule 19(b), *id.* at *16.[20] The ICA determined the court erred in failing to join Huddy–Yamamoto as a party under HRCP Rule 19 and remanded the case for further proceedings. *Id.* at *16.

### IV.

At the outset, it must be noted that mandatory joinder ensures due process for the absent party. In general, "under fundamental principles of due process, a court is without jurisdiction to enter an order or judgment which affects a right or interest of someone not before the court." *Feen v. Ray,* 109 Ill.2d 339, 93 Ill.Dec. 794, 487 N.E.2d 619, 620 (1985); *see Jordan v. Officer,* 170 Ill.App.3d 776, 121 Ill.Dec. 760, 525 N.E.2d 1067, 1070 (1988) ("Basic notions of due pro-

cess require that all parties whose interest will be materially affected be before the court to present their position[.]"). "Rule 19 is designed to protect the interest of absent persons as well as those already before the court" inasmuch as "[t]he failure of the court to protect those not before it may amount to a violation of due process should the judgement in the action have the effect of destroying their rights." 7 *Wright & Miller* § 1602, at 17308. Mandatory joinder "preserves the principles[ [21]] of due process that are inherent in Rule 19 and which long antedate the Rules of Civil Procedure." *Disabled in Action of Pennsylvania v. Se. Pa. Transp. Auth.,* 635 F.3d 87, 101 (3d Cir.2011). Thus, "[d]ue process requires that a necessary person be a party to the action." *In re R.K.E.,* 594 N.W.2d 702, 705 (N.D.1999).

Indeed, the United States Supreme Court has indicated that a court's failure to protect an outsider's potential interests may involve due process, stating, "Neither Rule 19, nor we, ... mean to foreclose an examination in future cases to see whether an injustice is being, or might be, done to the substantive, or, for that matter, constitutional rights of an outsider by proceeding with a particular case." *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 123, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). HRCP Rule 19, then, is a "reliable and practical guide for the appropriate exercise of ... equity jurisdiction, in accordance with the fundamentals of due process." *Britton v. Green,* 325 F.2d 377, 382 (10th Cir.1963). Thus, compulsory joinder ensures the due process rights of absent persons by protecting their interests.

Mandating joinder also promotes the administration of justice inasmuch as joinder ensures the fair, efficient, and final determination of disputes. The policy interests un-

have had to first "infer" that Huddy–Yamamoto was a necessary party to comport with controlling case law, as discussed *infra.*

**20.** The ICA applied the correct analysis of HRCP Rule 19. The opinion logically and carefully proceeded through the application of HRCP Rule 19 to the determination of necessary or indispensable persons. Contrary to the majority's position, under our precedent the ICA's "[HRCP] Rule 19 analysis," majority opinion at 494, 280

P.3d at 92, was the only proper "analysis" of HRCP Rule 19.

**21.** The principles of due process include "considerations of notice and a right to be heard." *S–W Co. v. Schwenk,* 173 Mont. 481, 568 P.2d 145, 149 (1977); *see Nat'l Farmers Union Prop. & Cas. Co. v. Schmidt,* 219 N.W.2d 111, 114 (N.D.1974) ("On behalf of one not made a party to the action, due process demands the right to appear and to defend in a trial which might jeopardize or destroy the interest of such person.").

derlying Rule 19, that of "according complete relief, avoiding harm to the absentee, and avoiding unfair imposition of liability on the defendant[,] outweigh plaintiff autonomy in [the] structuring of litigation." *Gering v. Fraunhofer USA*, No. 05–73458, 2009 WL 648511, at *1 (E.D.Mich. Mar.11, 2009); *see Humphrey v. Yates*, No. 1:09–cv–00075, 2009 WL 5197217, at *1 (E.D.Cal. Dec.23, 2009) ("[T]he policy rationale of [FRCP] Rule 19 is to avoid creating harm for an absentee party or a defendant, rather than deferring to [the p]laintiff's autonomy.").

The absence of a necessary person in a suit renders it likely that the same or a similar dispute will be relitigated with the same or similar parties before another court in the future, resulting in additional delays and costs that are detrimental to the parties and the court system. It is the court's duty, not the parties' duty, to see to the administration of justice. "The necessity of preserving the integrity of judicial proceedings is always an *overriding consideration, and in protecting the proper use of our courts* it is not necessary for us to rely upon the diligence of the parties." *Farrow v. Dynasty Metal Sys., Inc.*, 89 Hawai'i 310, 313, 972 P.2d 725, 728 (App.1999) (internal citation omitted) (emphasis added). Thus, HRCP Rule 19 recognizes the "overriding consideration" of ordering joinder of a necessary person.

## V.

It is manifest that the ICA correctly determined that Huddy–Yamamoto is a necessary party under HRCP Rule 19(a)(2).[22] Huddy–Yamamoto claims interests in access to, and water for, her property; her absence impairs or impedes her ability to protect those interests; and her non-joinder "may" leave the Marvins and Pflueger subject to a "substantial risk of incurring multiple, or otherwise inconsistent obligations." *Id.* Inasmuch as Huddy–Yamamoto satisfies all of the requirements under HRCP Rule 19(a)(2), the court was mandated to join her in the action as a *necessary* party.

### A.

### 1.

Huddy–Yamamoto claimed an "interest relating to [the] subject matter of the action" inasmuch as the "action" involved access to the kuleana, and Huddy–Yamamoto sought access to her part of the kuleana. HRCP Rule 19(a)(2). At the hearing, she stated that she sought "vehicular access" and desired to "participate" in determining "access to Lots 1–A and 1–B." Therefore, she "claimed" an interest, i.e., access, "relating to" the action that involved a right of way derived from kuleana rights.

Because a kuleana is entitled to only one right of way, and that has been granted to the Marvins' portion of the kuleana, Huddy–Yamamoto's right to access her parcel may be legally foreclosed by the court's ruling.[23]

---

22. It is not surprising that in all other cases dealing with a kuleana's right to an easement, all owners of the kuleana have been parties to the lawsuit. *See Rogers*, 3 Haw.App. at 138, 642 P.2d at 551 (all owners of kuleana were involved in the lawsuit alleging easement by necessity under HRS § 7–1); *see also Palama v. Sheehan*, 50 Haw. 298, 298–99, 440 P.2d 95, 96–97 (1968) (defendants, owners of four separate kuleanas, sought a right of way through the plaintiffs' land, and the court held that they were entitled to *a* right of way); *Haiku Plantations Ass'n v. Lono*, 1 Haw.App. 263, 263, 618 P.2d 312, 312–13 (1980) (appellants, owners of a kuleana, sought an easement under HRS § 7–1).

23. HRS § 7–1 gives a kuleana owner a right of way based on necessity, or ancient or historical use. *Bremer v. Weeks*, 104 Hawai'i 43, 58, 85 P.3d 150, 165 (2004) (explaining that courts have granted a right of way based on necessity, or based on ancient and historical use). In determining that the plaintiff was entitled to a right of way, *Henry v. Ahlo* stated, "We do not regard it necessary to consider the question of prescriptive right, as this is a case of a way of *necessity*." 9 Haw. 490, 491 (Haw.Rep.1894) (emphasis added). A court may grant an easement for a right of way, even though statutory language does not specifically require a court to grant an easement. In *Rogers*, 3 Haw.App. at 138, 642 P.2d at 551, kuleana owners sought an easement under HRS § 7–1 based on necessity because the kuleana was landlocked. The ICA affirmed the court's grant of an easement, stating that the entitlement to an easement was derived "not only from expressed reservation contained in [Grant 464 issued by the Hawaiian Government] but also from HRS § 7–1, which confers a right of way to tenants' allodial lands." *Id.* at 139, 642 P.2d at 551.

*See Henry*, 9 Haw. at 491. In *Henry*, the plaintiff "own[ed] a kuleana" and sought a way to and from his land. *Id.* The Hawai'i Supreme Court of the Republic of Hawai'i stated that the plaintiff's right to and from his land is one that "he acquired with the land[ ]" and the plaintiff, based on that right, "could not have a number of roads; he [was] only entitled to one[.]" *Id.; see also Bremer*, 104 Hawai'i at 58, 85 P.3d at 165 (quoting *Henry* ). In the instant case, the court-placed easement leads solely to the Marvins' property.[24] Thus, the Marvins have obtained the only right of way to the kuleana. Under *Henry*, the court has, as a practical matter, excluded Huddy–Yamamoto from legal access to her parcel. Consequently, the court's holding has impaired or impeded Huddy–Yamamoto's ability to protect her interest in accessing her property.

The impairment of Huddy–Yamamoto's ability to protect her interest is not mitigated by the fact that she currently has access to her property. Although she apparently has informal permission to travel on Pflueger's property to reach her own property, it does not appear that Pflueger is under any binding obligation to allow such access. "A right that is terminable at will or merely permissive is not a legally enforceable right." *Bremer*, 104 Hawai'i at 67, 85 P.3d at 174 (noting that the plaintiff's claim of easement by necessity under HRS § 7-1 was not defeated even though the plaintiff had "current and undisturbed use" of an access route because the use of the access route was "revocable" at any time and carried with it no legal obligation). In other words, Pflueger or his successor can deny Huddy–Yamamoto access at any time.[25]

### 2.

Huddy–Yamamoto also claimed an interest in water. She wanted "fresh spring water" rather than the "irrigation water" that was being provided. Her interest "related to" the action inasmuch as it also involved kuleana water rights. The Marvins asserted a right to water based on their status as kuleana owners. A kuleana has a recognized right to water. "It is the general law of this jurisdiction that when land allotted by the Mahele was confirmed to the awardee ... such conveyance of the parcel of land *carried with it* the appurtenant *right to water* for taro growing." *McBryde Sugar Co. v. Robinson*, 54 Haw. 174, 188, 504 P.2d 1330, 1339 (1973) (emphases added).

The amount of water a kuleana enjoys for agricultural purposes must be, as precisely as possible, "the amount of water that was actually being used for taro cultivation at the time of the Land Commission Awards." *Id.* at 188–89, 504 P.2d at 1340. A kuleana also has a right to "running water," defined as "water flowing in natural water courses, such as streams and rivers[.]" *Id.* at 192, 504 P.2d at 1342. "[T]he right to 'running water' ... guarantees a land owner the same flow of water in a stream or river as at the time of the [M]ahele, without substantial diminution, or the right to flow of a stream in the form and size given it by nature." *Id.* at 192–93, 504 P.2d at 1342.

As noted before, the court enjoined Pflueger from interfering with the Marvins' "water system that brings water from the western stream and spring to their kuleana." Because the Marvins were entitled to such water based on kuleana rights, the type, quality, amount, and perhaps source, of water to the kuleana was also adjudicated by the court's decision. *See id.* at 192, 504 P.2d at 1342 (noting that the right to the use of running water "guarantees a land owner the *same*

---

24. Respectfully, the majority's assertion that the easement "leads" to the parking area by a staircase that goes to Huddy–Yamamoto's property, majority opinion at 511, 280 P.3d at 109, is misleading, inasmuch as it does not negate the fact that Huddy–Yamamoto does not have vehicular access to her property and does not have a legal right to use said easement.

25. The majority incorrectly states that this statement is not "accurate" inasmuch as Huddy–

Yamamoto has "the same right to access her property that she had before this lawsuit[,]" and, thus, she can "pursu[e] legal action" to enforce her right of access. Majority opinion at 506, 280 P.3d at 104. With all due respect, insofar as a kuleana is entitled to one right of way, and the court gave that right to the Marvins, Huddy–Yamamoto lacks any *legally enforceable right* to her property inasmuch as her access is by way of Pflueger's permission. The majority's statement to the contrary is not accurate.

*flow of water in a stream or river as at the time of the [M]ahele, without substantial diminution")* (emphasis added).

The court concluded that the Marvins, as kuleana owners, were entitled to water from the "western stream and spring[.]" In doing so, the court implicitly ruled that the kuleana historically had water from that source. If Huddy–Yamamoto were to seek water, she would have to prove that the kuleana did not obtain water from that western stream, but from another source, or that some of the water going to the Marvins must be diverted for her use. It is plain, then, that Huddy–Yamamoto's interest in water was impaired or impeded by the court's decision, as the ICA correctly decided. The Marvins have a legal right to fresh running water as a result of this decision. Huddy–Yamamoto does not.

### B.

An alternative basis for mandating HRCP Rule 19(a) joinder is that "any . . . of the . . . parties [may be] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the [absentee's] claimed interest." HRCP Rule 19(a)(2)(B).

### 1.

The Marvins may be at substantial risk of incurring multiple and inconsistent obligations as a result of the failure to join Huddy–Yamamoto. The easement granted to the Marvins under HRS § 7–1 runs directly to their property and does not provide access to Huddy–Yamamoto's property. Since Huddy–Yamamoto expressed an interest in having access, and a kuleana is entitled to only one right of way, there is a "substantial risk" that Huddy–Yamamoto will seek a different access route that runs to her property or an alteration of the Marvins' route. Consequently, there is a "substantial risk" that the location of the Marvins' court-granted right of way will be challenged or altered. Thus, the Marvins "may" be "subject to . . . multiple or . . . inconsistent obligations," HRCP Rule 19(a)(1)(B), because Huddy–Yamamoto was not joined.

The Marvins may also be subject to multiple and inconsistent obligations as a result of Huddy–Yamamoto's claimed interest in water. Currently, the Marvins have access to running water from a stream, but Huddy–Yamamoto also desires running water. A kuleana is entitled to a limited amount of water. Huddy–Yamamoto, as part owner of that water, may seek to change the location, flow, or amount of water presently allowed by the court for the Marvins' part of the kuleana. Therefore, the Marvins may be subject to multiple and inconsistent obligations with respect to their current use of water from the western stream.

### 2.

As the ICA correctly observed, Pflueger is also at a " 'substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of [Huddy–Yamamoto's] claimed interest[s].' " *Pflueger,* 2010 WL 2316274, at \*15 (quoting HRCP Rule 19(a)(2)(B)). Pflueger currently is obligated to provide an easement over his property to the Marvins. He is not legally obligated to provide Huddy–Yamamoto any access rights. In the future, Huddy–Yamamoto may seek to have a legal right of way established by asserting rights to an easement as part owner of the kuleana. She may seek to have the easement changed or located elsewhere, in a more convenient and accessible location. Therefore, Pflueger may be subject to further court proceedings over whether Huddy–Yamamoto is entitled to an alteration or relocation of the access serving only the Marvins.

Additionally, Huddy–Yamamoto could later claim that the kuleana water source should be relocated, the water direction modified, or the amount of water changed. In that case, again, Pflueger would be subject to future lawsuits and "double, multiple, or otherwise inconsistent obligations[,]" HRCP Rule 19(a)(2)(B), involving water access from or over his land.

### C.

As cogently explained by the ICA, if a party is "necessary" under HRCP Rule 19(a)(2), the question becomes whether the person can be feasibly joined. HRCP Rule

19(a) provides that "[a] person who is subject to service of process shall be joined as a party" if that person is necessary. "If the party has not been so joined," HRCP Rule 19(a)(2), then it is the mandated duty of the court (i.e., the court "shall") to "order that the person be made a party[,]" HRCP Rule 19(a)(2)(B).

In the instant case, Huddy–Yamamoto was a necessary party, as elucidated *supra*, and could be feasibly joined, since she participated in the evidentiary hearing and, thus, was subject to service of process. Based on the evidence adduced, Huddy–Yamamoto's absence may impede or impair her ability to protect her interests and may subject the Marvins and Pflueger to a substantial risk of incurring double or multiple obligations. With all due respect, under these circumstances, the court abused its discretion in failing to join Huddy–Yamamoto "as a defendant[ ] or ... an involuntary plaintiff," HRCP Rule 19(a)(2)(B). *See Ieda*, 109 Hawai'i at 142, 123 P.3d at 1237 (holding that whether action should proceed without absentee is a discretionary determination).

## VI.

Additionally, given that Huddy–Yamamoto's father previously sued Pflueger to obtain access to the kuleana, it is clear that this is not an issue that will be resolved by the court's order in this lawsuit in the absence of Huddy–Yamamoto's joinder. As noted before, in 1988, William Huddy participated in a lawsuit against Pflueger in a dispute over road access through the Pflueger property to various kuleana. Legal right of access to the Huddy kuleana was apparently not resolved. It is entirely foreseeable that Pflueger and the Marvins are at substantial risk of further litigation, inasmuch as access to the kuleana has been a source of contention in the past, has continued into the present, and in the absence of Huddy–Yamamoto's joinder, will continue in the future.

Manifestly, joinder of necessary parties, the purpose of which is to prevent multiple litigation, is designed to prevent the situation presented in this case. *See* 7 *Wright & Miller* § 1602, at 17308 ("Rule 19 is designed to protect the interests of absent persons as well as those already before the court from multiple litigation or inconsistent judicial determinations."); *see also Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir.1983) ("precluding multiple lawsuits on the same cause of action[ ]" is a goal of FRCP Rule 19). Moreover, the Advisory Committee on the Federal Rules of Civil Procedure (Advisory Committee) noted that the interests furthered by FRCP Rule 19 include the public's interest "in avoiding repeated lawsuits on the same essential subject matter." Advisory Committee's Notes on 1966 Amendments to FRCP Rule 19. Because there have been "repeated lawsuits" over the "same essential subject matter[,]" i.e., access, it is entirely reasonable to conclude that future litigation involving access would be avoided by joining Huddy–Yamamoto.

## VII.

### A.

Here, respectfully, the court did not engage in the reasoned analysis required under HRCP Rule 19, making it difficult to determine the bases for its decision. The court should have ascertained first, under HRCP Rule 19(a), whether the absentee was " 'necessary[.]' " *Ieda*, 109 Hawai'i at 143, 123 P.3d at 1238 (quoting HRCP Rule 19(a)). Second, if the party was necessary, then the court should have determined whether joinder was feasible. *Id.* ("[I]f [feasible], 'the court shall order that [the person] be made a party.' ").

If joinder of the necessary party is not feasible, the next question is whether "the court should 'in equity and good conscience' dismiss the case because the absentee is indispensable." *Glancy v. Taubman Ctrs.*, 373 F.3d 656, 666 (6th Cir.2004); *see Moore's Federal Practice* § 19.02[3][c] ("Under Rule 19(b), an absentee could be considered 'indispensable' only if the absentee (1) was a necessary party, that is, met the definition ... under Rule 19(a), (2) its joinder *could not* be effected, and (3) the court determined that it would dismiss the pending case rather than proceed ... without the absentee." (emphasis in original)). This three-part approach is well-established, being described by treatises

and followed by federal courts of appeals when applying FRCP Rule 19, "upon which the HRCP is based[.]" *Carbonel*, 93 Hawai'i at 471, 5 P.3d at 461. Thus, "[b]y proceeding in this orderly fashion [a] court will be able to avoid grappling with the difficult question of indispensability[.]" 7 *Wright & Miller* § 1604, at 17330; *see E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir.2005) (describing the "three successive inquiries" of FRCP Rule 19).

It follows then, that, "[w]here joinder [of a necessary party] is feasible, the court need *not* proceed under [HRCP] Rule 19(b) to determine whether to proceed or dismiss for lack of an indispensable party." *Lau v. Bautista*, 61 Haw. 144, 154, 598 P.2d 161, 168 (1979) (emphasis added). However, if joinder is not feasible, a court must decide, based on considerations of "equity and good conscience," whether to allow the lawsuit to proceed in the absence of the necessary party. HRCP Rule 19(b). Hence, if litigation continues without the necessary party, it is assumed the party is *not* "indispensable." If the court determines that the action should not proceed but should be dismissed, "the absent person(s) [are] thus regarded as indispensable." *Life of the Land v. Land Use Comm'n*, 58 Haw. 292, 298, 568 P.2d 1189, 1194 (1977) (internal quotation marks and citation omitted).

### B.

*Logically the court could not have proceeded to determine that Huddy–Yamamoto was an indispensable party under HRCP Rule 19(b) without first ruling that Huddy–Yamamoto was a necessary party under HRCP Rule 19(a).* If the court concluded that Huddy–Yamamoto was a necessary party, it did not say so. If it concluded that she could not be feasibly joined, it did not so indicate. *But, if the court did decide that Huddy–Yamamoto could not be feasibly joined, it was in error. It is undisputed that Huddy–Yamamoto was amenable to service and was within the court's jurisdiction* inasmuch as she testified at the hearing.

In order to reach the question of whether Huddy–Yamamoto was an indispensable party, the court would have had to first decide that Huddy–Yamamoto was a necessary party, but then, that she could not be feasibly joined. *Lau*, 61 Haw. at 154, 598 P.2d at 168 (noting that if joinder is feasible, then the court need not proceed under HRCP Rule 19(b)). Assuming, *arguendo*, that the court reached this point in its analysis without saying so, it erred in holding that Huddy–Yamamoto was not indispensable under HRCP Rule 19(b) for the reasons discussed *infra*. The court apparently chose to forego the necessary party analysis altogether, despite case law holding that the analysis under HRCP Rule 19 must proceed in that manner.[26] *See Life of the Land*, 58 Haw. at 298, 568 P.2d at 1194 (noting that a court's dismissal for failure to join indispensable parties was premature because the record failed to indicate whether the alleged absent parties were subject to service of process).

### VIII.

It is the court's duty to join a necessary party where the parties have failed to do so. Respectfully, failure to take such action was a decision that "clearly exceeded the bounds of reason" and disregarded "rules" "to the substantial detriment of a party litigant[,]" *Kealoha v. County of Hawaii*, 74 Haw. 308, 318–19, 844 P.2d 670, 676 (1993), or was "base[d] ... on an erroneous view of the law or on a clearly erroneous assessment of the evidence[,]" *Ieda*, 109 Hawai'i at 142, 123 P.3d at 1237 (internal quotation marks and citation omitted). "[C]learly," the court "erroneous[ly] assess[ed]," *id.*, the evidence in determining that Huddy–Yamamoto would not be prejudiced by the proceeding inasmuch as the evidence indicated she was a necessary party. Furthermore, although the court acted conscientiously, it "erroneously

---

**26.** With all due respect, the majority commits the same error as the court, inasmuch as the majority holds that Huddy–Yamamoto is not an indispensable party, without indicating how it can reach this conclusion in light of the factors showing Huddy–Yamamoto was a necessary party who could feasibly be joined. Based on the foregoing, it is manifest that the court abused its discretion in not joining Huddy–Yamamoto when presented with evidence that she was a necessary party.

view[ed]" the case law on joinder of necessary parties inasmuch as it failed to determine that Huddy–Yamamoto, a necessary party, could be feasibly joined. *Id.* Therefore, I would affirm the ICA's decision to remand to the court for further proceedings consistent with the ICA's opinion.

## IX.

Assuming, *arguendo*, that the court determined Huddy–Yamamoto was a necessary party who could not be joined, the relevant test under HRCP Rule 19(b) is whether "in equity and good conscience" the case should proceed or should be dismissed. HRCP Rule 19(b) requires a court to apply the following four factors:

> [F]irst, to what extent a judgment rendered in the person's absence *might be* prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

(Emphasis added.) As the ICA correctly determined, applied here, the four factors weigh in favor of dismissal. Huddy–Yamamoto "might be" prejudiced by the judgment, in terms of access to, and water for, her kuleana, and those "already parties" might be prejudiced by "multiple or [ ] inconsistent obligations," as explained *supra*. Second, the prejudice could have been "lessened or avoided" only by joining Huddy–Yamamoto. Third, the judgment rendered in Huddy–Yamamoto's absence is inadequate, inasmuch as it is foreseeable that future litigation will not be avoided. *Provident Tradesmens,* 390 U.S. at 111, 88 S.Ct. 733 ("We read the Rule's third criterion, whether the judgment issued in the absence of the nonjoined person will be 'adequate,' to refer to this public stake in settling disputes by wholes, whenev-

er possible[.]"). "The fourth [ ] factor— whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder-has been examined in terms of whether there is an alternative forum where all parties may be joined." *Royal Travel, Inc. v. Shell Mgmt. Hawaii, Inc.,* No. 00314, 2009 WL 2448495, at *2 n. 4 (D.Haw.2009) (citing *Dawavendewa v. Salt River Project Agric. Imp. & Power Dist.,* 276 F.3d 1150, 1162 (9th Cir.2002)). The Marvins appear to have had an adequate remedy if the court had dismissed for non-joinder because the Marvins could bring another suit that included Huddy–Yamamoto.[27] Accordingly, the "equity and good conscience" standard of HRCP Rule 19(b) does not support proceeding without Huddy–Yamamoto.

## X.

It goes without saying, as the majority repeatedly intones, that the circumstances of each case differ and that we decide particular cases. Majority opinion at 512, 280 P.3d at 110. However, that does not absolve this court from applying the legal standards in HRCP Rule 19. In that regard, the majority errs in (1) characterizing Huddy–Yamamoto's interest narrowly; (2) concluding that Huddy–Yamamoto is not indispensable; (3) arguing that delay is a factor to be considered in HRCP Rule 19(b) under the circumstances here; (4) maintaining that policy considerations support the outcome; (5) deciding Pflueger's "substantial compliance" with the HRAP permits appellate review; and (6) determining that the defense of joining a necessary party is waivable. Respectfully, the result would imply that this "court[ ] fail[s] to understand the process by which the court is to determine indispensability, and[,] thus[,] endanger[s] its pragmatic efficiency." *Moore's Federal Practice* § 19.02[2][d].

## XI.

In connection with the first error, the majority states that Huddy–Yamamoto is affect-

---

**27.** Because HRCP Rule 41(b), entitled "Involuntary dismissal: Effect thereof," provides that a dismissal for failure to join a party under HRCP Rule 19 does not operate as an adjudication on the merits, the Marvins could reassert the kuleana claim if the court dismissed for failure to join Huddy–Yamamoto.

ed by the route of access to the kuleana,[28] but that she had no "involvement" in the injunctions issued by the court, and would therefore not be "affect[ed]" by the court's establishment of a right of access in favor of the Marvins, inasmuch as the partition order did not affect the rights of all the residents to access the kuleana.[29] Majority opinion at 505, 280 P.3d at 103. Respectfully, this is incorrect.

Contrary to the majority's position, the partition order neither granted nor denied access to the Marvins or to Huddy–Yamamoto, or affected the rights of the kuleana owners. According to the majority, Huddy–Yamamoto would have had an interest in the establishment of the Marvins' right of access if the "existence of the [Marvins'] access would somehow negate Huddy–Yamamoto's access." Majority opinion at 505, 280 P.3d at 103. But Huddy–Yamamoto has an interest because, unlike the Marvins, she has no "established" right of access based on her status, whereas the Marvins arguably have the one access permitted the kuleana. *See Ahlo,* 9 Haw. at 490; *see also* majority opinion at 506, 280 P.3d at 104 (quoting *Ahlo* for the proposition that a kuleana has only one right of way). Additionally, the court's injunctions, which prevent Pflueger from interfering with the Marvins' right to access and water, are a means of enforcing the Marvins' rights as kuleana owners. Because kuleana

rights are the basis for the court's action, Huddy–Yamamoto has an interest in how the rights enforced on behalf of the Marvins would limit her rights to access and water.

Furthermore, with respect to water, because the Marvins and Huddy–Yamamoto share the land, the court's grant of water for the Marvins affects Huddy–Yamamoto's interest, inasmuch as the right to water is limited and is allocated to the kuleana as a whole. Since Huddy–Yamamoto has an interest in obtaining an adequate amount of water, to which she testified at the hearing, the injunctions affect Huddy–Yamamoto with respect to her share of the water that can be legally allotted to the kuleana.

Therefore, it would appear self-evident that Huddy–Yamamoto claimed an "interest" relating to the proceeding involving kuleana rights. Since it was feasible to do so, Huddy–Yamamoto should have been joined as a necessary party under HRCP Rule 19(a).

## XII.

In connection with the second error, because the majority does not follow the proper analysis under HRCP Rule 19 under the guise of waiver, *see* discussion *infra,* the majority erroneously concludes that HRCP Rule 19(b) applies. Assuming, *arguendo,*

---

28. Respectfully, it is misleading to state that "the fact that a nonparty may be affected by a proceeding is not sufficient to make them an indispensable party." Majority opinion at 506, 280 P.3d at 104 (citing *Provident Tradesmens,* 390 U.S. at 110, 88 S.Ct. 733). To reiterate, the court must first analyze whether the absentee is necessary and, if so, whether joinder is feasible. Only if joinder is infeasible does the court proceed to HRCP Rule 19(b). The majority also misstates *Provident Tradesmens.* That case states that the absentee is not bound by a judgment, *"which obviously does not mean* either (a) that a court may never issue a judgment that, in practice, affects a nonparty or *(b) that (to the contrary) a court may always proceed without considering the potential effect on nonparties simply because they are not 'bound' in the technical sense." Provident Tradesmens,* 390 U.S. at 110, 88 S.Ct. 733 (emphases added). The Court continued, "When necessary, however, a court of appeals should, on its own initiative, take steps to protect the absent party, who of course had no opportunity to plead and prove his interest be-

low." *Id.* at 111, 88 S.Ct. 733. Hence, the ICA was correct in "considering" the "potential effect" of the court's judgment on Huddy–Yamamoto.

29. The majority additionally states that the trial court's relevant findings of fact "show a pattern of [Pflueger's] conduct toward [the Marvins] in which Huddy–Yamamoto was not involved." Majority opinion at 505, 280 P.3d at 103. The majority suggests that, as a result, Huddy–Yamamoto is not affected by the court's injunctions. *See* majority opinion at 505–06, 280 P.3d at 103–04. The court's lack of findings with respect to Huddy–Yamamoto, however, is easily explained. Since the court decided not to join Huddy–Yamamoto, the court had no reason to enter findings with respect to her as to any matter in dispute in the litigation other than whether she needed to be joined. The lack of findings involving Huddy–Yamamoto, therefore, does not speak to whether or not Huddy–Yamamoto is affected by Pflueger's conduct or by the court's injunctions.

that Huddy–Yamamoto could not have been feasibly joined and the court was presented with the question of whether to proceed with the lawsuit or dismiss it altogether, under the circumstances of this case, Huddy–Yamamoto was indispensable and the case should have been dismissed without prejudice. HRCP Rule 19 authorizes *the court itself,* as described above, to join a necessary party. Nevertheless, the majority concludes that Huddy–Yamamoto was not indispensable and that the case need not have been dismissed.[30]

## A.

### 1.

As to the first part of the first of the four factors,[31] the potential for prejudice to Huddy–Yamamoto, the majority maintains that Huddy–Yamamoto is not "bound" by the court's decision, her access is "better than it was before[,]" the court's order does not "preclude" her from pursuing litigation to gain better access, and since she refused to

30. The majority also states that the factors are "in no way exclusive[.]" Majority opinion at 506, 280 P.3d at 104 (citing *Carbonel,* 93 Hawai'i at 470, 5 P.3d at 460). However, that does not mean that the factors or legal standards (such as those found in HRCP Rule 19(a)) can be disregarded, inasmuch as "a court should consider all of the factors and employ a functional balancing approach." *Carbonel,* 93 Hawai'i at 470, 5 P.3d at 460 (internal quotation marks and citation omitted).

31. To reiterate, the first factor provides that a court must consider "to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties[.]" HRCP Rule 19(b).

32. In connection with Huddy–Yamamoto's refusal, the majority suggests that Huddy–Yamamoto knew the proceeding involved a kuleana claim at the time she refused to participate because the initial complaint sought an injunction prohibiting Pflueger from blocking the Marvins' access road, "access" "has always been at issue" in the case, and Huddy–Yamamoto's testimony during the hearing on the summary judgment motion indicated that she knew the claim involved kuleana rights. Majority opinion at 507, 280 P.3d at 105. However, the initial complaint seeking an "injunction" was not relevant to whether Huddy–Yamamoto *knew* that the *complaint* involved kuleana rights, inasmuch as, in the majority's words, "Huddy–Yamamoto was not involved in the conduct necessitating the injunction, nor would she be affected by the court's injunc-

participate in the litigation,[32] she was not likely to be prejudiced by the order.[33] Majority opinion at 506, 280 P.3d at 104. With all due respect, those reasons are irrelevant in ascertaining the potential for prejudice.

A non-party such as Huddy–Yamamoto is rarely ever "bound" by litigation, *see* Advisory Committee's Notes on the 1966 Amendments to FRCP Rule 19 ("[T]he court can make a legally binding adjudication only between the parties actually joined in the action."), and nothing indicates that she would be bound, so this is a non-factor. Huddy–Yamamoto's so-called "better" access is not legally enforceable so as to prohibit Pflueger or a subsequent owner from altering her access at any time, and given that the court established a right of way for the Marvins, whether she would be successful in any future litigation is uncertain. *See Henry,* 9 Haw. at 491 (noting that a kuleana owner is entitled to only one right of way). Finally,

tion[.]" *Id.* at 505, 280 P.3d at 103. It is not evident what the Marvins' attorney told Huddy–Yamamoto when inquiring whether she wanted to join the lawsuit. The majority engages in pure speculation to support its position that Huddy–Yamamoto knew, before the hearing, that the litigation involved kuleana rights. More importantly, Huddy–Yamamoto's trial testimony does not indicate that she knew, at the time the complaint was filed, what the complaint involved.

33. That majority claims that because Huddy–Yamamoto may seek to have a legal right of way established in the future, she is not prejudiced by the court's failure to join her. Majority opinion at 506, 280 P.3d at 104. First, the majority takes the statement that Huddy–Yamamoto may seek to have a legal right of way established in the future out of context. As stated *infra,* the entire point of HRAP Rule 19 is to avoid future disputes that could have been resolved in the present litigation. Further, if Pflueger chooses to deny Huddy–Yamamoto access, it is going to be more difficult in the future for her to gain access because a court has already established the right of way in this proceeding and ostensibly a kuleana can only have one right of way. It is also incorrect to say that the prejudice to Huddy–Yamamoto is lessened as a result of the court's finding that "access can be moved at the need of either party," *see* majority opinion at 511, 280 P.3d at 109. It is apparent that the court was referring to the needs of Pflueger and the Marvins inasmuch as Huddy–Yamamoto was not made a party to the action.

HRCP Rule 19(a) mandates that the party who is necessary shall be joined by the court, *even involuntarily;* thus, Huddy–Yamamoto's supposed refusal (posited by the majority despite her expression of interest to be joined at the hearing) has no bearing on whether she suffered prejudice. *See* HRCP Rule 19(a) ("If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff"); *Lau,* 61 Haw. at 154, 598 P.2d at 168 ("Under [HRCP] Rule 19(a), if such a person has not been joined, the *court shall order that he be made a party.*") (Internal quotation marks and citation omitted.) (Emphasis added.)

As to the second part of the first factor, the potential prejudice to Pflueger, the majority states that although Pflueger asserts that he may be prejudiced by future lawsuits, "equitable principles," including Pflueger's delay in raising the issue, outweigh any possible prejudice. Majority opinion at 508, 280 P.3d at 106. Other than possible delay, the majority does not identify other "equitable principles[.]" Moreover, the majority provides no authority for the proposition that a defendant's alleged "delay" in raising joinder, as an "equitable principle[,]" alone outweighs other factors involved in the "equitable" calculus if the case proceeds without the absen-

tee. In any event, the majority's purported "delay" thesis lacks merit, as discussed later.

## 2.

As to the second factor, lessening or avoiding prejudice to Huddy–Yamamoto or the other parties,[34] the majority maintains that because (1) the easement is non-exclusive and preserves the status quo, (2) the access road leads to an area from which Huddy–Yamamoto can walk to her property on an improved staircase, and (3) Huddy–Yamamoto can challenge the easement because the decision is not binding on her, any prejudice was lessened. Majority opinion at 510–11, 280 P.3d at 108–09. Obviously, the fact that the easement is "non exclusive[,]" defined as "[a]n easement allowing the servient[ [35]] landowner to share in the benefit of the easement[,]" *Black's Law Dictionary* at 586, does not lessen any prejudice to Huddy–Yamamoto, since the easement only allowed Pflueger, whose property is subject to the easement, to "share in the benefit[,]" but does not allow Huddy–Yamamoto to share in that benefit.[36] The majority ignores the fact that Huddy–Yamamoto testified that she did not have permission to use the company road the Marvins used because the Marvins denied access to her and her family. Moreover, the order does not preserve the status quo because it granted the Marvins, as kulea-

34. As noted previously, the second factor is "the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice [to the absentee or those already parties] can be lessened or avoided[.]" HRCP Rule 19(b).

35. "Servient" is "subject to a servitude or easement." *Black's Law Dictionary* 1491 (9th ed.2009).

36. The majority contends that because the Marvins were given a non exclusive easement, Huddy–Yamamoto and others are not precluded from utilizing the easement. *See* majority opinion at 509 n. 16, 280 P.3d at 107 n. 16. This is not correct. As noted, a non-exclusive easement merely allows Pflueger to share in the benefit of the easement. This means that if Pflueger and the Marvins wanted to prevent Huddy–Yamamoto from using the easement, they could do so, because Huddy–Yamamoto does not have a legally-enforceable right to use the easement. *See* Restatement (Third) of Property § 1.2, cmt. c

(defining non-exclusive easement as one in which the servitude holder *can exclude anyone except the servient owner and others authorized by the servient owner*). The majority is therefore wrong to conclude that there is no evidence that the easement is "exclusive" in the sense that Huddy–Yamamoto and other third parties could be prevented from using it. *See* majority opinion at 509 n. 16, 280 P.3d at 107 n. 16. For the same reason, the majority is plainly incorrect in concluding that "the circumstances surrounding the injunction show that Huddy–Yamamoto [will not] be affected by the court's injunction[,]" majority opinion at 505, 280 P.3d at 103, and that the court's order "does not affect Huddy–Yamamoto because the right of access exists for all of the residents of the kuleana[,]" majority opinion at 506, 280 P.3d at 104. Similarly, it is not the case that "legally-enforceable" rights are being "conflat[ed]" with "judicially-determined rights[,]" majority opinion at 506, 280 P.3d at 104, for Huddy–Yamamoto now has neither; she has no legally enforceable rights in the easement granted by the court and she has no judicially-determined rights.

na owners, legally-enforceable access while Huddy–Yamamoto, who shares the same status, lacks such access. In fact, the majority admits that Huddy–Yamamoto will be affected. *See* majority opinion at 506, 280 P.3d at 104 ("It follows that if a partitioned kuleana is only allowed one access point, then the owners of the property within that kuleana may be affected by the determination of where that access point should be placed."). The majority does not explain how Huddy–Yamamoto, a non-party, can challenge a judgment that, according to the majority, has, in effect, nothing to do with her.

### 3.

As to the third factor,[37] the adequacy of the judgment, the majority maintains the court "was able to adequately resolve" the question of "access rights" in Huddy–Yamamoto's absence. Majority opinion at 511, 280 P.3d at 109. But the court's resolution was founded upon kuleana rights; thus, Huddy–Yamamoto should have been joined to further the public's interest "in settling disputes by wholes[.]" *Provident Tradesmens*, 390 U.S. at 111, 88 S.Ct. 733; *see also Moore's Federal Practice* § 19.05[5][a] ("Proceeding in litigation without the absentee—who, at this point, has been found necessary but cannot be joined—requires the court to enter a judgment that does not fully resolve a dispute between the extant parties."). Plainly, the judgment was not "adequate" to settle the dispute, but left all parties subject to foreseeable litigation in the future.

### 4.

As to the fourth factor,[38] the adequacy of the remedy if dismissal was granted, the majority asserts that the Marvins "had wait-

ed years to determine their access rights," and so lacked an adequate remedy if the case was dismissed. Majority opinion at 511, 280 P.3d at 109. To the contrary, this has no bearing on an adequate remedy, and does not weigh heavily at all under the actual circumstances of this case. *See* discussion on delay *infra.* Rather, this fourth factor "indicates that the court should consider whether there is any assurance that the plaintiff, if dismissed, could sue effectively in another forum where better joinder would be possible." Advisory Committee's Notes on 1966 Amendments to FRCP Rule 19. "[B]etter joinder would be possible[,]" *id.*, if the court dismissed the complaint, inasmuch as the Marvins could bring another suit that includes Huddy–Yamamoto.

### B.

Applying the four factors, "equity and good conscience" support dismissal. The "'equity[ [39] ] and good conscience[ [40] ]'" language of Rule 19(b) does appear to set out the standard to be used in measuring indispensability, and . . . [does not] [ ] merely place the determination within the discretion of the district court[.]" *Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 77 (C.A.N.Y.1984) (quoting FRCP Rule 19(b)). It is manifest that such a standard does not support proceeding without Huddy–Yamamoto.

"Equity" supports dismissal of the suit absent Huddy–Yamamoto. Assuming, *arguendo*, that Huddy–Yamamoto refused to participate when kuleana rights were asserted, it would have been inequitable to proceed because the Marvins had previously asked Huddy–Yamamoto to be a party, apparently

---

**37.** As noted previously, the third factor is "whether a judgment rendered in the person's absence will be adequate[.]" HRCP Rule 19(b).

**38.** As noted previously, the fourth factor is "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." HRCP Rule 19(b).

**39.** "The term equity denotes the spirit and habit of fairness and justness." *Gilles v. Dep't of Human Res. Dev.*, 11 Cal.3d 313, 113 Cal.Rptr. 374,

521 P.2d 110, 116 n. 10 (1974) (internal quotation marks and citation omitted).

**40.** The term conscience means "the sense of right or wrong together with a feeling of obligation to do or be that which is recognized as good." *Webster's Third New Int'l Dictionary* 482 (1981). Similar language found in the Social Security Act, "against equity and good conscience" has been stated as being "language of unusual generality." *Gilles*, 113 Cal.Rptr. 374, 521 P.2d at 116.

knowing that she should be made a party,[41] but then reversed positions, objecting vigorously to her joinder when Pflueger subsequently attempted to join her. Although the Marvins requested her presence, they did not list her as a necessary party in the complaint, as required by HRCP Rule 19(c). *See* HRCP Rule 19(c) ("A pleading asserting a claim for relief *shall state the names, if known to the pleader, of any persons as described in subdivision (a)(1)-(2) [defining a necessary party] hereof who are not joined,* and the reasons why they are not joined.") (Emphasis added.) By first requesting Huddy–Yamamoto's presence as a party, then failing to abide by HRCP Rule 19(c), and later objecting to her joinder, the Marvins' posture in this case is not fair and is not supported by equity.

As to "good conscience," it was "wrong" to proceed without Huddy–Yamamoto, inasmuch as the parties and the court had notice that Huddy–Yamamoto should be a party, *see* discussion *infra,* and her joinder was appropriately and timely raised and, in fact, tried at the "evidentiary hearing." Since kuleana rights flow to the kuleana as a whole, it was erroneous to proceed without Huddy–Yamamoto, part-owner of the kuleana, in an action deciding kuleana rights. Because the Marvins, in addition to Pflueger and the court, were well-aware or should have been aware that Huddy–Yamamoto should have been included in the lawsuit, but failed to join her,

see discussion *infra,* "equity and good conscience" do not weigh in the Marvins' favor.

## XIII.

In the third error, the majority maintains that (1) a defendant's "delay in raising [a] defense" is a factor the trial court may properly consider in deciding "the potential prejudice to the parties," majority opinion at 508, 280 P.3d at 106; and (2) the "long delay in raising the issue at trial weighs against requiring dismissal of the proceedings[,]" *id.* at 509, 280 P.3d at 107.[42] Respectfully, these are false premises that have no bearing in these circumstances.

### A.

As to whether a party's delay should be considered in evaluating the prejudice to the parties, it must be emphasized that there is no time limitation on when the issue of joinder must be raised. The defense of failure to join indispensable parties can be raised at any time. "[A] defense of failure to join a party indispensable under Rule 19" can be made "in any pleading permitted or ordered . . ., or by motion for judgment on the pleadings, *or at the trial on the merits.*" HRCP Rule 12(h) (emphasis added). Thus, the HRCP expressly allows the issue to be raised "at the trial[,]" irrespective of whether the parties knew about the issue. *Id.* Indeed, "[t]he matter of indispensable parties is 'so

---

**41.** The majority's only response is that "the invitation to join another party, or even the belief that a nonparty 'should be made a party' is not sufficient to establish that the invited party is indispensable to the case." Majority opinion at 508, 280 P.3d at 106. Obviously, as discussed above, the fact that the absentee should be made a party is not the sole factor to be considered, but is, using the majority's term, an "equitable principle[,]" *id.,* in deciding whether under the facts the action should proceed without the absentee. Further, the Marvins' invitation also suggests that they knew that Huddy–Yamamoto was a necessary party to the litigation.

**42.** The majority also states that the consideration of timeliness serves the two functions of giving the court greater opportunity to consider claims and to submit them to the opposing party for briefing, and preventing sandbagging, "the practice of saving issues to stall proceedings at the trial level to raise them on appeal only if they

lose at trial." Majority opinion at 509, 280 P.3d at 107. Those considerations have nothing to do with this case.

Here, Pflueger raised the joinder issue before the hearing began and more than five months before the court issued its ruling, the parties fully argued the issue, and evidence was taken on the issue. Second, "sandbagging" has been defined as a litigant remaining silent about an objection "and belatedly raising the error only if the case does not conclude in his favor." *State v. Miller,* 122 Hawai'i 92, 135, 223 P.3d 157, 200 (2010) (Nakayama, J., dissenting) (citing *Wainwright v. Sykes,* 433 U.S. 72, 89, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). Pflueger did not attempt to "sandbag" the court or the other parties because he raised the issue before the evidentiary hearing. The Marvins themselves sought to have Huddy–Yamamoto join the suit even before they filed it and failed to join her themselves. And the parties and the court knew or should have known that Huddy–Yamamoto was a necessary party.

*vital that an appellate court, sua sponte, if necessary, may consider it although the point was not raised in the trial court.'"* Mossman v. Hawaiian Trust Co., 45 Haw. 1, 14, 361 P.2d 374, 382 (1961) (emphasis added); *see Filipino Fed. of Am. v. Cubico*, 46 Haw. 353, 369, 380 P.2d 488, 497 (1963) (noting that the absence of indispensable parties "can be raised at any time even by a reviewing court on its own motion"). In the instant case, Huddy–Yamamoto's joinder was "vital" to the proceedings, *Mossman*, 45 Haw. at 14, 361 P.2d at 382, for the reasons previously stated. Indeed the court ultimately ruled on Huddy–Yamamoto's joinder on the merits instead of denying the motion due to untimeliness.

Second, despite the majority's argument that delay can be a consideration, *the court did not rule that Pflueger's supposed delay in raising the issue was a reason for concluding that Huddy–Yamamoto was not an indispensable party.*[43] Although the Marvins objected to Pflueger raising the issue in its position statement "for the first time[,]" the court "noted" the objection, but decided to proceed with the hearing. There is not one finding or conclusion by the court with respect to delay or untimeliness. Rather, the court proceeded to the merits and determined that Huddy–Yamamoto was not an indispensable party, implicitly and correctly deciding that the joinder motion should *not* be rejected for any supposed reason of delay or untimeliness. Hence, delay or timing was never a consideration that entered into the court's decision.

### B.

As to whether the delay weighs against joinder, respectfully, the majority is wrong that it does. The majority relies on the Advisory Committee's Notes on the 1966 Amendments to FRCP Rule 19 and on *Al-*

meida. Majority opinion at 508–09, 280 P.3d at 106–07. However, neither the notes of the Advisory Committee nor *Almeida* support the majority's position.

### 1.

According to the Advisory Committee, "when the moving party is seeking dismissal in order to protect himself against a later suit by the absent person … *and is not seeking vicariously to protect the absent person against a prejudicial judgment* …, his undue delay in making the motion can properly be counted against him as a reason for denying the motion." Advisory Committee's Notes on 1966 Amendments to FRCP Rule 19 (emphasis added). The majority contends that *Almeida* stands for the same proposition. Majority opinion at 508–09, 280 P.3d at 106–07. However, there is nothing in the record indicating that the court, in ruling on the issue, considered Pflueger's alleged "undue delay" in seeking to protect himself. Further, as discussed, *infra*, Pflueger was not only seeking to protect his interest, but also sought to protect Huddy–Yamamoto's, and therefore, any purported "delay" would not count against him.

In *Almeida*, the ICA explained that, even "if an absentee is deemed needed for the just adjudication of a claim, a decision to *dismiss* must be based on the pragmatic 'equity and good conscience'" test under HRCP Rule 19(b).[44] 4 Haw.App. at 516, 669 P.2d at 178. When a moving party "*seek[s] dismissal in order to protect himself* against a later suit by the absent person[,]" instead of seeking to "*protect the absent person against a prejudicial judgment* [,]" "*undue delay* in making the motion can properly be counted against him as a reason for denying the motion." *Id.* at 517, 669 P.2d at 178 (citing Advisory Committee's Notes on 1966 Amendments to

---

**43.** The majority contends that it is "incorrect" to say that the court did not consider delay inasmuch as the court described the timing of Pflueger's motion raising joinder as a "fundamental problem" and concern. Majority opinion at 509, 280 P.3d at 107. As noted *supra*, the court made no finding or conclusion *at all* indicating such delay was a consideration.

**44.** In *Almeida*, 4 Haw.App. at 514–15, 669 P.2d at 177, a mother sought to divest her son George of his interest in a jointly-held property because George allegedly did not fulfill his part of an agreement to care for her in return for joint ownership of the property. On the day of trial, George filed a motion to dismiss the complaint, contending that his brother Harry, who was also a grantor of the property, was an indispensable party. *Id.* at 515, 669 P.2d at 177.

FRCP Rule 19) (emphases added). Thus, the majority passes over the fact that *Almeida* only said that "undue delay" can be "counted" against the party seeking dismissal when that party is attempting to "protect himself against a later suit by the absent person." [45] *Id.*

In *Almeida*, the defendant sought to dismiss the lawsuit, and did so to protect his interest alone.[46] 4 Haw.App. at 515, 517, 669 P.2d at 177, 178. The opposite is true in this case. Pflueger argued in his position statement and to the court that the case must be "stayed pending the joinder" of Huddy–Yamamoto.[47] Pflueger maintained that Huddy–Yamamoto's absence "could irreparably prejudice the rights of the owners of the Huddy Property[,]" and asserted during the September 15 hearing that Huddy–Yamamoto should have a "say" in determining the access inasmuch as she had a "vital interest" in the proceedings and "deserve[d]" to be involved. Accordingly, Pflueger did not seek to protect only his interest, but attempted to "protect [Huddy–Yamamoto] against a prejudicial judgment[.]" *Almeida*, 4 Haw.App. at 517, 669 P.2d at 178 (internal quotation marks and citation omitted). This case does not involve a defendant's self-interested delay, as was the case in *Almeida*. *Id.*

### 2.

Further, Pflueger's delay, if any, in raising the issue was never a factor in this case.[48]

---

45. The majority states that this analysis is incomplete because it fails to take into account that the ICA in *Almeida* considered several "factors," and based its decision to uphold the denial of the defendant's motion for joinder of an absent party, in part, on the fact that the plaintiff was in the courtroom ready to proceed and on "the likelihood that the court's decision would not be binding" on the absentee. Majority opinion at 508, 280 P.3d at 106. In *Almeida*, the ICA reasoned that (1) "after the conclusion of a trial on the merits, there is reluctance on the part of an appellate court to overturn the trial court's decision as to indispensable parties, unless there is real prejudice to the absentee"; (2) "when the moving party is seeking dismissal in order to protect himself against a later suit by the absent person . . . his undue delay in making the motion can properly be counted against him[;]" and (3) in *National Board of YWCA v. YWCA of Charleston, S.C.*, 335 F.Supp. 615 (D.S.C.1971), it was noted that a "defendant's delay in making its motion until the very morning of trial would warrant its denial because of laches." *Almeida*, 4 Haw.App. at 516–17, 669 P.2d at 178 (internal quotation marks and citation omitted). Based on the foregoing, the ICA concluded:

> [*The defendant's*] *primary complaint is that the absence of [the absentee] may subject [the defendant] to* "*multiple suits and result in inconsistent judicial decisions imposing undue hardship*" *on him.* [ ] Applying the above principles, we believe that it was fatal for [the defendant] to have waited to file his motion until the day of trial when [the plaintiff] was in court ready to proceed. Furthermore, it appeared unlikely that [the absentee] would be adversely affected in a practical sense.

*Id.* (emphasis added). Thus, contrary to the majority's position, in *Almeida*, the ICA based its decision on the fact that the defendant argued that he, himself, was going to be subject to undue hardship. *See id.* Thus, while other "principles" may have been considered, they were not the primary reason for upholding the trial court's ruling. *See id.*

Contrary to the majority's contention, *Almeida* is not distinguished on the basis of the moving party's motive for seeking joinder. *See* majority opinion at 508, 280 P.3d at 106. The parties may have many subjective motives. It is not the motive of the movant that matters, but instead whether joinder would advance only the moving party's cause or, instead, also protect the party sought to be joined.

46. Moreover, it is notable that in *Almeida*, the defendant filed his motion on the day of trial. In this case, there was an evidentiary hearing on a motion for partial summary judgment that spanned months. The joinder issue was raised before the commencement of the hearing and had been pleaded well before that.

47. The majority disagrees because the "first argument" in the position statement states that Pflueger will be subjected to undue hardship. Majority opinion at 509, 280 P.3d at 107. But another argument in the position statement is that Huddy–Yamamoto would be harmed. Thus, the fact Pflueger argues that he will be harmed does not mean that he did not argue that Huddy–Yamamoto would also be subject to prejudice, as the majority implies. The majority states that Huddy–Yamamoto's knowledge of, and participation in, the proceeding "diminished" Pflueger's "role as protector[.]" *Id.* But her purported "knowledge," if any, does not bear on whether Pflueger argued that Huddy–Yamamoto's interests would be harmed or on whether her interests were actually harmed.

48. Although the majority characterizes Pflueger's attempt to raise the joinder issue as "troublesome," it must concede that the issue was raised before the court, and that the court decided it without any indication that it was "troublesome." Majority opinion at 497 n. 10, 280 P.3d

First, it is undisputed that Pflueger asserted the defense of failure to join indispensable parties in every answer to the Marvins' complaints, thus preserving the defense for review. Second, Pflueger contended that Huddy–Yamamoto was a necessary party in his position statement, filed August 4, 2006, five days before the evidentiary hearing that commenced on August 9, 2006, and the hearing itself spanned four days and was not completed until December. The order itself was not issued until January 2007, leaving ample time to address the issue.

Third, the parties and the court had notice that Huddy–Yamamoto was a part-owner of the kuleana even before the hearing began; thus, the parties and the court knew or should have known that Huddy–Yamamoto was a necessary party. As noted before, a title report, and a copy of the partition order dividing the kuleana into two lots, was attached to the Marvins' June 6, 2006 motion for summary judgment. The title report indicated that the kuleana was awarded to Haena, and the partition order indicated that the kuleana was divided into two parts with two different owners. Thus, at the latest, at the time the Marvins' motion for summary judgment was filed in June 2006, the parties and the court knew or should have known that the kuleana had been partitioned and that precedent indicated that a kuleana had only one right of way and an appurtenant limited access to water.

Fourth, as observed, the parties in fact litigated the issue of whether Huddy–Yamamoto was a necessary party. Pflueger specifically asserted in his position statement that "the disposition of the motion" should be stayed pending the joinder of Huddy–Yamamoto as a necessary party. Robert Graham Jr., an "expert witness" in kuleana law, stated that "[t]he kuleana access, whatever it was [when the kuleana was originally created], continues ... to exist to this day[, b]ut the partition could not have multiplied it[,]" suggesting that rights ran to the entire kuleana. Carlos Andrade, an expert in kuleana history, explained that kuleanas were allowed "a certain amount of water," meaning "the water that had been flowing from time and memorial [sic] was available to the people for both domestic as well as for agriculture." Pflueger argued on the first day of the hearing that Huddy–Yamamoto was a necessary party because "[y]ou cannot adjudicate one kuleana access, which consists of two parts, with only one half of it being here. I mean, that's the basic part of our motion."

After hearing argument from the Marvins, the court stated that it was inclined not to order Huddy–Yamamoto joined. Again, on the third day of the hearing, Pflueger argued that it "tried to make the motion [for joinder] at the beginning" of the hearing, and contended that the court had a "fundamental duty" to address the issue of "join[ing]" Huddy–Yamamoto. The Marvins responded that Huddy–Yamamoto was not necessary since the court could "determine access up to the kuleana, and once that determination ha[d] been made, it's up to the Marvins and the Huddys to determine how each of them will gain access." After hearing the parties' statements, the court denied Pflueger's request. Thus, whether Huddy–Yamamoto was a necessary or indispensable party was litigated on the merits at numerous points throughout the hearing.

Fifth, the Marvins had asked Huddy–Yamamoto if she wanted to be joined *before* the lawsuit was filed, indicating that they knew she should be a party to the action. As noted before, although she initially "refused"

at 95 n. 10. Indeed this is not a case in which Pflueger "slept on his rights," as the majority suggests, *see* majority opinion at 509, 280 P.3d at 107 (citing *Ishida v. Naumu*, 34 Haw. 363, 372 (1937)), because Pflueger raised the issue of whether there were indispensable parties from the start in his answer, as the majority itself acknowledges, *see* majority opinion at 509 n. 15, 280 P.3d at 107 n. 15. Furthermore, the question of whether a party is necessary is subsumed within that of whether a party is indispensable, since in order to decide whether a party is indis-

pensable, a court must first determine whether the party is necessary. *See* HRCP Rule 19. Thus, Pflueger did not "sleep on his rights" or "lay behind the log and raise the issue of indispensable parties following an adverse ruling," as suggested by the majority, *see* majority opinion at 509 n. 15, 280 P.3d at 107 n. 15 (citing *Judwin Properties, Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432, 434–35 (5th Cir.1992)). Respectfully, considering the circumstances of this case, the majority's insistence in raising this issue repeatedly appears to be a makeweight argument.

to participate in the suit, the Marvins did not take any action to join her as an involuntary party under HRCP Rule 19. Thus, any delay that resulted from Huddy–Yamamoto's joinder should be attributed to the Marvins' earlier failure to join her in the proceedings. In sum, Huddy–Yamamoto's status as a necessary party was covered in Pflueger's answers, the parties and the court knew or should have known that Huddy–Yamamoto was a necessary party before the hearing when evidence of the kuleana's partition was submitted and Pflueger asserted that Huddy–Yamamoto was a necessary party, joinder was litigated at numerous points throughout the hearing, at no point did the court rule that timing was a reason to deny joinder, and the *Marvins knew Huddy–Yamamoto's joinder was appropriate and invited her to join in the lawsuit, but failed to join her themselves as required by HRCP Rule 19(c) after they filed suit, even before Pflueger raised the matter.*

### XIV.

In the fourth error, the majority maintains that the "expensive," "cost-prohibitive[ ] undertaking" of a lawsuit is a "policy" consideration that does not require that "everyone with an interest in the kuleana must retain counsel[ [49]] and join the lawsuit" and be present at trial. Majority opinion at 512, 280 P.3d at 110. To the contrary, the majority's "policy" discussion invites foreseeable future litigation, which would render the ultimate remedy even more expensive and "cost-prohibitive", *id.*, because it leaves Huddy–Yamamoto's rights unresolved. The *relevant* "policy" inherent in HRCP Rule 19 is to effect the public's interest "in avoiding repeated lawsuits on the same essential subject mat-

ter." Advisory Committee's Notes on 1966 Amendments to FRCP Rule 19. *See* 7 *Wright & Miller* § 1602, at 17308 ("Rule 19 is designed to protect the interests of absent persons as well as those already before the court from multiple litigation[.]"); *see also Northrop Corp.*, 705 F.2d at 1043 ("precluding multiple lawsuits on the same cause of action[ ]" is a goal of FRCP Rule 19). Thus, the majority's policy determination, that litigation is an "expensive" and "cost-prohibitive" "undertaking[,]" majority opinion at 512, 280 P.3d at 110, militates in favor of, rather than against, joining all kuleana owners in one proceeding for resolution of the controversy to avoid future delay, expense, and piecemeal litigation, as the majority would allow.

Previous litigation in 1988 did not resolve access for all parties. This case is the inevitable result of the incomplete resolution in 1988. It is reasonable to believe that it is just as inevitable that litigation involving kuleana rights will arise again. Contrary to the majority's statement that it is not always "possible" to have all desirable parties before a court, majority opinion at 512, 280 P.3d at 110, *in the instant case,* Huddy–Yamamoto was in fact before the court and testified at the proceeding as to her interest and desire to participate. Joinder under these circumstances was obviously "possible" and eminently feasible.[50]

### XV.

The fifth error, and a matter of concern, is the majority's view that Pflueger's substantial compliance with the HRAP permitted appellate review.[51] Respectfully, this proposition is not applicable to this case.

---

**49.** Of course, a party may proceed *pro se.*

**50.** The majority claims that "if avoiding multiple litigation were the singular aim of Rule 19, the rule would simply require joinder of every party with an interest when raised at any time, and it would forbid courts from entering judgments in the absence of any affected party." Majority opinion at 512, 280 P.3d at 110. With all due respect, the suggestion that courts would never be able to enter judgments if HRAP Rule 19 were followed is simply untrue. The majority itself admits that some jurisdictions hold that the Rule 19 defenses are not waived even if not raised in

the first responsive pleading. *See* majority opinion at 500, 280 P.3d at 98. There is absolutely no evidence that following Rule 19 has hindered or prevented courts in those jurisdictions from entering timely judgments. Nor is it the case that "every" party with an interest will have to be joined, *see* majority opinion at 512, 280 P.3d at 110; obviously, only parties who satisfy the criteria of Rule 19 would be subject to joinder.

**51.** Additionally, according to the majority, Pflueger correctly argued that the ICA could review unchallenged findings that are redundant of a conclusion. Majority opinion at 495, 280 P.3d

536

## A.

Preliminarily, Pflueger's Amended Opening Brief raised as a point of error that the court "erred in granting summary judgment in the absence of non-parties whose interests in their adjacent real property ... could be affected by the resulting order[,]" citing the court's conclusion 12 [52] that Huddy–Yamamoto was not an indispensable party because she was "not prejudiced by the instant proceeding" and "refused to participate in the instant lawsuit." On the other hand, the Marvins contended that findings 102 [53] and 104 [54] as to the same prejudice were not challenged on appeal by Pflueger and therefore were binding in the appellate courts.[55] Nevertheless, the Marvins "assum[ed]" that this court would reach the merits of Pflueger's arguments, and argued that the court's judgment should be affirmed on the merits, not because of a procedural error. As noted before, the ICA applied a plain error analysis to Pflueger's "arguments" and determined that findings 102 and 104 were "clearly erroneous, and the portion of [conclusion] 12 stating that Huddy–Yamamoto was not prejudiced by the proceeding is wrong." *Pflueger*, 2010 WL 2316274, at *16.

In this case, findings 102 and 104 concerning prejudice may be viewed as redundant of conclusion 12. The majority apparently agrees. *See* majority opinion at 495, 280

P.3d at 93 (concluding that Pflueger is correct in arguing that "the ICA had authority to review the two [unchallenged] findings [ ] because they are redundant of [conclusion] 12). A conclusion of law is an "inference on a question of law, made as a result of a factual showing, no further evidence being required; a legal inference." *Black's Law Dictionary* at 329. The Ninth Circuit Court of Appeals has explained that a conclusion of law is based on "application of a legal standard." *Lundgren v. Freeman*, 307 F.2d 104, 115 (9th Cir.1962).

Under the circumstances, the determination of whether prejudice redounded to Huddy–Yamamoto is a legal inference, inasmuch as the "factual showing" proffered during the evidentiary hearing led the court to determine, albeit erroneously, that Huddy–Yamamoto would not suffer prejudice. The court explicitly stated in the core of findings 102 and 104 [56] that there were "no facts" giving rise to a demonstration of prejudice. Similarly, the court stated in conclusion 12 that Huddy–Yamamoto was "not *prejudiced* by the instant proceeding and ... refused to participate in the instant lawsuit." (Emphasis added.) The court's determination of no prejudice, then, involved the application of a legal standard.

In the instant case, then, although Pflueger did not properly challenge findings 102

at 93. Respectfully, the majority misstates Pflueger's arguments. Pflueger argued that the challenged findings were *"in reality, conclusions of law"* "redundant of" a conclusion that was properly challenged. (Emphasis added.) Pflueger also maintained that the ICA had discretion to review a point of error that did not comply with HRAP Rule 28(b)(4), quoting *State v. Miller*, 122 Hawai'i 92, 118 n. 24, 223 P.3d 157, 183 n. 24 (2010), for the proposition that "an appellate court [may] choose to review error when not raised by counsel, ... in order to avoid the infringement of substantial rights."

**52.** Conclusion 12 stated, "The Court finds the Huddy family is not an indispensable party as they were *not prejudiced by the instant proceeding,* and they refused to participate in the instant lawsuit." (Emphasis added.)

**53.** Finding 102 stated, "There are no facts in the record to suggest that the *Huddy family will be prejudiced by not participating* in the instant lawsuit. Indeed, they were asked to participate, and they refused. The access they currently enjoy is

'now improved, and easier access than before.'" H. Huddy testimony, 9/15/06, commencing at 2:25:25 p.m. (Emphasis added.)

**54.** Finding 104 stated, "There are no facts in the record to suggest that the *Huddy family will be prejudiced by the [Marvins'] claim* to irrigation and drinking water in the instant case." (Emphasis added.)

**55.** The majority suggests that I agree with the Marvins. *See* majority opinion at 498, 280 P.3d at 96 (rejecting dissent's reasoning because "[t]o hold that the ICA was bound by the unquoted [findings] 102 and 104, which found no facts supporting prejudice, means that the ICA could not meaningfully review the properly challenged COL 12"). However, in my view, as explained *infra*, the unchallenged findings were freely reviewable by the ICA because the findings were in the nature of conclusions and were redundant of conclusion 12, which was challenged.

**56.** A numbered finding can include both factual findings and conclusions.

and 104, the "findings" are in the nature of conclusions and redundant of conclusion 12. Consequently, Pflueger's failure to properly challenge those purported findings does not preclude the ICA or this court from reviewing the properly-challenged conclusion 12. It need not be decided, thus, whether an appellant's "substantial compliance" with the HRAP allows the ICA to review findings that were not challenged on appeal. Majority opinion at 495, 498, 280 P.3d at 93, 96.

Generally, as the Marvins contend, unchallenged findings are "binding" on an appellate court. *Kelly v. 1250 Oceanside Partners*, 111 Hawai'i 205, 227, 140 P.3d 985, 1007 (2006) ("[g]enerally, a court finding that is not challenged on appeal is binding upon this court"); *Poe v. Hawaii Labor Relations Bd.*, 97 Hawai'i 528, 536, 40 P.3d 930, 938 (2002) ("Unchallenged findings are binding on appeal." (Citations omitted.)); *Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transp. Co., Inc.*, 91 Hawai'i 224, 239, 982 P.2d 853, 868 (1999) ("Findings of fact that are unchallenged on appeal are the operative facts of a case."); *Wisdom v. Pflueger*, 4 Haw.App. 455, 459, 667 P.2d 844, 848 (1983) (same).[57]

Inasmuch as findings are the underpinnings of conclusions, a successful attack on a finding may invalidate one or more conclusions. But "an attack on a conclusion which is supported by a finding is not an attack on that finding." *Wisdom*, 4 Haw.App. at 459, 667 P.2d at 848. Thus, if an appellant "attack[s] only the conclusions and not the findings upon which the conclusions are based," that appellant makes a "fatal error" because "any conclusion which follows from [the unchallenged findings] and is a correct statement of law is valid." *Id.; see Okada Trucking Co. v. Bd. of Water Supply*, 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002) ("Findings of fact ... that are not challenged on appeal are binding on the appellate court.").

According to the majority, the consequence of holding that unchallenged findings are binding is that, "anytime a trial court's [findings/conclusions] contain any repetition, an opening brief must always quote each instance of the repeated finding, otherwise the binding quality of any unquoted finding will negate the review of any properly-raised points of error." Majority opinion at 498, 280 P.3d at 96. The majority's reasoning is circular because it assumes what is at issue—whether the points of error were properly raised. Further, respectfully, insofar as HRAP Rule 28 directs that a challenged finding be set forth in a brief, it binds us all, the majority's apparent protestation notwithstanding. The binding quality of unchallenged findings reinforces the role of the appellate courts, which "do not make findings of fact but rather review findings of fact of the circuit court to determine whether they are clearly erroneous." *Ward v. Williams*, 354 Ark. 168, 118 S.W.3d 513, 518 (2003).

### B.

In certain circumstances, however, when "justice and fairness" requires it, this court can review arguments even if some of the underlying findings have not been challenged. HRAP Rule 30 provides in pertinent that "[w]hen the brief of an appellant is otherwise not in conformity with these rules, the appeal *may* be dismissed or the brief stricken and monetary or other sanctions may be levied by the appellate court[,]" (emphasis added), giving an appellate court "discretion" to determine the proper course of action, *Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawai'i 408, 420, 32 P.3d 52, 64 (2001).

This "discretion" has been exercised often in favor of reaching the merits, in light of the "policy of affording litigants the opportunity to have their cases heard on the merits,

---

57. *See also Bremer*, 104 Hawai'i at 63, 85 P.3d at 170 ("findings of fact ... that are not challenged on appeal are binding on the appellate court"); *Kawamata Farms, Inc. v. United Agri. Prod.*, 86 Hawai'i 214, 252, 948 P.2d 1055, 1093 (1997) (holding that unchallenged findings of fact were binding on appellants); *Curtis v. Dorn*, 123 Hawai'i 301, 311, 234 P.3d 683, 693 (App.2010) (noting that the court was bound by an unchallenged finding); *Lum v. Donohue*, 101 Hawai'i 422, 434 n. 15, 70 P.3d 648, 660 n. 15 (App. 2003) ("It is well settled that findings of fact unchallenged on appeal are binding on appeal."); *Burgess v. Arita*, 5 Haw.App. 581, 593, 704 P.2d 930, 939 (1985) (same).

where possible," *id.*[58] Additionally, HRAP Rule 2 allows an appellate court, "[i]n the interest of expediting a decision, or for other good cause shown," to "suspend the requirements or provisions of any of these rules in a particular case ... and [to] order proceedings in accordance with its direction."[59]

In my view, however, as explained, *supra*, the unchallenged findings in this case are in the nature of conclusions that were challenged by Pflueger, and are therefore subject to review. The majority does not appear to disagree with this reasoning. On the contrary, the majority agrees that findings 102 and 104 are redundant of conclusion 12, which Pflueger properly challenged, and agrees that for this reason the ICA could review the unchallenged findings, *see* majority opinion at 495, 280 P.3d at 93. There is therefore no need to reach the question of whether "substantial compliance" with the HRAP suffices to preserve review of unchallenged findings.

### XVI.

The sixth error is the majority's conclusion that Pflueger *waived* any claim that Huddy–Yamamoto was a necessary party, in any event, because Pflueger did not raise the claim in a pre-answer motion or in the answer. *See* majority opinion at 503, 280 P.3d at 101. Procedurally, it must be emphasized

---

**58.** *See Moi v. State of Hawai'i, Dep't of Public Safety*, 118 Hawai'i 239, 245, 188 P.3d 753, 759 (2008) (considering Petitioner's arguments on the merits although Petitioner failed to "identify the particular findings of fact he dispute[d] in his point of error" and the unchallenged findings supported the agency's conclusions); *Chay v. Dep't of Educ.*, No. 26496, 116 Hawai'i 527, 2007 WL 4217482, at *1 n. 5 (Haw. Nov.30, 2007) (SDO) (addressing Petitioner's arguments on the merits although Petitioner failed to comply with HRAP Rule 28(b)(4)(C) "inasmuch as her points of error do not quote the disputed findings of fact" because "the disputed findings of fact are encompassed within the points of error and argument section of her opening brief"); *Dan v. State*, 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994) (reviewing unchallenged findings and conclusions pertinent to arguments made by Petitioner although Petitioner did not quote all findings and conclusions to which he took exception).

**59.** Thus, in *O'Connor v. Diocese of Honolulu*, 77 Hawai'i 383, 386, 885 P.2d 361, 364 (1994), this court, "pursuant to HRAP Rule 2," "elect[ed]" to

that the majority's foregoing position, based on its interpretation of HRCP Rules 12(b) and 12(h), was never raised, argued, or briefed by the parties to the court, to the ICA, or to this court because *waiver in this regard has never been a part of our law, and, in fact, is inconsistent with our law.*

Although the majority concedes that it decided the case on a ground not briefed by the parties, it did not request supplemental briefing by the parties. Respectfully, this is fundamentally unfair to the parties and injurious to the appellate process. Because the parties have concrete interests at stake, their views and arguments as to the impact of a revisionary change in the rules fostered by the majority are necessary to a just disposition of this case.

### A.

Based on our precedent, it must be noted that this aspect of the majority's opinion is puzzling because Pflueger's waiver would be dispositive of the issues, rendering the rest of the majority's opinion superfluous. Second, under the majority's opinion, a defendant would be deemed to have waived the defense of failure to join a *necessary* party because it was not asserted in an HRCP Rule 12(b)(7)[60] motion to dismiss or in an answer, but not the defense of a failure to join *indispensable*

---

"address the issue posed by th[e] appeal[,]" despite its lack of compliance with HRAP Rule 28(b)(4), quoted *supra. See State v. Rees*, No. 27349, 112 Hawai'i 2, 2006 WL 2860183, at *2 (Haw.App. Oct. 9, 2006) (SDO) (relying on *O'Connor* and HRAP 2 despite lack of compliance with HRAP, "in the interest of permitting the appellant his day in court"); *State v. Deparini*, No. 27272, 112 Hawai'i 373, 2006 WL 3190340, at *1 (Haw.App. Nov. 6, 2006) (SDO) ("This court, pursuant to HRAP 2, is empowered to address any issues raised by appellants and will address the constitutional issues Deparini does raise and argue with some degree of clarity.").

**60.** HRCP Rule 12(b)(7) provides in pertinent part that the defense of *"failure to join a party under Rule 19"* "may[,] at the option of the pleader[,] be made *by motion*[,]" or the defense "shall be asserted in the *responsive pleading*[,]" which, for all relevant purposes here, is the answer. (Emphases added.)

parties. The majority's position will have a far reaching and deleterious effect on civil practice in this jurisdiction.

Under the majority's rule, then, a circuit court considering a motion to dismiss would have two options if a defendant fails to assert the necessary party defense but asserts the indispensable party defense: either deny the motion, thus determining that the absentee is not indispensable, or grant the motion, concluding that the suit could not continue without the absentee. In other words, the circuit court would not be permitted to ascertain whether the absentee was *necessary* and subject to joinder. Similarly, under the majority's view, the appellate court would not have the power to remand to the trial court to determine if joinder was feasible; the appellate court would only have the power to remand for continuation without the absentee, or to affirm the court's dismissal of the suit.

### B.

The majority's holding that a party can waive the defense of the lack of a *necessary* party while not waiving the defense of the

lack of an *indispensable* party due to an "inconsistency" between HRCP Rule 12(b) and HRCP Rule 12(h)(1) ignores the express language of HRCP Rule 12(b)(7) and HRCP Rule 12(h)(2), (2) has been expressly rejected, (3) conflicts with precedent, (4) is inconsistent with the majority's own position, (5) undermines the purpose of HRCP Rule 19 and the structure of the civil rules, and (6) is not supported by the majority's own purported rationale.[61]

### 1.

Contrary to the majority's position, there is no ambiguity or "inconsistency" between HRCP Rule 12(b) and HRCP Rule 12(h). HRCP Rule 12(b) lists the defenses that can be brought by motion, including the "failure to join a party under [HRCP] Rule 19[.]" HRCP Rule 12(h) categorizes the defenses listed in HRCP Rule 12(b) into those that can be waived and those that cannot. HRCP Rule 12(h)(1) expressly lists the defenses that are waived if not brought by a motion or included in a responsive pleading. Opposed to the majority's view, HRCP Rule 12(h)(1) *on its face does not include the failure to*

---

**61.** It must be observed that the majority's opinion is wrong in another respect. It asserts that Rule 12(b)(7) allows a party to assert a Rule 19 defense only "before pleading if further pleading is permitted[,]" majority opinion at 500, 280 P.3d at 98 (quoting HRCP Rule 12(b)(7)), thereby ignoring the plain language of Rule 12(b) and misapprehending motions practice.

It is basic that a party first files a "pleading," being an "original claim [or] counterclaim," and the defendant then files an "answer[.]" HRCP Rule 7(a). However, if a defendant files a motion (say, for example, a motion to dismiss), the defendant usually must file its responsive pleading, i.e., answer, within ten days after the court rules on the motion. It is well-established that a motion "is not a responsive pleading[.]" *Ellis v. Crockett*, 51 Haw. 45, 60, 451 P.2d 814, 824 (1969) (internal quotation marks and citation omitted).

HRCP Rule 12(b) provides that a party may, "*at the option of the pleader,*" bring HRCP Rule 12(b) *motions* "before pleading[,]" meaning before the defendant submits its answer. (Emphasis added.) If the defendant elects not to bring a motion at all, then "[e]very defense" including 12(b)(1) to 12(b)(7) defenses, if applicable, shall be asserted in its answer. HRCP Rule 12(b).

Nevertheless, the majority states that an HRCP Rule 12(b)(7) defense "*shall* be made before pleading if further pleading is permitted[,]" ma-

jority opinion at 500, 280 P.3d at 98 (quoting HRCP Rule 12(b)) (emphasis added), which, as shown *supra*, plainly contradicts HRCP Rule 12(b), insofar as the defense can be asserted in an answer and need not be made "before pleading[.]" The majority also misquotes HRCP Rule 12(b). Majority opinion at 500, 280 P.3d at 98. The full sentence provides that "[a] *motion* making any of these defenses shall be made before pleading if a further pleading is permitted[,]" HRCP Rule 12(b) (emphasis added), indicating only that if a party brings a 12(b) motion, it must do so before submitting its answer.

In this regard, it must be observed that the majority takes inconsistent positions. The majority states that the necessary party issue is waived if not asserted in a pre-answer motion, *or* in a responsive pleading, suggesting that if a party does not bring a pre-answer motion, that party may still assert the defense in an answer. Majority opinion at 503, 280 P.3d at 101. However, as indicated above, the majority also says that the defense of failure to join a necessary party under HRCP Rule 19 must be made *before* pleading. Majority opinion at 500, 280 P.3d at 98. Hence, on one hand, the majority states that the defense can be made either in a pre-answer motion or, if no motion is filed, in an answer; on the other hand, the majority states that the defense must be asserted in a pre-answer motion.

*join a necessary party as a defense that is subject to waiver.*

Indeed, HRCP Rule 12(h)(1) does not refer at all to HRCP Rule 19, the defense of the failure to join a necessary party, or the defense of the failure to join an indispensable party. In this regard, the majority incorrectly reads into HRCP Rule 12(h)(1) a defense that is not listed in that section and makes it waivable. Insofar as these defenses do not fall under HRCP Rule 12(h)(1), they cannot be deemed waived if not brought by a motion or included in a responsive pleading.

In contrast, HRCP Rule 12(h)(2) provides that a defense "of failure to join a party indispensable under [HRCP] Rule 19 can be made in any pleading permitted or ordered under [HRCP] Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." Insofar as HRCP Rule 12(h) categorizes the defenses listed in HRCP Rule 12(b) into those that are waivable and those that are not, it is plain that the defense of failure to join a party (necessary or indispensable) falls under HRCP Rule 12(h)(2) and is not waivable.

### 2.

Additionally, the majority's position that a party waives the defense of necessary parties if it does not raise it in a pre-answer motion or an answer has been rejected. As the majority notes, majority opinion at 500, 280 P.3d at 98, it has been stated by some commentators that there is a perceived ambiguity between FRCP Rule 12(b)(7), which allows the defense to be raised, and FRCP Rule 12(h)(2). 5C *Wright & Miller* § 1392, at 15251–52. However, *Wright & Miller* rejects the application of FRCP Rule 12(h)(1) and (2)

advocated by the majority. According to *Wright & Miller,* if FRCP Rule 12(h)(2) were "*interpreted in a limiting way,*" it would "seem[ ] to indicate that the *objection to the absentee's nonjoinder* is not available *after the responsive* pleading [i.e., answer,] is served[,]" which is "*clearly problematic* [.]" *Id.* (emphases added).

*Wright & Miller* explains that "this semantic discrepancy results from an oversight when the rulemakers were revising [FRCP] Rule 19, trying to conform the appropriate rules to the revision of Rule 19, and rewriting [FRCP] Rule 12(h) all at the same time." [62] *Id.* The majority's statement that a failure to raise the joinder of *necessary* parties in a pre-answer motion or answer results in waiver of that defense, is a "limiting" interpretation of HRCP Rule 12(h)(2) that suggests that an "objection to the absentee's nonjoinder is not available after the" answer. *Id.;* see also W. Casey Walls, Note, *Inequity and Bad Conscience: The Effect of the Federal Rules Civil Procedure Twelve on Persons Needed for Just Adjudication,* 64 Notre Dame L.Rev. 422, 439 (1989) (noting that the limiting conclusion is not supported by any rationale). As said, this is "clearly problematic[,]" 5C *Wright & Miller* § 1392, at 15251–52, for the reasons listed above and discussed below.

### 3.

The majority's position is problematic in suggesting that a court must *not* assess whether an absent party is *necessary* under HRCP Rule 19(a) when faced with the issue of whether that party is *indispensable.* Majority opinion at 503, 280 P.3d at 101. Barring a court from reviewing whether an absentee is necessary, as the majority does,

---

62. Many commentators believe that the inconsistency is an oversight. *See* 7 *Wright & Miller* § 1609, at 17483 ("[T]he discrepancy in the wording of [FRCP] Rule 12(b)(7) and [FRCP] Rule 12(h)(2) probably reflects a drafting oversight on the part of the Advisory Committee that prepared the 1966 amendments. Both [FRCP] Rule 12(h) and [FRCP] Rule 19 were undergoing extensive revision simultaneously; at the same time [FRCP] Rule 12(b)(7) was being altered to conform it with the changes in [FRCP] Rule 19. It is quite possible that in the final adjustment of [FRCP] Rule 12(h) and [FRCP] Rule 19, which reintroduced a reference to the indispensable-

party concept in the latter rule, the semantic discrepancy between [FRCP] Rule 12(b)(7) and [FRCP] Rule 12(h)(2) and the absence of a specific provision governing [FRCP] Rule 19(a) persons were overlooked."); W. Casey Walls, Note, *Inequity and Bad Conscience: The Effect of the Federal Rules Civil Procedure Twelve on Persons Needed for Just Adjudication,* 64 Notre Dame L.Rev. 422, 434 (1989) ("Almost certainly, the difference was not intentional. Instead, the retention of the pre–1966 reference to Rule 19 in Rule 12(h)(2) was probably a mere oversight in drafting.").

directly conflicts with our precedent, *which requires that the necessary party analysis precede consideration of whether the necessary party was indispensable.*[63] *See Ieda,* 109 Hawai'i at 143, 123 P.3d at 1238 (noting that the first step is to determine whether the absentee is necessary; if so, then, whether the absentee can be feasibly joined; and only if the absentee cannot be feasibly joined, analyzing whether the absentee is indispensable); *Lau,* 61 Haw. at 146, 153, 154, 598 P.2d at 163, 167–68 (noting that "[w]here joinder [of a necessary person] is feasible, the court need *not* proceed under [HRCP] Rule 19(b) to determine whether to proceed or dismiss for lack of an indispensable party"); see also *Moore's Federal Practice* § 19.02[3][c] ("Under [FRCP] Rule 19(b), an absentee could be considered 'indispensable' only if the absentee (1) was a necessary party, that is, met the definition ... under [FRCP] Rule 19(a), (2) its joinder *could not* be effected, and (3) the court determined that it would dismiss the pending case rather than proceed ... without the absentee.") (emphasis in original).

### 4.

In addition to conflicting with precedent, the majority's position is inconsistent. The majority correctly states that a court *"must* determine whether an absent party should be joined if feasible[,]" and only if the party is necessary "but it is not feasible to join the party[,]" the court "must proceed to [HRCP] Rule 19(b)." Majority opinion at 499, 280 P.3d at 97. But in contradiction to the foregoing statement, the majority states that a party waives the defense of a failure to join necessary parties, and faults the ICA in the

instant case for considering whether Huddy–Yamamoto was necessary, majority opinion at 503, 280 P.3d at 101 (stating that the ICA erred in analyzing whether Huddy–Yamamoto was necessary under HRCP Rule 19(a) "because [Pflueger] had waived the 19(a) defense") which, according to the majority's statement, majority opinion at 19, was the correct procedure for the ICA to have followed.[64] By stating that a court must decide whether joinder of a necessary party is feasible, but then asserting that such an argument was waived, the majority's position is plainly contradictory.

In this regard, the majority's opinion will engender confusion in civil practice. When a party asserts only the *indispensable* party defense (thereby waiving the necessary party defense under the majority's view), is the court to presume that the absentee is necessary and cannot be joined? Or, is the court to presume that the absentee is not necessary? Or, is the court to analyze whether an absentee is necessary, and ignore HRCP Rule 19(a) stating that the absentee must be joined, if feasible?

### 5.

The majority's position also undermines the purpose of HRCP Rule 19 and the structure of the rules.

#### a.

The "purpose[ ]" of HRCP Rule 19(a) is to "bring[ ] all interested persons before the court," whereas the purpose of HRCP Rule 19(b) "is to determine whether it is possible to go forward with an action despite the nonjoinder of someone whose presence is

---

**63.** *Life of the Land,* 58 Haw. at 292, 568 P.2d at 1191, is instructive in this regard. There, the plaintiffs filed a complaint, and a defendant filed a motion to dismiss for failure to join *indispensable* parties. *Id.* at 293, 568 P.2d at 1191. The circuit court granted the motion. *Id.* at 294, 568 P.2d at 1192. This court determined that the circuit court erred.

According to this court, the absent *"parties should have been joined* [,]" and, if they were not, *"the court should have ordered that they be made parties." Id.* at 298, 568 P.2d at 1194 (emphases added). "Since the record d[id] not indicate that the alleged necessary parties were not subject to

service of process, the court's dismissal was premature." *Id.* Insofar as the defendant asserted the defense of indispensable parties, and this court determined that the first steps, in analyzing that defense, was to determine whether the absentee was necessary and subject to joinder, *our precedent mandates the necessary party analysis precede consideration of whether the necessary party is indispensable.*

**64.** There is nothing "complicated" about the procedure under HRAP Rule 19. *See* majority opinion at 512, 280 P.3d at 110. The application of the HRAP Rule 19 factors is straightforward if the logical steps in the rule are followed.

desirable but not feasible." 7 *Wright & Miller* § 1604, at 17330. The purpose of HRCP Rule 19 is not furthered by the majority's new rule. If a party is determined to have waived the argument that an absentee is necessary for mere failure to include it in a pre-answer motion (or, if no motion is brought, then in the answer), then parties who are necessary and should be joined will not be joined, for the sole reason that the issue is said to be waived, contradicting the policies of HRCP Rule 12 and HRCP Rule 19. Similarly, determining that the issue of necessary parties is subject to waiver is inconsistent with the purposes of HRCP Rule 19(a). "Terminating the right to seek joinder of a person described in Rule 19(a) as early as the service of the responsive pleading would be *inconsistent with th[e] objective*" of HRCP Rule 19(a), which is to bring all interested parties before the court. 7 *Wright & Miller* § 1609, at 17483 (emphasis added).

### b.

Additionally, the structure of the rules suggest that a party does *not* waive the argument that an absentee is necessary, despite that party's failure to include it in a pre-answer motion. HRCP Rule 21 specifically states that a party may bring a motion to require joinder at any stage of the proceeding, without limitation as to the reason. *See* HRCP Rule 21 (noting that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative *at any stage of the action and on such terms as are just*") (emphasis added).

The majority's conclusion that a party waives the right to argue joinder under HRCP Rule 19(a) at the pre-answer motion or answer stage is in *inherent conflict* with HRCP Rule 21.[65]

### 6.

The majority's position is not supported by its rationale. In fact, the cases relied upon by the majority are unhelpful to its position. Majority opinion at 500–02, 280 P.3d at 98–100 (citing *Citibank N.A. v. Oxford Props. & Fin. Ltd.*, 688 F.2d 1259, 1263 n. 4 (9th Cir.1982), *Baykeeper v. Union Pac. RR Co.*, No. C06–02560 JSW, 2009 WL 1517868 (N.D.Cal. June 1, 2009), *Ransom v. Babbitt*, 69 F.Supp.2d 141 (D.D.C.1999), *N. Dixie Theatre, Inc. v. McCullion*, 613 F.Supp. 1339, 1346 (D.C.Ohio 1985), *IndyMac Fed. Bank v. OTM Invs.*, No. 10CA0056–M, 2011 WL 3274075 (Ohio Ct.App. Aug. 1, 2011)). *Citibank* is no longer predominant and the remaining cases do not support waiver of an HRCP Rule 19 necessary party defense for failure to assert it in a pre-answer motion or answer.

### a.

In *Citibank*, the Ninth Circuit Court of Appeals cited FRCP Rule 12 in a footnote, saying that "[i]n federal procedure, failure to join necessary parties is waived if objection is not made in defendant's first responsive pleading; it is only the absence of an indispensable party which may (possibly) be raised later." *Citibank*, 688 F.2d at 1263 n. 4 (citations omitted). However, two years la-

---

65. The majority claims that the language of HRCP Rule 21 is so broad that nearly any denial of joinder under HRCP Rule 19 can be cast as in inherent conflict with HRCP Rule 21, and thus HRCP Rule 21 can be used as a vehicle for circumventing the specific instructions in HRCP Rules 12 and 19. Majority opinion at 502 n. 14, 280 P.3d at 100 n. 14. However, the majority's solution is to render HRCP Rule 21 superfluous by giving it no effect whatsoever. Instead of reading HRCP Rule 21 out of the HRAP, as the majority does, HRCP Rule 19 and HRCP Rule 12 should be construed together to allow a party to raise an HRAP Rule 19 defense at any time. This construction of HRAP Rules 12 and 19 would be in harmony with HRAP Rule 21.

The case cited by the majority, *Pan Am. World Airways, Inc. v. U.S. Dist. Ct.*, 523 F.2d 1073,

1079 (9th Cir.1975), in support of its reading of HRAP Rule 21 actually supports the reading of HRAP Rule 21 advanced here. In *Pan Am.*, the plaintiffs sought to use FRAP Rule 21 to justify asking the district court for an order to notify nonlitigants of the case. *See id.* at 1077, 1079. *Pan Am.* explained that "*Rule 21 has been used to join potential plaintiffs who are necessary parties, see* Rule 19(a), or real parties in interest, *see* Rule 17(a)." 523 F.3d at 1080 n. 7. (emphasis added). However, since FRAP Rule 21 did not permit "mass" joinder, the district court could not derive authority from FRAP Rule 21 to notify the nonlitigants of the action in that case. 523 F.3d at 1080 n. 9. Clearly, then, and contrary to the majority's contention, *Pan Am.* holds that FRAP Rule 21 *can be used to join parties under FRAP Rule 19(a)*.

ter, in *McCowen v. Jamieson*, 724 F.2d 1421 (9th Cir.1984), the Ninth Circuit Court of Appeals decided that the assertion of the lack of a necessary party could be raised for the first time on appeal. There, the plaintiffs alleged that the distribution of food coupons made by a state agency did not comply with federal regulations regarding food coupons. *Id.* at 1422. The plaintiffs added the Secretary of Agriculture as a defendant, but subsequently dismissed him. *Id.* at 1423. The plaintiffs then filed a motion for summary judgment, which the district court granted. *Id.*

On appeal, *the defendants argued for the first time* that the Secretary of Agriculture was a necessary party whose joinder should have been required, if feasible. *Id.* The plaintiffs responded that the defendants "never have pressed this issue before and therefore [were] estopped from asserting it[.]" *Id.* at 1424. The Ninth Circuit rejected that argument, stating it was "wrong as a matter of law[,]" and noting that *"[t]he issue is sufficiently important that it can be raised at any stage of the proceedings—even sua sponte." Id.* (emphasis added).

In remanding "the case to the district court with directions to add the Secretary of Agriculture as a necessary party[,]" the Ninth Circuit noted that it was "acting to protect the Secretary's interest, not that of the [defendants,]" and it "refuse[d] to allow the Secretary to be injured by the [defendants'] error." *Id.* The court did not mention its decision in *Citibank* from two years earlier, where it held that such an objection under the same rule of procedure was waived.

Notably, the Ninth Circuit has not followed *Citibank*[66] at all since that case was decided, but has followed *McCowen.*[67] Thus, it is plain that the Ninth Circuit takes the position that it is irrelevant whether a party moves, or fails to move, or asserts, or fails to assert, the defense of the failure to join a necessary party inasmuch as it is so "importan[t]," *Takeda v. NW Nat'l Life Ins. Co.,* 765 F.2d 815, 818 n. 2 (9th Cir.1985), that it can be raised *sua sponte* by the court, or at any time by the parties.

b.

*Baykeeper, Ransom, McCullion,* and *Indy-Mac* do not support the majority's position.[68]

---

**66.** In fact, the position set forth in *Citibank* was only cited in the two cases cited in the majority opinion: *Baykeeper* and *Ransom*.

**67.** The issue in *George v. Bay Area Rapid Transit,* 175 Fed.Appx. 809, 809–10 (9th Cir.2006), was whether Department of Transportation (DOT) regulations were arbitrary and capricious. The DOT was not a party, but it appeared as an amicus curiae on appeal, and it indicated at oral argument that it was not notified of the challenge to the regulations. *Id.* The Ninth Circuit, reasoning that *McCowen* recognized *"that joinder issues may be brought up sua sponte,"* vacated and remanded to add the DOT as a party because "the DOT ha[d] a strong interest in the continuing validity of its regulations." *Id.* at 810 (citation omitted) (emphasis added).

**68.** In contrast to the inapposite cases relied upon by the majority, *Gentry v. Smith,* 487 F.2d 571, 580 (5th Cir.1973), is instructive. There, the defendant agreed to purchase stock in a Florida corporation. *Id.* at 573. The defendant refused to close. *Id.* at 574. The plaintiffs asserted a breach of contract claim. *Id.* at 575. After trial, the defendant moved to join the corporation, although the defendant "had made no earlier motion to join the corporation, and had previously opposed its joinder." *Id.* The district court denied the motion and entered judgment declar-

ing the nullity of the contract. *Id.* The defendant appealed, and the Fifth Circuit Court of Appeals decided that the corporation should have been joined. *Id.* at 575, 580.

Noting that, in "deciding joinder motions under [FRCP] Rule 19, courts emphasize pragmatic considerations rather than rigid formalism: the maximum effective relief with the minimum expenditure of judicial energy[,]" the appellate court determined that "the mere fact of delay in seeking to join a party [does not] limit the exercise of this discretion." *Id.* at 580. According to the Fifth Circuit, "[t]h[e] concern with the practical gives [a court] wide latitude in deciding when the *promise of a speedy resolution to a controversy in a single action* outweighs any inconvenience to the parties caused by a failure to conform strictly to the requirements of pleading[,]" and *"it is permissible to join a defendant at any stage of the litigation* in the trial court so long as it is given sufficient notice and opportunity adequately to defend its interests." *Id.* (internal quotation marks and citation omitted) (emphases added). *See also Geissal v. Moore Med. Corp.,* 927 F.Supp. 352, 356 (E.D.Mo.1996) (noting that the defense of failure to join a necessary party "can be raised as an issue at a trial on the merits, ... the question of whether there is a genuine issue for trial with regard to this defense can appropriately be raised on a motion for

Contrary to the majority's contention, *Baykeeper*,[69] *Ransom*[70] and *McCullion*[71] only establish that when a defendant fails to raise the defense of an *indispensable* party in an answer, the defense that a party is *necessary may* be waived. However, these cases do not suggest that when a party asserts in an answer the defense that an absentee is *indispensable*, then that party waives the ability to argue the absentee was *necessary*.[72]

The majority suggests that *McCowen* is inconsistent because the dissenting judge in that case stated that, in his view, courts were not required to open the door and go out and look for other parties to join. *See* majority opinion at 502 n. 14, 280 P.3d at 100 n. 14. Respectfully, this is misleading. It is clear that the majority in *McCowen* remanded to require the district court to order a necessary party to be joined, even though the necessary party defense was only raised on appeal. 724 F.2d at 1422–23. There is nothing inconsistent in that holding.

The majority also says that *McCowen* is primarily cited for the holding that failure to join an indispensable party is not subject to waiver. *See* majority opinion at 502 n. 14, 280 P.3d at 100 n. 14. Again, however, *McCowen* remanded for joinder of a *necessary* party. 724 F.2d at 1422–23.

*IndyMac* is not relevant. Rule 19(a) of the Ohio Rules of Civil Procedure expressly provides that a party waives the defense of failure to join a necessary party if it is not "timely" asserted in a pre-answer motion, or, if no pre-answer motion is asserted, in the answer, inasmuch as it provides that "[i]f [the absentee] has not been so joined, the court shall order that he be made a party upon timely assertion of the defense of failure to join a party as provided in Rule 12(B)(7). If the defense is not timely asserted, waiver is applicable as provided in Rule 12(G) and (H)." Insofar as "Ohio eliminated any possible confusion" by discussing the "forfeiture

---

summary judgment") (*rev'd on other grounds, Geissal v. Moore Med. Corp.*, 524 U.S. 74, 118 S.Ct. 1869, 141 L.Ed.2d 64 (1998)).

**69.** *Baykeeper* was an *unpublished* order denying the defendants' motion for leave to amend their answer to plead an affirmative defense of *failure to join all necessary and indispensable parties*. *Baykeeper*, 2009 WL 1517868, at *1. *Baykeeper* noted, "Courts have clearly found that although the absence of an indispensable party may be raised at any time, the failure to join necessary parties may be waived if objections are not made in the defendant's first *responsive pleading*." *Id.* (citations omitted) (emphasis added). This is simply a questionable statement, insofar as it failed to cite, analyze, or apply *McCowen*, a binding *Ninth Circuit opinion wherein the parties raised the issue for the first time on appeal and the court addressed it*.

**70.** In *Ransom*, the defendants moved to amend their answer to incorporate the defense of failure to join *a necessary or indispensable party*, contradicting their earlier statement to the court that they did not believe other persons needed to be joined in the action. 69 F.Supp.2d at 148. Noting the inconsistency, and that "Defendants may not now seek to have this case dismissed for Plaintiffs' failure to join the [absentee] in this action[,]" the court decided that the absentee was not a necessary party inasmuch as the suit would not impair or impede the non-parties' interests, and whatever interest they had was adequately represented by the current defendants. *Id.* at 148.

**71.** In *McCullion*, the defendant, in a supplemental motion for summary judgment filed after the answer, sought dismissal because the plaintiff failed to join entities that the defendant believed were *necessary* parties. 613 F.Supp. at 1346. The defendant did not assert in his answer that any entity was *necessary or indispensable*, and did not assert, in his supplemental motion, that any entity was indispensable. *Id.* That court denied the motion because the defendant did "not argue that any of the [entities] is an indispens[a]ble party within the meaning of [FRCP] Rule 19(b)[,]" but only argued that "they [were] 'necessary parties' within the meaning of Rule 19(a)[,]" and, thus, the defendant "waived his right to present it[.]" *Id.*

**72.** According to the majority, this reasoning is "unsupportable" because it overlooks that necessary and indispensable parties are treated differently, *see* majority opinion at 502 n. 14, 280 P.3d at 100 n. 14. However, as noted, *Baykeeper*, *Ransom*, and *McCullion* did not deal with a party who raised the indispensable party defense but not the necessary party defense, as was the case here. Since to determine whether a party is indispensable a court must first determine whether the party is necessary, as discussed *supra*, these cases did not deal with the situation that arises when a party preserves the indispensable party defense but does not expressly assert the necessary party defense. The majority's assertion that this reading of *Baykeeper*, *Ransom*, and *McCullion* overlooks a fundamental point of logic, *see* majority opinion at 502 n. 14, 280 P.3d at 100 n. 14, ignores our case law and misapprehends the purpose of HRCP Rule 19.

issue in Civil Rule 19[,]" *IndyMac*, 2011 WL 3274075, at *5, it has no bearing here.

## XVII.

The majority states that the instant case "illustrates the wisdom" of its adoption of a new rule insofar as determining that a party waives the necessary party defense (1) ensures other parties have notice and will investigate and respond to the claims, (2) encourages necessary parties to be joined with minimal disruption, and (3) even if the defense included both subsections of HRCP Rule 19, Pflueger's assertion on the eve of trial was untimely. Majority opinion at 502, 280 P.3d at 100.

### A.

On the contrary, respectfully, there is no "wisdom" in splitting a defense into two, one that can be waived (HRCP Rule 19(a)) and one that cannot (HRCP Rule 19(b)), simply in order to reach the outcome here. As to notice, it is the plaintiff's duty to initially join necessary parties, and thus to give defendants and other parties notice.

In this regard, the majority creates a situation in which defendants must assert the *necessary* party defense in the absence of information the plaintiff should have, but did not, provide. According to the majority, the defense must be asserted in the first HRCP Rule 12(b) motion,[73] or in the defendant's answer; if not, it is waived. Majority opinion at 503, 280 P.3d at 101. A defendant must file its answer, or an HRCP 12(b) motion, within 20 days after the complaint is filed. HRCP Rule 12(a). If a *plaintiff* fails to list possible *necessary* parties, as it is required to do by HRCP Rule 19(c) ("A pleading asserting a claim for relief shall

state the names, if known to the pleader, of any [necessary] persons ... who are not joined, and the reasons why they are not joined."), then, at this initial stage of the proceedings, the defendant may lack the requisite information to assert the defense of necessary parties. However, if the defendant fails to do so, the majority requires that the defendant's objection be deemed waived. In other words, the majority penalizes a defendant for failing to assert a necessary party defense, when it is the plaintiff's failure to abide by HRCP Rule 19 that results in the lack of information required by the defendant to raise the necessary party defense.

This case is a good example. Since the Marvins asked Huddy–Yamamoto to join the litigation early on, they must have known that she was potentially a necessary party; yet, they failed to abide by HRCP Rule 19(c) and list her as a necessary party in their complaint. However, it is Pflueger who is faulted by the majority for not "rais[ing] the issue of Huddy–Yamamoto's nonjoinder before the court," *see* majority opinion at 508, 280 P.3d at 106. This is unfair to Pflueger[74] inasmuch as it is clear that the Marvins had notice long before the evidentiary hearing[75] that Huddy–Yamamoto claimed an interest in access. Since kuleana rights flow to the kuleana as a whole, the Marvins were well-aware or should have been aware that Huddy–Yamamoto should have been included in the lawsuit. The fact that the Marvins asked Huddy–Yamamoto whether she wanted to join the lawsuit further suggests the Marvins knew she had an interest in the litigation. It is therefore highly unlikely that Huddy–Yamamoto's testimony during the evidentiary hearing that she wanted vehicular access and potable water was the Marvins' "first

---

**73.** As noted *supra*, HRCP Rule 12(g) allows a party to make a motion under HRCP Rule 12(b) and "join" with it any other motion allowed under HRCP Rule 12(b). If the party omits any defense from that motion, the party shall not make a motion based on the defense or objection so omitted, except that the party may make a subsequent motion on the grounds provided in HRCP Rule 12(h)(2).

**74.** Thus, the majority's holding does not "entertain[ ] the broadest possible scope of action con-

sistent with fairness to the parties." *See* majority opinion at 512, 280 P.3d at 110 (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

**75.** To reiterate, although the majority insists on calling the evidentiary hearing a trial, *see* majority opinion at 503, 280 P.3d at 101, the nature of the hearing held by the court, whether a bench trial, or an evidentiary hearing, or both, is not evident from the record, as noted, *supra*, n. 15.

notice of these desires," *see* majority opinion at 502, 280 P.3d at 100.

As to ensuring that "all parties have an opportunity to investigate and respond," *see* majority opinion at 502, 280 P.3d at 100, the majority's rule, in fact, cuts off any investigation, for if waiver occurs after the first responsive pleading, there is no opportunity for defendants to investigate further. Thus, if, during discovery and after the filing of the first responsive pleading, a defendant learns that there is a necessary party who could have feasibly been joined but was not, there is nothing the defendant can do. By virtue of the majority's decision, the defendant's "opportunity to investigate" will therefore be meaningless.

### B.

In illustrating its "wisdom," the majority also emphasizes that ordering Huddy–Yamamoto's joinder would have "necessarily delayed proceedings" because she "may" have needed to retain expert witnesses, and she "may" have wanted to raise third-party claims against the Marvins or Pflueger. Majority opinion at 502, 280 P.3d at 100. At the outset, whether she "may" have done so is entirely speculative. Moreover, since future litigation is likely as a result of the majority's decision, any purported "delay" in this litigation pales in comparison to the potential waste of judicial and party resources in the future.

### C.

As to Pflueger's raising of the defense on the eve of trial, the paucity of support for that position (one unpublished decision from an Ohio appellate district court) cuts against the majority's decision. The majority relies on *Mihalic v. Figuero*, No. 53921, 1988 WL 86428, at *3 (Ohio App. Dist. May 26, 1988), where that court stated, "a mere five word statement contained in the appellant's answer *without further affirmative action* to prosecute the raised defense results in a waiver of said defense." (Emphasis added.) According to *Mihalic*, however, "[a] party must not only initially raise the defense[,] but must demonstrate or prosecute the defense

through either a motion or *presentation of said defense at trial.*" *Id.* (emphasis added). Insofar as Pflueger "present[ed]" the "said defense" before trial, in a position statement, it would not be untimely under *Mihalic.*

### XVIII.

Finally, even assuming, *arguendo*, that Pflueger failed to plead the HRCP Rule 19 defense, and the rule that failure to plead a necessary party defense applies retroactively, the majority entirely ignores HRCP Rule 15(b) (2000). Under the liberal amendment practice of the HRCP, "issues not raised by the pleadings that are tried by express or implied consent of the parties ... shall be treated in all respects as if they had been raised in the pleadings." HRCP Rule 15(b). Therefore, the "failure to plead an affirmative defense is immaterial if evidence of the defense is introduced and not objected to for failure to plead it, and no surprise is claimed." *Godoy v. Hawaii Cnty.*, 44 Haw. 312, 322, 354 P.2d 78, 83 (1960) (citation omitted). "The purpose of Rule 15(b) is to allow an amendment of the pleadings to bring the pleadings in line with the actual issues upon which the case was tried ... and to promote the objective of deciding cases on their merits rather than in terms of the relative pleading skills of counsel or on the basis of a statement of the claim or defense that was made at a preliminary point in the action and later proves to be erroneous." *Schefke*, 96 Hawai'i at 433, 32 P.3d at 77 (internal quotation marks and citations omitted).

In the instant case, the Marvins did not expressly consent to try the pleaded issue of whether Huddy–Yamamoto should have been joined, but they implicitly consented. "In this jurisdiction, consent will be implied from the failure to object to the introduction of evidence relevant to the unpleaded issue." *Schefke*, 96 Hawai'i at 433, 32 P.3d at 77 (internal quotation marks and citation omitted). The Marvins did not object to the "introduction of evidence[,]" *id.*, in the form of Huddy–Yamamoto's testimony and other

witnesses' testimony regarding the rights of a kuleana. Thus, from the circumstances, it is apparent that the Marvins implicitly consented to try the issue of whether Huddy–Yamamoto was necessary. Inasmuch as the parties expressly tried the issue, it cannot be said, as the majority does, that Pflueger waived the necessary party defense.

### XIX.

In conclusion, I would affirm the ICA's June 30, 2010 judgment.